LAW OFFICES OF S. CHANDLER VISHER
S. Chandler Visher (California State Bar No. 52957)
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Telephone: (415) 901-0500; Facsimile: (415) 901-0504
chandler@visherlaw.com

CONSUMER LAW OFFICE OF MARIE NOEL APPEL
Marie Noel Appel (California State Bar No. 187483)
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Telephone (415) 901-0508; Facsimile: (415) 901-0504
marie@consumerlaw.ws

PUBLIC CITIZEN LITIGATION GROUP
Deepak Gupta (pro hac vice application to be filed)
Brian Wolfman (pro hac vice application to be filed)
1600 20th Street, NW
Washington, DC 20009
Telephone: (202) 588-7739; Facsimile: (202) 588-7795
dgupta@citizen.org; brian@citizen.org

Attorneys for plaintiff Julius Briggs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIUS BRIGGS, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and ARMY AND AIR FORCE EXCHANGE SERVICE,<br><br>                    Defendants. | **No. CV – 07 – 5760 WHA**<br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT TO ENJOIN ILLEGAL ADMINISTRATIVE OFFSETS AND FOR RESTITUTION OF AMOUNTS ILLEGALLY COLLECTED** |

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

# NATURE OF THE CASE

1.      The Army and Air Force Exchange Service (AAFES), an instrumentality of the United States, issues credit cards, now known as Military Star cards, to military personnel to buy uniforms and make general purchases from the Post Exchange stores it operates.  When repayment of debt on these cards is delinquent, the United States has the right to offset the delinquent debt against monies it owes the debtor for benefits and tax refunds.  Each federal agency refers delinquent debt to the Department of the Treasury, which administers a centralized collection effort, using administrative offsets, known as the Treasury Offset Program (TOP). The offset collection procedure may only be used during the first 10 years after the debt becomes outstanding; after 10 years TOP collection is time barred.  TOP collections are governed by the AAFES Credit Card Contract, which does not permit finance charges to be imposed on credit card charges for uniform clothing.  This action is brought on behalf of all those subjected to TOP collections by AAFES in the past six years on account of credit card debt and who fall into one or both of the following categories: (1) a portion of their TOP-collected debt had been outstanding for more than 10 years at the time of collection or (2) a portion of the amount claimed due on their account included improper finance charges on uniform clothing purchases.

2.      Plaintiff seeks a judgment (1) granting an injunction against the future illegal use of TOP to collect debt outstanding for more than 10 years and (2) granting an injunction prohibiting AAFES from including improper finance charges in claims submitted to TOP and (3) granting all other appropriate equitable remedies, including restitution of all amounts improperly collected.

# PARTIES

3.      Plaintiff Julius Briggs is a veteran of the United States Army.  He served in the Army for 21 years: three years of active duty from 1975 to 1978, and Army Reserves from 1978 until 1996, including a six-month deployment in Saudi Arabia in the spring of 1991 in the aftermath of Operation Desert Storm.  In 1993, during his reserve duty, Mr. Briggs incurred the AAFES debt that forms the basis of this lawsuit.

4.      In 1977, during his active duty, Mr. Briggs injured his back, which has become

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

progressively worse over the years, limiting his employment opportunities.  Nevertheless, Mr. Briggs has attempted to find work when possible in security and loss prevention, a field of work not completely precluded by his back injury.

5.     In 2000, Mr. Briggs began receiving military disability payments based on a partial service-connected disability rating for his 1977 back injury.  In spite of the disability payments and his efforts to find work, Mr. Briggs has had some periods of financial difficulty, especially when his disability payments were delayed.  His financial difficulties have left him homeless for several periods during the past few years.  Between 2004 and 2007 Mr. Briggs had more than $2,300 in federal payments illegally withheld by TOP to pay AAFES credit card debt outstanding more than 10 years.  The offsets have been made at a particularly difficult time for Mr. Briggs.

6.     Mr. Briggs currently resides in San Francisco, California, in subsidized housing leased by Swords to Plowshares, a non-profit veterans' assistance organization, and the most recent administrative offset was made while he lived there.

7.     Defendant United States is the creditor on all of the AAFES credit card debt illegally collected through TOP.

8.     Defendant AAFES is a nonappropriated fund instrumentality of the United States with its executive offices at 3911 S. Walton Walker Boulevard, Dallas, Texas  75236.  As noted above, AAFES operates retail stores for members of the armed services and a credit card program now known as Military Star.

# JURISDICTION

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1346(a)(2).  The facts supporting jurisdiction are that plaintiff's causes of action arise under the AAFES Credit Card Contract which, by its terms, is governed by federal law.  Applicable federal law includes 31 U.S.C. § 3701 through 31 U.S.C. § 3720E and the regulations promulgated pursuant thereto (collectively referenced herein as "FCCA" for Federal Claims Collection Act) and the Administrative Procedure Act (APA), 5 U.S.C. § 702.

10.     Venue is proper in this District under 28 U.S.C. § 1391(e).

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

# INTRADISTRICT ASSIGNMENT

11.     Pursuant to Civil L.R. 3-2 and 3-5(b), this action appropriately is assigned to the San Francisco Division of the Northern District of California because a substantial part of the events or omissions that give rise to the plaintiff's claims occurred, and the plaintiff resides, in the City and County of San Francisco.

# FACTS RELATING TO PLAINTIFF

12.     In approximately November of 1993 plaintiff received and began using an AAFES credit card that allowed him to make purchases of uniforms and other goods on credit at stores operated by the AAFES.

13.     The rights of defendants to impose finance charges, penalties, and other charges in connection with use of the AAFES credit card are governed by the 1993 AAFES Credit Card Contract, a copy of which is attached hereto as Exhibit A and incorporated herein by reference. The credit card program has two plans: (1) the Uniform Clothing Deferred Payment Plan (UC) and (2) the Deferred Payment Plan (DPP).  Purchases under the UC plan are for uniforms clothing and are not subject to finance charges.

14.     Between the date he began using the AAFES credit card, November 12, 1993, and the date he stopped using it, December 16, 1993, plaintiff incurred charges for UC purchases of $348.19 and charges for DPP purchases of $1,508.89.  Under the contract, the UC purchases are treated differently from the DPP purchases.

## TOP Collections on Claims Outstanding More Than 10 Years

15.     Plaintiff's monthly AAFES credit card statement with a closing date of November 18, 1993, required him to make a minimum payment of $31 by December 13, 1993.  Plaintiff did not make the $31 payment and thereafter made no further voluntary payment on the account.

16.     Plaintiff's monthly AAFES credit card statement with a closing date of December 18, 1993, attached as Exhibit B hereto, noted that the $31 payment had not been received and advised plaintiff that if the payment was not received by January 18, 1994, the "account will be delinquent and payroll deductions will begin for the account balance."  The balance was "outstanding" after January 18, 1994, after which the entire balance was due pursuant to section

8(b) of the 1993 credit card contract.

17.    Between January of 1994 and June of 1997 AAFES sent plaintiff billing statements on the account but took no other action to collect the outstanding balance.  In June of 1997 AAFES referred the account to the Treasury Department for the purpose of deducting, through TOP, the outstanding balance from any payments that might be due plaintiff from the government.  TOP searched for government tax refund or benefit payments due plaintiff from which the claim could be paid.  Apparently TOP did not find any payments from which to make offsets for the AAFES claim until 2003, as shown in Exhibit C hereto.

18.    AAFES used TOP to collect its claim against plaintiff after the 10-year time-bar period expired on January 18, 2004, as follows: $818.00 on January 30, 2004; $646.65 on February 18, 2005; $397.00 on February 17, 2006 and $511.30 on May 4, 2007.  (See Exhibit C). Even though AAFES has collected in excess of $500 more than the principal amount of its claim, it still asserts that plaintiff owes it more than $4,000.

### Finance Charge Error

19.    AAFES made errors in the way it calculated plaintiff's outstanding credit card account balance after the referral to TOP in June of 1997.  Because referral to TOP was simply a way to increase the chances of collecting the account, finance charge calculations on the account should not have changed simply because of the referral.

20.    No finance charge was permitted on the debt owed for UC purchases.  (See Exhibit A, ¶ 5.)

21.    After plaintiff's outstanding balance was referred to TOP in June of 1997, AAFES started charging a finance charge of 6% per annum on the UC principal (in addition to a 6% penalty), in direct violation of the contract requirement that no finance charge be imposed on the UC purchases.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this class action pursuant to Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of two overlapping classes of persons similarly situated:  The Time Bar Class includes persons subject to TOP collections for debts outstanding

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

1   for more than 10 years, as alleged in the First Claim; the UC Finance Charge Class includes

2   persons subject to TOP collections whose UC debt was improperly charged interest, as alleged in

3   the Second Claim.

4          23.     Plaintiff believes there are thousands of individuals with claims similar to

5   plaintiff's, making the class so numerous that joinder of all members is impracticable, and that

6   plaintiff's claims and defenses are typical of those of the class. The *Treasury Report on*

7   *Receivables and Debt Collection Activities* for the second quarter of 2007 indicates that $9.3

8   billion out of $64.5 billion, or 14%, of government debt was outstanding more than 10 years.

9   The Annual Reports for the Army and Air Force Exchange Service indicate that the total TOP

10  collections of AAFES debt from 2001 through 2007 were more than $450,000,000. If 14% of

11  the TOP-collected AAFES debt, like the overall government debt, was outstanding more than 10

12  years, $60,000,000 in debt outstanding more than 10 years may have been illegally collected

13  from the class in the past six years. Based on these numbers, if the size of plaintiff's debt is

14  typical of the amounts collected from each class member, the Time Bar Class may well exceed

15  10% of the estimated 1.8 million Military Star card holders. Although the size of the UC

16  Finance Charge Class is more difficult to estimate, the large numbers of cardholders subject to

17  TOP collection and the nature of the improper finance charge calculations suggest that its size

18  must be at least in the hundreds. The members of each class can be identified through records

19  maintained by defendants.

20         24.     Plaintiff will fairly and adequately protect the interests of the classes. Plaintiff

21  has no interests that conflict with the interests of either class, and plaintiff has engaged

22  competent counsel experienced in class actions, complex litigation involving the federal

23  government, and the administrative offset program.

## FIRST CLAIM
### (Collection of Debt Outstanding More than 10 Years)

25         25.     Plaintiff incorporates herein by reference paragraphs 1 – 24.

26         26.     Under the FCCA, federal agencies may refer debts for collection by

28  administrative offset to TOP.

---

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

1    27.    31 U.S.C. § 3716 (e) provides that "(e) This section does not apply – (1) to a

2    claim under this subchapter that has been outstanding for more than 10 years." The debts of

3    plaintiff and the Time-Bar Class that AAFES referred to TOP were "claims" under the

4    subchapter and thus subject to the 10-year time-bar.

5    28.    Plaintiff had a credit card account with AAFES. The December 1993 account

6    statement, attached hereto as Exhibit B, shows that plaintiff's account was "outstanding" after

7    January 18, 1994. The total principal amount of the AAFES claim against plaintiff by defendant

8    United States was $1,857.08, all for charges incurred in the five-week period between November

9    12, 1993 and December 16, 1993. All other credit card debt amounts the United States claimed

10   were due from plaintiff were for finance charges, penalties, and administrative costs.

11   29.    TOP collection of plaintiff's AAFES credit card debt was permitted until January

12   18, 2004, 10 years after the date plaintiff's debt became outstanding.

13   30.    After January 18, 2004, AAFES used TOP to collect money from tax refunds due

14   plaintiff, as shown in the offset report attached hereto as Exhibit C. All of the TOP collections

15   listed in paragraph 18 above were made after January 18, 2004, and thus were made more than

16   10 years after the debt became outstanding.

17   31.    Referral to TOP of claims outstanding more than 10 years constitutes unlawful

18   agency action under the Administrative Procedure Act, 5 U.S.C. § 706(2).

19   32.    Defendants have refused to refund any portion of the money illegally taken

20   through TOP from plaintiff between 2004 and 2007. Defendant AAFES contends all TOP

21   collections on its claim against plaintiff were lawful because the time bar is not effective until

22   for 10 years after the *first referral to TOP*, which was in 1997, not 10 years after the debt was

23   outstanding, which was in 1994. (See Exhibit D attached hereto).

24   33.    The AAFES continues to refer debt outstanding more than 10 years to TOP.

25   Thus, if the AAFES and the United States are not enjoined from making illegal offsets, there will

26   continue to be violations of the FCCA.

27   34.    The class of persons plaintiff represents for this claim (the Time-Bar Class) is

28   defined as: All natural persons (1) who have been subjected to TOP collection of an AAFES

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

credit card debt claim, after November 13, 2001 and; (2) from whom a portion of that TOP
collection violates the 10-ten year time-bar in 31 U.S.C. § 3716(e).

35. There are questions of law and fact common to this Time-Bar Class, including the
following:

      i. Whether TOP offsets more than 10 years after the debt became outstanding
           are illegal;

      ii. When a debt first becomes "outstanding" within the meaning of the 10-year
           time bar of 31 U.S.C. § 3716 (e)(1);

      iii. Whether the defendants have acted or refused to act on grounds generally
           applicable to the class, thereby making final injunctive relief or
           corresponding declaratory relief appropriate with respect to the class as a
           whole.

# SECOND CLAIM
**(Correction of Credit Card Balances and
Restitution of Illegally Offset Finance Charge Amounts)**

36. Plaintiff incorporates herein by reference paragraphs 1 – 24.

37. Plaintiff incurred debt obligations through use of an AAFES credit card. Finance
charges on such debt are governed by the AAFES Credit Card Contract.

38. The 1993 AAFES Credit Card Contract (Exhibit A) provides in paragraph 5 that
there is "no periodic FINANCE CHARGE assessed against" the UC purchases.

39. After plaintiff's AAFES credit card debt was referred to TOP for collection,
AAFES began including in the amount claimed due a 6% per annum finance charge (separate
from the penalty) on the UC principal, when no finance charge was allowed to be charged.

40. The class of persons plaintiff represents for this claim (the UC Finance Charge
Class) is defined as: All natural persons (1) whose AAFES credit card contract provides that
finance charges are not due on UC purchases; (2) who have been subjected to TOP collection of
an AAFES credit card debt claim after November 13, 2001; (3) from whom the amount actually
collected by AAFES after the first referral to TOP exceeds the principal amount of the UC and
UCDPP purchases which underlie the claim referred to TOP and; (4) for whom AAFES included

---

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

1    finance charges on UC purchases as part of its claim.  The UC Finance Charge Class does not

2    include persons for whom illegal TOP collections exceeded $10,000.

3            41.     Plaintiff and the UC Finance Charge Class must have their AAFES credit card

4    balances due corrected and, as necessary, are entitled to restitution of any amounts illegally

5    collected UC finance charges.

6            42.     There are questions of law and fact common to this UC Finance Charge Class,

7    including the following:

8                    i.      Whether finance charges may be imposed, pursuant to the AAFES Credit

9                            Card Contract, on UC purchases, and, if not, whether the defendants

10                           improperly included amounts on account thereof in claims collected

11                           through TOP;

12                   ii.     Whether the defendants have acted or refused to act on grounds generally

13                           applicable to the UC Finance Charge Class, thereby making appropriate

14                           final injunctive relief or corresponding declaratory relief with respect to

15                           the UC Finance Charge Class as a whole.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

---

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

1  **WHEREFORE**, plaintiff requests that this Court:

2      A.    Enjoin AAFES from making referrals of claims outstanding more than 10 years to

3  TOP in violation of 31 U.S.C. § 3716(e);

4      B.    Require defendants to make restitution of all illegal TOP collections to the Time-

5  Bar Class;

6      C.    Require defendants to make restitution of all illegal UC finance charge collections

7  to the UC Finance Charge Class and to correctly state any delinquent balances of the UC Finance

8  Charge Class in claims referred to the TOP and;

9      D.    Grant any additional relief, including attorney fees, expenses, and costs and

10  including any appropriate relief under 28 U.S.C. § 2412, to which the plaintiff may be entitled.

11  Dated:  January 18, 2008              Respectfully submitted,

12

13                                       LAW OFFICES OF S. CHANDLER VISHER
                                         CONSUMER LAW OFFICE OF MARIE NOEL APPEL
                                         PUBLIC CITIZEN LITIGATION GROUP

14

15

16                      By:

17                                       S. Chandler Visher, Esq., Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

---

First Amended Class Action Complaint **CV – 07 – 5760 WHA**

AAFES CREDIT PROGRAM ACCOUNT AGREEMENT

These are the terms and conditions for establishing an AAFES Credit Program account with AAFES. The conditions of this agreement apply to the Deferred Payment Plan and the Uniform Clothing Deferred Payment Plan. These payment plans are governed by the laws of the United States of America.

1.     AAFES will establish DPP credit limits and monthly payment limits based on your disposable income. All military grades have a separate limit for UCDPP. Your indebtedness to AAFES for purchases under these plans may not exceed these limits. Your credit limits will be shown on your monthly statement of account.

  a.     You may continue to make purchases through your ETS/expiration date. At that time, your charge privileges are suspended. You must notify us if your ETS changes and your privileges will be restored. If you do not reenlist, you may pay off the obligation over the normal time period, even after separating from the service.

    NOTE: In the event AAFES is notified of your pending separation from military/civilian service under other than normal/honorable conditions, AAFES may request the U.S Armed Forces, or other organizations for civilian personnel, to withhold from your pay for payment to AAFES, an amount EQUAL TO THE BALANCES owed in connection with your obligations under this agreement.

  b.     If you are retiring, or transferring to the National Guard or Reserve, you may retain and use your account in your new customer status.

2.     We will send you a monthly statement for each billing cycle in which there is account activity or your balance owed is greater than $1.00. The statement will show your beginning balance, detail transactions for the billing cycle, FINANCE CHARGES, if any, and the new account balance(s). The statement will also show the payments due for each active payment plan and the payment due date. Monthly payments are determined as follows:

  a.     DPP: When you make a purchase under the Deferred Payment Plan, your monthly payment is determined based on a 36 month payback period (including new purchases). The minimum monthly payment for DPP is $10, unless the new balance is less than $10, in which case the new balance is due in full by the payment due date.

  b.     UCDPP:  When you make a purchase under the Uniform Clothing Deferred Payment Plan, your monthly payment is determined based on an 8 month payback period (including new purchases). The minimum monthly payment for UCDPP is $25, unless the new balance is less than $25, in which case the new balance is due in full by the payment due date.

3.     Payments are automatically applied to all account balances unless otherwise specified. Your monthly obligation can be prepaid up to two months in advance. All other money received is applied against the remaining balance(s).

4.     You have the following payment options:

  a.     You may pay the entire Deferred Payment Plan balance on or before the payment due date shown on the monthly statement. No additional finance charges will be assessed.

  b.     You may pay minimum monthly payment amount as shown on your statement of account.

    NOTE—IRREGULAR PAYMENTS: We will accept and post payments marked as "PAYMENT IN FULL" or with similar terms; however, acceptance of checks or money orders with such terms does not constitute acknowledgment by AAFES that the account is paid in full.

5.     There is no periodic FINANCE CHARGE assessed against the Uniform Clothing Deferred Payment Plan. The Deferred Payment Plan has a periodic FINANCE CHARGE, as follows:

  a.     We figure the FINANCE CHARGE for purchases on your account by applying the periodic rate each month to the AVERAGE DAILY BALANCE of purchases on your account (including current transactions).

  b.     To get the AVERAGE DAILY BALANCE, we take the beginning balance of purchases each day (including UNPAID FINANCE CHARGES), add any new purchases or debit adjustments, and subtract any payments or credits. This gives us the daily balance of purchases. Then, we add up all the daily balances for the billing period and divide the total by the number of days in the billing period. This gives us the AVERAGE DAILY BALANCE.

  c.     The FINANCE CHARGE is determined by applying the periodic rate in effect at the close of the bill cycle to the AVERAGE DAILY BALANCE.

  d.     GRACE PERIOD—No FINANCE CHARGE is assessed;

    (1)     In a monthly billing period during which there was no previous DPP balance or in a monthly billing period during which payments and/or credits equal or exceed the previous balance.

    (2)     You may pay your entire balance at any time without incurring additional FINANCE CHARGES.

6.     The FINANCE CHARGE calculation is based on an ANNUAL PERCENTAGE RATE of 12%, a periodic rate of 1% per month.

7.     If the amount of the Finance Charge due for any billing period is less than fifty cents ($.50), a minimum FINANCE CHARGE of fifty cents ($.50) will be charged for the billing period.

8.     LATE PAYMENTS:

  a.     If we do not receive your payment by the due date, your account is considered OVERDUE. AAFES credit program charge privileges are withdrawn until the overdue amount is paid, and your unit commander or work supervisor may be notified and asked to assist in collection.

  b.     If payment is not made within 30 days after the due date, your account is considered DELINQUENT, at which time the entire account balance becomes due. At the same time, your AAFES credit program and check presentation privileges are both suspended.

  c.     In the event your check presentation privileges are suspended for reasons other than account delinquency, charge privileges are also suspended, even if your account is not in an "OVERDUE" or "DELINQUENT" status.

AAFES FORM 6450-1 (FEB 93) (REPLACES 6450-B AND 6450-05)
Item No. 752645001     CRC No. 860-6147

9.   Under the provisions of 31 U.S.C. 3717, AAFES will assess on a delinquent debt: (1) an administrative fee to cover the cost of processing and handling a delinquent claim; and (2) a penalty charge of 6 percent annually for failure to pay any part of this amount more than 90 days past due.

10.   Under the provisions of 31 U.S.C. 3711(f), AAFES may disclose your indebtedness to a consumer reporting agency should it become delinquent.

11.   Your debt may be submitted for deduction from any Federal Income Tax refund to which you may be entitled under provisions of the Deficit Reduction Act, 26 U.S.C. 6402(d) and 31 U.S.C. 3720 A.

CHANGE IN TERMS

12.   We have the right to change any of the terms of this agreement at any time. We will provide you written notification of any changes, as required by law, at least 30 days before the effective date of the change.

13.   Any change in terms will apply to your account on the effective date of the change and will apply to transactions made on or after the effective date, as well as to any outstanding balance(s). If the change has the effect of increasing your finance charge, the periodic interest rate or other fees or charges, the change will not apply if:

    a.   You notify us in writing within the period of notification specified in the change that you do not agree to accept such change, and/or

    b.   You do not use your account for purchases on or after the effective date specified in the notice of change. Use of the account for purchases on or after the date of the change will constitute your acceptance of the terms specified in the change.

FAMILY MEMBER AUTHORIZATION

14.   The account holder may authorize family members over the age of 18 to use the account(s) without their being present. To do this, account holders can identify the authorized family members on the application.

15.   Family members with a current General Power of Attorney signed by the account holder may use the account even if not specifically named by the account holder on the application. When a family member presents a General Power of Attorney at the exchange, we will enter that family member's SSN as an authorized user of the customer's account(s). We will record that action in the account holder's account record.

16.   Withdrawal of family member authorization must be requested by the account holder in writing. A written request is also required when the account holder rescinds a General Power of Attorney previously provided to a family member.

## IN CASE OF ERRORS OR INQUIRIES ABOUT YOUR BILL

17.   This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

18.   Notify Us in Case of Errors or Questions About Your Bill

    If you think your bill is wrong, or if you need more information about a transaction on your bill, write us (on a separate sheet) at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

19.   In your letter, give us the following information:

    a.   Your name and account number.

    b.   The dollar amount of the suspected error.

    c.   Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

20.   Your Rights and Our Responsibilities After We Receive Your Written Notice

    a.   We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

    b.   After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

    c.   If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

    d.   If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

21.   If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Special Rule for Credit Purchases

22.   If you have a problem with the quality of property or services that you purchased on account, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or service. There are two limitations on this right:

    1.   You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

    2.   The purchase price must have been more than $50.

24.   These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**Exhibit A**



AAFES
ATTN: DPP SERVICES CTR
P O BOX 650524
DALLAS, TX 75265-0524

| ACCT NO. | PMT DUE BY | PMT DUE |
|---|---|---|
| 755 | 12 JAN 94 | 126.00 |

PAST DUE, PLEASE PAY
IMMEDIATELY: $31.00

ENTER CK AMT
$

JULIUS L. BRIGGS
422 VALENCIA ST #319
SF, CA 94103

003136237550000018661900012600

| ACCT NUMBER | PMT DUE BY | BILL CYCLE | | | DPP | UCDPP | |
|---|---|---|---|---|---|---|---|
| 755 | 12 JAN 94 | DAYS | CLOSING | ACCT LIMIT | 1000.00 | 500.00 | |
| | | 30 | 18 DEC 93 | AVAIL LIMIT | NONE | 151.81 | |

| DATE | REF NO. | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 27 NOV 1993 | 02151406 | 4790101000 DPP CHARGE | 122.15 |
| 27 NOV 1993 | 7667474 | 4790125000 DPP CHARGE | 169.20 |
| 05 DEC 1993 | 02162012 | 4790101000 DPP CHARGE | 191.25 |
| 13 DEC 1993 | 02180356 | 4790101000 DPP CHARGE | 115.00 |
| 15 DEC 1993 | 02141611 | 4790125000 UCDPP CHARGE | 154.03 |
| 16 DEC 1993 | 02140204 | 4790125000 UCDPP CHARGE | 194.16 |
| 18 DEC 1993 | 15233153 | 3732410800 DPP FINANCE CHARGE | 9.11 |

NOTICE:  ADMINISTRATIVE FEES AND PENALTIES WILL BE ASSESSED
ON DELINQUENT ACCOUNTS AS AUTHORIZED BY 31 U.S.C. 3717.

1-800-826-1317
FOR CUST SERV CALL:  MON-FRI 0730-2000***

| SUMMARY | DPP  * | UCDPP | | TOTAL |
|---|---|---|---|---|
| PREV BALANCE | 911.29 | .00 | | 911.29 |
| CHARGES | 597.60 | 348.19 | | 945.79 |
| PAYMENTS | .00 | .00 | | .00 |
| ADJUSTMENTS | .00 | .00 | | .00 |
| FIN CHARGES | 9.11 | | | 9.11 |
| NEW BALANCE | 1518.00 | 348.19 | | 1866.19 |
| AVG DAILY BAL | 911.29 | | | |
| ANNUAL % RATE | 12.00 | | | |
| MTHLY PER RATE | 1.00 | | | |
| PAYMENT DUE | 82.00 | 44.00 | | 126.00 |
| PAST DUE PMT | 31.00 | .00 | | 31.00 |

3732041080

*** OVERDUE NOTICE ***
PAYMENT  OF  $31.00  FROM
PREVIOUS STATEMENTS HAS NOT BEEN
RECEIVED. IF THE AMOUNT IS NOT
RECEIVED  BY 04 JAN 94,  OVERDUE
NOTIFICATION  WILL  BE  SENT  TO
YOUR UNIT  COMMANDER/WORK SUPER-
VISOR.  IF  PAYMENT  IS  NOT
RECEIVED  BY  18  JAN  94,  YOUR
ACCOUNT (*)  WILL BE  DELINQUENT
AND  PAYROLL  DEDUCTIONS  WILL
BEGIN  FOR THE ACCOUNT  BALANCE.
CHARGE PRIVILEGES  ARE SUSPENDED
PENDING  RECEIPT OF THE  OVERDUE
AMOUNT.

***K 13***



# US Department of the Treasury
## Financial Management Service
## Offset Report as of 7-25-2007 12:21 pm

| | |
|---|---|
| **Debtor TIN:** | **Debt Status:** C **Subject to Offset?** No |
| **Debtor Name:** BRIGGS, JULIUS L. | **Debt Type:** 15 **Offset Count:** 5 |
| **Agency ID:** 15  **Agency Site ID:** E1 | **Local:** No **Reversal Count:** 0 |

**Agency Site Name/Address:**

Army & Air Force Exchange Service
Attn: FA-F/R
P. O. Box 650038
Dallas, TX 752650038

**Debt Phone:** 8006544074
**State Phone:** Toll Free
**State Coll Phone:** (800) 654-4074
**National Coll Phone:** (800) 654-4074

| | Payment Date | Payment Amount | Offset Amount | Payee Name / Address | Agency Site Id | Payment Type | Reversal |
|---|---|---|---|---|---|---|---|
| 1 | 4/18/2003 | $411.84 | $411.84 | JULIUS L BRIGGS 2545 POLK ST GARY IN 464073927 | E1 | IC | |
| 2 | 1/30/2004 | $818.00 | $818.00 | BRIGGS, JULIUS L 2545 POLK ST GARY IN 464073927 | E1 | IE | |
| 3 | 2/18/2005 | $646.65 | $646.65 | BRIGGS, JULIUS L 1826 E 19TH PL GARY IN 464071620 | E1 | IE | |
| 4 | 2/17/2006 | $397.00 | $397.00 | BRIGGS, JULIUS L 109 S HURON ST APT 2 YPSILANTI MI 481975453 | E1 | IE | |
| 5 | 5/4/2007 | $511.30 | $511.30 | JULIUS L BRIGGS 1060 HOWARD ST SAN FRANCISCO CA 941032820 | E1 | IC | |

**IMPORTANT!!  PLEASE RETAIN FOR YOUR RECORDS**
Exhibit C

1/1



Army & Air Force Exchange Service
Office of General Counsel (GC)
P.O. Box 650060
Dallas, TX 75265-0060
(214) 312-3641
GC-G&R

MAY 2 4 2007

Consumer Law Office of Marie Noel Appel
44 Montgomery Street, Suite 3830
San Francisco, CA  94104

Re:  Account_____755, Julius Briggs

Dear Ms. Appel:

I am responding to your letter dated May 14, 2007 concerning your client, Julius Briggs, and the debt he owes to the Army and Air Force Exchange Service (AAFES), a non-appropriated fund instrumentality of the United States.

Your letter states that Mr. Briggs' debt has been delinquent since December 1993 or January 1994 and that offsets of Mr. Briggs' tax returns occurred outside the 10 year limitation for collection of federal debts.  For the reasons stated below, AAFES disagrees.

Mr. Briggs had a Military Star account (formerly called DPP) with AAFES.  This is a credit card wholly owned and managed by AAFES.  AAFES records show that Mr. Briggs' account went delinquent in January 1994 and collection action by AAFES was attempted.  At this point Mr. Briggs' debt was a nontax debt owed to the United States as defined in 31 U.S.C. 3117(g)(1).  There is no time period for collection in this statute.  Rather, it provides that if such a debt is delinquent for a period of at least 180 days, it must be submitted to the U.S. Department of Treasury for administrative offset.  The 10-year period referred to in your letter, 31 U.S.C. 3716(e)(1), is specifically applicable only to administrative offset by Treasury.

AAFES records show that Mr. Briggs debt was placed into Treasury collection on June 18, 1997.  The debt will no longer be eligible for Treasury offset as of June 17, 2007.  Offsets taken prior to that date will not be refunded.

Sincerely,

MARY L. WALDSMITH
Associate General Counsel
General & Revenue Recovery Law Division

**Exhibit D**                                    **FAC  15 of 15**