UNITED STATES DEPARTMENT OF JUSTICE
Ruth A. Harvey
Assistant Director
Michael J. Quinn (D.C. Bar No. 401376)
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 307-0243; Facsimile: (202) 514-9163
michael.quinn3@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Julius Briggs, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br>vs.<br><br>UNITED STATES OF AMERICA and ARMY AND AIR FORCE EXCHANGE SERVICE<br><br>        Defendant. | No. CV-07-5760 WHA<br><br>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR PARTIAL DISMISSAL<br><br>Date:  Thursday, March 27, 2008<br>Time:  8:00 a.m.<br>Ctrm:  9, 19th Floor |

## I.  NOTICE OF MOTION

PLEASE TAKE NOTICE that the federal defendants will and hereby do move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the ground that there is no genuine issue as to material facts to preclude judgment as a matter of law in their favor, or, in the alternative, for partial dismissal under Fed. R. Civ. P. 12(b)(1), (b)(3) and (b)(6) on the ground that plaintiff has asserted claims for which subject matter jurisdiction is lacking; for which venue is improper; that are moot; and/or against which sovereign immunity exists.  This motion will be heard at 8:00 a.m. on Thursday, March 27, 2008 before the Honorable William H. Alsup, United States District Judge, in Courtroom 9 on the 19th Floor of the U.S. Courthouse located at 450 Golden Gate Avenue, San Francisco, California.

The motion is based on this motion and memorandum of points and authorities; the pleadings; the arguments of the parties; and other matter as may be considered by the Court.

## II.  RELIEF REQUESTED

Defendants ask the Court to grant their motion for judgment on the pleadings and to dismiss plaintiff's First Amended Complaint with prejudice.  In the alternative, defendants ask the Court to dismiss all claims for relief in plaintiff's First Amended Complaint, including all class claims, except for plaintiff's individual claim against the United States contained in the first count of that amended complaint.

## III.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, Julius Briggs, brought this suit against the United States and the Army and Air Force Exchange Service ("AAFES") to recover money collected by AAFES through administrative offset stemming from delinquent credit card debts that Mr. Briggs acknowledges owing.  His claims arise out of the credit card contract between Mr. Briggs and AAFES.  See First Amended Complaint ("FAC") ¶ 9 ("The facts supporting jurisdiction are that plaintiff's causes of action arise under the AAFES Credit Card Contract . . . .").[1]  In his amended

---

[1]  Plaintiff filed is original complaint on November 13, 2007.  Before defendants answered, he filed the First Amended Complaint on January 18, 2008 [Dkt. No. 11].

complaint, he admits owing money to AAFES but alleges two claims against defendants: that AAFES violated the contract by taking some offsets too late (Count I or the "Offset Claim"); and that AAFES breached the contract by improperly accruing interest on part of Mr. Briggs' account balance that he alleges was not subject to a finance charge (Count II or the "Interest Claim").

Mr. Briggs alleges subject matter jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and general federal question jurisdiction, 28 U.S.C. § 1331, and also cites the Administrative Procedure Act, 5 U.S.C. § 702. FAC ¶ 9. He asserts that venue is proper in this District under 28 U.S.C. § 1391(e), id. ¶ 10, and alleges that his claims are eligible for adjudication as a class action, see FAC ¶¶ 22-24.

Four independent and irreparable defects exist in plaintiff's claims. First, no jurisdiction exists under the Administrative Procedure Act, because his claims sound in contract, he seeks money, and an adequate remedy exists under the Little Tucker Act. Second, his Interest Claim is moot because AAFES has restated Mr. Briggs' account to remove the interest charges that he disputes, and since no UC interest was ever collected from Mr. Briggs, there is no case or controversy to adjudicate. Third, to the extent Mr. Briggs asserts a claim for the return of funds that have been offset against his debts, he concedes owing at least the same amount to AAFES, making any award subject to immediate setoff by the United States. Finally, to the extent the First Amended Complaint alleges his claims as a class action, jurisdiction is lacking as to Count I because such claims are not limited to $10,000, and venue is improper for all class claims because the Little Tucker Act limits venue to claims by those residing in this District. Based on the pleadings, the Court has, at most, limited jurisdiction to hear Mr. Briggs' individual Offset Claim for damages, and even that claim is ripe for summary disposition based upon the United States' right to setoff under 28 U.S.C. §§ 1346(c) and 2415(f) against any recovery by him. Alternatively, the entire First Amended Complaint must be dismissed except for Mr. Briggs' individual Offset Claim that he alleges in Count I.

### IV. STATEMENT OF FACTS

The facts essential to defendants' motion are not in genuine dispute. AAFES operates

1 post exchange stores on U.S. military bases, selling various merchandise and uniform apparel.
2 FAC ¶ 1. During the period relevant to Mr. Briggs' claims, AAFES offered a credit card to
3 qualified customers that could be used to make purchases at AAFES stores. Id. In late 1993,
4 AAFES issued a credit card to Mr. Briggs. FAC ¶ 12. The terms were governed by a form credit
5 card agreement, dated February 1993, a copy of which plaintiff appended to his amended
6 complaint as Exhibit A (the "Credit Card Agreement"). FAC ¶ 13. That agreement provides for
7 two categories of purchases, one for uniform clothing (referred to as "UC") and the second for
8 other merchandise (the Deferred Payment Plan or "DPP"). Id. The contract specifies the
9 minimum payments due each month on the UC or DPP balance. FAC Exhibit A, ¶¶ 2-7. One
10 distinction is that UC balances are not subject to a finance charge, while DPP balances accrue
11 interest based on the average daily balance. See id. ¶¶ 5-7. The agreement allows AAFES to add
12 a penalty charge of 6% per year and administrative fees to all balances if the card holder fails to
13 make monthly payments on time. See id. ¶¶ 8-9. During November and December 1993, shortly
14 after receiving his card, Mr. Briggs made several purchases and charged $1,508.89 to the DPP
15 and $348.19 to the UC. FAC ¶ 14. AAFES then sent Mr. Briggs monthly statements listing his
16 purchases, reporting his account balances, requesting a minimum payment, and indicating any
17 finance charges accrued during the period. See FAC ¶¶ 16-17. Mr. Briggs never remitted a
18 payment on his account. See FAC ¶ 15. His account thereafter fell into arrears, and AAFES
19 continued to send statements seeking to collect the debts. FAC ¶ 17.
20      In June 1997, AAFES referred Mr. Briggs' delinquent account to the Treasury Offset
21 Program ("TOP"). FAC ¶ 18. The TOP authorizes federal entities, such as AAFES, to forward
22 delinquent debts for collection against federal payments (usually income tax refunds) that are
23 otherwise payable to the debtor. See FAC ¶ 1. The credit agreement between AAFES and Mr.
24 Briggs expressly provides for such referrals for offset, see FAC Exhibit A, ¶ 11, and plaintiff
25 admits that "TOP collections are governed by the AAFES Credit Card Contract," FAC ¶ 1.
26 Following referral to the TOP, AAFES continued to accrue periodic interest, penalty, and
27 administrative charges to Mr. Briggs' account according to their agreement, except that AAFES
28

Defendants' Mot. For Judgment on
Pleadings Or Partial Dismissal          CV-07-5760 WHA                    Page 3 of 10

1  also began to accrue an interest charge on the UC debts as well as the DPP debts. See FAC ¶ 21.
2  No offsets occurred until 2003, when there was an offset of $411.84, which plaintiff does not
3  contest. See FAC Exhibit C. AAFES later recovered money on Mr. Briggs' account through
4  TOP offsets as follows: $818.00 on February 10, 2004; $646.65 on February 24, 2005; $397.00
5  on February 23, 2006; and $511.30 on May 10, 2007. Id.

6  Plaintiff concedes that even after these offsets were taken, his AAFES account still had a
7  balance exceeding $4,000. See FAC ¶ 18. He contends, however, that all offsets after 2003 were
8  improper because he made all his purchases in late 1993, and the TOP statute excludes from that
9  program claims that have "been outstanding for more than 10 years." 31 U.S.C. § 3716(e).
10 Plaintiff contends that AAFES could not use TOP to collect on his debts after 2003. He also
11 claims that AAFES should not have charged interest on the UC portion of his account. AAFES
12 has since reviewed Mr. Briggs' account and restated his account balance to remove the accrual of
13 finance charges on the UC portion. Answer ¶ 39. With that adjustment, and giving credit for all
14 offsets taken through 2007, the balance on Mr. Briggs' account is $3,938.37. Id.

## IV. ARGUMENT

A.  Subject Matter Jurisdiction In A Case Asserted Against The United States Does Not Exist Absent Express Waiver Of Sovereign Immunity

A threshold issue is whether this Court has jurisdiction to entertain Mr. Briggs' claims. The Court must consider this issue before any others, and must dismiss a complaint when it lacks the statutory or constitutional power to adjudicate the case. See, e.g., Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 1012 (1998) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception.") (internal quotations omitted). Plaintiff bears the burden of establishing jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). As courts of limited jurisdiction, federal district courts may only hear cases within their express statutory authority. Bell v. New Jersey, 461 U.S. 773, 777, 103 S. Ct. 2187, 2190 (1983). A specific grant of subject matter jurisdiction must exist in order for a federal court to have jurisdiction over a suit or claim. See, e.g., Clinton County Comm'rs v. United States, 116

F.3d 1018, 1021 (3d Cir. 1997).

A related critical consideration here is the fact that the United States may not be sued without its consent, which requires an express waiver of sovereign immunity by Congress. FDIC v. Meyer, 510 U.S. 471, 114 S. Ct. 996 (1994); United States v. Nordic Village, Inc. 503 U.S. 30, 112 S. Ct. 1011 (1992); United States v. Mitchell, 463 U.S. 206, 103 S. Ct. 2961 (1983). Any congressional enactment providing the United States' consent to suit defines the terms and conditions under which it may be sued, United States v. King, 395 U.S. 1, 4, 89 S. Ct. 1501, 1502-03 (1969), and those terms and conditions are to be strictly construed. See Ginsberg v. United States, 707 F.2d 91, 92 (4th Cir. 1983). The lack of a waiver of sovereign immunity is not merely a defense, but a jurisdictional bar. Mitchell, 463 U.S. at 212, 103 S. Ct. at 2965 ("[T]he existence of consent [to suit] is a prerequisite for jurisdiction").

B.  **Subject Matter Jurisdiction Does Not Exist Under The Administrative Procedure Act**

Plaintiff's case is, at its core, an action sounding in contract for damages. As such, this case may not proceed upon the limited jurisdiction available pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Section 702 of the APA expressly provides, in pertinent part that "[a]n action . . . seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief . . . denied on the ground that it is against the United States . . . ." 5 U.S.C. § 702 (emphasis added). Because plaintiff asserts contract claims and seeks a recovery of money paid to the United States via offsets, jurisdiction under the APA is unavailable.

Moreover, it is well-settled that section 704 of the APA "excludes from the APA's sovereign immunity waiver those claims for which adequate remedies are elsewhere available." Consolidated Edison Co. Of New York, Inc. v. U.S. Dep't of Energy, 247 F.3d 1378, 1383 (Fed. Cir. 2001) (citing 5 U.S.C. § 704). Plaintiff frames his claim as one for restitution and for an order enjoining defendants from improper offsets, but the essence of his claims is rooted in the terms of the credit card agreement between him and AAFES. See FAC ¶ 9. Indeed, plaintiff

alleges that jurisdiction exists under the Little Tucker Act, and the availability of such relief invokes § 704 of the APA and requires dismissal of APA-based claims for lack of jurisdiction.

Plaintiff also alleges that his "causes of action <u>arise under the AAFES Credit Card Contract</u> which, by its terms, is governed by federal law." FAC ¶ 9 (emphasis added). The Tucker Act is the exclusive remedy for contract claims against the United States, so that no APA jurisdiction exists here. <u>Transohio Savings Bank v. Office of Thrift Supervision</u>, 967 F.2d 598 at 609 (D.C. Cir. 1992) ("this Court and others have interpreted the Tucker Act as providing the <u>exclusive</u> remedy for contract claims against the government, at least vis a vis the APA.") (emphasis added).[2]

Although not a contract case, the recent decision in <u>Bautista-Perez v. Mukasey</u>, 2008 WL 314486 (N.D. Cal. Feb. 4, 2008), is also instructive. In that case, foreign nationals alleged class action claims against the Department of Homeland Security ("DHS") under the APA and the Little Tucker Act, 28 U.S.C. § 1346(a)(2), the same jurisdiction asserted here. The plaintiffs sought injunctive relief and a refund of fees that DHS had allegedly collected in excess of its statutory authority. The court concluded that APA jurisdiction did not exist. The district court reasoned that "this case falls squarely within a category of cases typically brought under the Tucker Act – claims for 'recovery of monies that the government has required to be paid contrary to law,' called 'illegal exaction' claims." <u>Id.</u> at *5 (quoting <u>Aerolineas Argentinas v. United States</u>, 77 F.3d 1564, 1572 (Fed. Cir.1996). The district court observed that "the Court of Federal Claims [has] explained" that "an illegal exaction claim may be maintained when 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum" in contravention of the Constitution, a statute, or a regulation. <u>Id.</u> (quoting <u>Aerolineas Argentinas</u>, 77 F.3d at 1572-1573). Accord <u>Brazos Elec. Power Co-op., Inc. v.</u>

---

[2] Another consequence of Tucker Act jurisdiction is that AAFES must be dismissed as a party defendant. AAFES is a non-appropriated fund instrumentality of the United States, and section 1346(a)(2) of the Little Tucker Act expressly provides that "for the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service . . . shall be considered an express or implied contract with the United States." Therefore, the only proper party here is the United States of America.

1  United States, 144 F.3d 784, 787 (Fed. Cir.1998) (when plaintiff in essence seeks "a refund of
2  money that it claims was wrongfully paid to the federal government," the claim falls within
3  Tucker Act jurisdiction).  The district court concluded that the foreign nationals' request for
4  refunds of fees collected without authority "is indistinguishable from the 'illegal exaction' claims
5  . . . -- Plaintiffs are claiming that 'the Government has the [Plaintiffs'] money in its pocket.'" Id.
6  (quoting 77 F.3d at 1573).  The Bautista-Perez court concluded that jurisdiction did not lie under
7  the APA, and plaintiff's similar contract-based allegations here compel the same conclusion.

8  C.    Jurisdiction Is Lacking As To Count II, Because No Case Or Controversy Exists

9        In Count II, plaintiff asserts his contract with AAFES did not provide for interest charges
10 on the UC portion of his purchases but that AAFES began adding interest to the UC portion of
11 his debt in 1997 after AAFES referred his account to Treasury for offset.  Although defendants
12 admit that interest charges were computed and added to Mr. Briggs' UC balance during the
13 period alleged, AAFES has restated Mr. Briggs account to remove the disputed interest charges.
14 Given AAFES' removal of this interest from Mr. Briggs' account, the claim alleged in Count II is
15 moot and must be dismissed.

16       A federal court lacks jurisdiction unless there is a "case or controversy" under Article III
17 of the Constitution.  See Public Utilities Comm'n v. FERC, 100 F.3d 1451, 1458 (9th Cir.1996).
18 The controversy must exist at all stages of the suit, including appellate review, and not simply at
19 the date the action is initiated.  See id.  A case is moot "when the issues presented are no longer
20 'live' or the parties lack a legally cognizable interest in the outcome." Id. (internal quotations
21 omitted).  If a court is unable to render effective relief, it lacks jurisdiction and must dismiss the
22 appeal.  See id.

23       There can be an exception to the mootness doctrine when the wrong alleged in the suit is
24 "capable of repetition yet evading review," see Reimers v. Oregon, 863 F.2d 630, 632 (9th
25 Cir.1988) (citing Cox v. McCarthy, 829 F.2d 800, 803 (9th Cir.1987)), but such a circumstance
26 does not exist here.  This exception applies only in "exceptional circumstances," Public Utilities
27 Comm'n, 100 F.3d at 1459, and only when two requirements are met: "(1) the challenged action
28

was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Id.  A related exception to the mootness doctrine may arise when a party voluntarily ceases the conduct that is the subject of the suit but only if there is a reasonable expectation that the wrong will be repeated.  See id. at 1460.  No such circumstances exist here.  As a result, AAFES' reversal of the interest charges at issue renders Count II moot and requires dismissal for lack of subject matter jurisdiction.

D.  Because Any Recovery Plaintiff Might Be Able To Obtain Would Be Subject To Immediate And Equal Setoff By The United States, The Court Should Grant Judgment Against Plaintiff On the Pleadings

In his amended complaint, plaintiff asserts claims based on his contract with AAFES to recover offsets totaling $2,372.95 – not because he does not owe that amount to the United States – but because the United States allegedly lacked the authority to execute the offset.  Mr. Briggs does not dispute that he owes at least this much money to AAFES, or more generally, to the United States, based upon his failure to make any payment on his $1,508.89 in DPP and $348.19 in UC purchases.  Indeed, at the time AAFES referred his account for TOP offset in June 1997, Mr. Briggs' debts had risen to $2,990.45.  So even if one deducts the uncontested 2003 offset of $411.84 from the 1997 balance, and assuming no further penalties or interest were even added to his account after the TOP referral, Mr. Briggs' debt balance of $2,578.61 still exceeds the amount ($2,372.95) he now claims as damages.[3]

It would, therefore, be futile for this Court to devote judicial resources for discovery, further hearings, and a trial on a dispute that, once all claims are considered, will earn plaintiff no net recovery.  Thus, based on the pleadings filed by the parties, the Court can and should enter

---

[3] Although plaintiff might argue that he also seeks an award of prejudgment interest, such interest is generally not recoverable against the United States.  E.g., Rooney v. United States, 694 F.2d 582, 582 (9th Cir. 1982) ("No interest is payable on a judgment against the United States except as specifically provided by statute."); see 28 U.S.C. § 1346(a)(2) ("for the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service . . . shall be considered an express of implied contract with the United States").

judgment against plaintiff on all claims.[4]

E. The Class Action Claims Warrant Dismissal Due To A Jurisdictional Defect In Count I And Improper Venue On All Counts

As noted above, if jurisdiction exists at all here, it must be found in 28 U.S.C. § 1346(a)(2), commonly known as the Little Tucker Act. The Little Tucker Act is both a grant of subject matter jurisdiction and a waiver of sovereign immunity. See Cermak v. Babbitt, 234 F.3d 1356 (Fed. Cir. 2000) (citing Mitchell). This Court's jurisdiction under the Little Tucker Act, however, extends only to claims against the United States not "exceeding $10,000 in amount[.]"[5] Because plaintiff's alleged class action in Count I of his amended complaint contains no limitation on damages, the alleged class claim is beyond the jurisdiction of this Court.

Venue is also improper on all class claims because plaintiff alleges national classes in his amended complaint. The amended complaint pleads venue only under 28 U.S.C. § 1391, and does not mention the specific venue requirement for the Little Tucker Act, found at 28 U.S.C. § 1402(a).[6] The general venue provision in § 1391 is inapplicable here. Section 1402 is the more specific venue statute and, by its plain terms, applies when, as here, jurisdiction is based upon 28 U.S.C. § 1346(a). The governing venue provision in section 1402(a) provides, in pertinent part, that "[a]ny civil action in a district court against the United States under subsection (a) of section 1346 of this title may be prosecuted only[] . . . in the judicial district where the plaintiff resides." 28 U.S.C. § 1402(a)(1) (2000). See, e.g., Baker v. United States, 390 F. Supp. 532, 533 (D.D.C.

---

[4] Should the Court render such judgment, defendants would seek to dismiss their counterclaims in order to conclude the matter.

[5] The Little Tucker Act provides that the district court shares original jurisdiction with the Court of Federal Claims for a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation . . . , or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort[.]" 28 U.S.C. § 1346(a)(2).

[6] Despite the absence of such an allegation, defendants cannot move at this time for dismissal for improper venue as to Mr. Briggs' individual claims, because he does allege residency within the district which would, if true, satisfy the venue requirement. See FAC ¶ 11. Defendants presently lack sufficient facts to challenge that allegation. In contrast, the national classes alleged by plaintiff, by definition, violate the venue requirement in § 1402(a).

1975) (civil action brought under the Tucker Act may be prosecuted only in the judicial district where the plaintiff resides or in the then-Court of Claims); accord Bautista-Perez, 2008 WL 314486, at *6 (concluding that § 1402(a) governed venue but had been waived because not timely challenged). Venue here will be improper as to all alleged class claims, because the amended complaint class definitions do not limit membership to persons residing within the Northern District of California.

## CONCLUSION

For the foregoing reasons, this Court should enter a judgment on the pleadings against plaintiff or, in the alternative, dismiss Count II of the First Amended Complaint, together with all class claims and claims based on the APA.

Date:   February 14, 2008                                  Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

MICHAEL F. HERTZ
Deputy Assistant Attorney General

J. CHRISTOPHER KOHN
Director

RUTH A. HARVEY
Assistant Director


           /s/ Michael J. Quinn
MICHAEL J. QUINN
(D.C. Bar No. 401376)

Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 307-0243
Facsimile: (202) 514-9163