Deepak Gupta (*pro hac vice*)
Brian Wolfman (*pro hac vice*)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Tel. (202) 588-7739 / Fax (202) 588-7795
dgupta@citizen.org; brian@citizen.org

S. Chandler Visher (State Bar No. 52957)
LAW OFFICES OF S. CHANDLER VISHER
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Tel. (415) 901-0500 / Fax (415) 901-0504
chandler@visherlaw.com

Marie Noel Appel (State Bar No. 187483)
CONSUMER LAW OFFICE OF MARIE NOEL APPEL
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Tel. (415) 901-0508 / Fax (415) 901-0504
marie@consumerlaw.ws
*Attorneys for Plaintiff Julius Briggs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIUS BRIGGS, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and ARMY AND AIR FORCE EXCHANGE SERVICE,<br><br>     Defendants. | No. CV–07–5760 WHA<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR PARTIAL DISMISSAL**<br><br>Date: April 3, 2008<br>Time: 8:00 a.m.<br>Courtroom 9, 19th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ........................................................................................1

STATEMENT ............................................................................................2

ARGUMENT .............................................................................................4

I.     THE FIRST CLAIM FALLS SQUARELY WITHIN THE APA'S
WAIVER OF SOVEREIGN IMMUNITY. .............................................4

    A.  Because Briggs seeks specific rather than substitute relief, he
does not seek money damages within the meaning of the APA. .....5

    B.  The Court of Federal Claims would not provide an adequate
Substitute for review by this Court. ..................................10

    C.  This suit does not seek relief forbidden by another statute. ..........13

II.    THE SECOND CLAIM IS NOT MOOT. ..............................................15

III.   VENUE IS PROPER IN THIS DISTRICT. .........................................18

    A.  The general class-action rule is that only the named plaintiff
demonstrate proper venue. ..............................................18

    B.  Special rules for named plaintiffs in actions against the
government are not relevant here. ......................................20

    C.  "Opt-in" plaintiffs are named plaintiffs for venue purposes, but
absent class members are not treated similarly. ............................21

    D.  Only one case (not cited by the government) supports a district-
only class, but it is poorly reasoned and has been rejected. ...........22

CONCLUSION .........................................................................................24

1

2

3

## TABLE OF AUTHORITIES

### CASES

*Abbott Laboratoriess v. Gardner,*
    387 U.S. 136 (1967) .................................................................................................. 7

*Abrams Shell v. Shell Oil Co.,*
    343 F.3d 482 (5th Cir. 2003) ................................................................................... 22

*Alaska Airlines, Inc. v. Johnson,*
    8 F.3d 791 (Fed. Cir. 1993) ..................................................................................... 11

*America's Community Bankers v. FDIC,*
    200 F.3d 822 (D.C. Cir. 1988) ........................................................................... 10, 11

*Amone v. Aveiro,*
    226 F.R.D. 677 (D. Hawaii. 2005) ........................................................................... 19

*BP Exploration & Oil, Inc. v. U.S. Department of Transport,*
    44 F. Supp. 2d 34 (D.D.C. 1999) ............................................................................. 10

*Baker v. United States,*
    390 F. Supp. 532 (D.D.C. 1975) .............................................................................. 27

*Bank One, Michigan v. United States,*
    62 Fed. Cl. 474 (2004) .............................................................................................. 15

*Bautista-Perez v. Mukasey,*
    2008 WL 314486, 6 (N.D. Cal. 2008) ..................................................................... 27

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ...................................................................................... 8, 12, 13

*Brazos Electric Power Cooperative, Inc. v. United States,*
    144 F.3d 784 (Fed. Cir. 1998) .................................................................................. 14

*Bywaters v. United States,*
    196 F.R.D. 458 (E.D. Texas 2000) .......................................................................... 28

*City News & Novelty, Inc. v. City of Waukesha,*
    531 U.S. 278 (2001) .................................................................................................. 18

*Consolidated Edison Co. of New York v. U.S Dep't of Energy,*
  247 F.3d 1378 (Fed. Cir. 2001)...................................................................... 14

*Cottrell v. United States,*
  42 Fed. Cl. 144 (Fed Cl. 1998)....................................................................... 15

*Davila v. Weinberger,*
  600 F. Supp. 599 (D.D.C. 1985)..................................................................... 27

*Department of the Army v. Blue Fox, Inc.,*
  525 U.S. 255 (1999) .......................................................................................... 6

*Deposit Guarantee National Bank v. Roper,*
  445 U.S. 326 (1980) ........................................................................................ 19

*Doe v. United States,*
  372 F.3d 1308 (Fed. Cir. 2004)...................................................................... 14

*Dukes v. Wal-Mart Stores, Inc.,*
  2001 WL 1902806 (N.D. Cal. 2001).............................................................. 22

*El Rio Santa Cruz Neighborhood Health Center, Inc. v. U.S. Department of,*
  *Health & Human Services,* 396 F.3d 1265 (D.C. Cir. 2005)........................ 13

*Esch v. Yeutter,*
  876 F.2d 976 (D.C. Cir. 1989)........................................................................ 11

*Exxon Corp. v. Federal Trade Commission,*
  588 F.2d 895 (3d Cir. 1978)........................................................................... 24

*Favereau v. United States,*
  44 F. Supp. 2d 68 (D. Me. 1999)............................................................. 27, 28

*Friends of the Earth. Inc. v. Laidlaw Environmental Services, Inc.,*
  528 U.S. 167 (2000) ........................................................................................ 19

*Graham v. FEMA,*
  149 F.3d 997 (9th Cir. 1998) ............................................................................ 7

*Guillermety v. Secretary of Education,*
  241 F. Supp. 2d 727 (E.D. Mich.).................................................................. 20

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,*
  484 U.S. 49 (1987) .......................................................................................... 18

*Holly Sugar Corp. v. Veneman,*
    355 F. Supp. 2d 181 (D.D.C. 2005) ........................................................................... 10, 16

*Larson v. Domestic & Foreign Commerce Corp.,*
    337 U.S. 682 (1949) ....................................................................................................... 6

*Lawrence v. United States,*
    69 Fed. Cl. 550 (Fed. Cl. 2006) ................................................................................... 15

*Lebeau v. United States,*
    474 F.3d 1334 (Fed. Cir. 2007) ................................................................................... 23

*March v. United States,*
    506 F.2d 1306 (D.C. Cir. 1974) ..................................................................................... 4

*Marshall Leasing, Inc. v. United States,*
    893 F.2d 1096 (9th Cir. 1990) ..................................................................................... 14

*Maryland Department of Human Resources v. Department of Health & Human*
    *Services,* 763 F.2d 1441 (D.C. Cir. 1985) ..................................................................... 6

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ..................................................................................... 16

*N.Y. Power Authority v. United States,*
    42 Fed. Cl. 795 (Fed. Cl. 1999) ................................................................................... 14

*National Ctr. for Manufacturing Sciences v. United States,*
    114 F.3d 196 (Fed. Cir. 1997) ..................................................................................... 11

*Northwest Environmental Defense Ctr. v. Gordon,*
    849 F.2d 1241 (9th Cir. 1988) ..................................................................................... 18

*Olenhouse v. Commodity Credit Corp.,*
    136 F.R.D. 672 (D. Kan. 1991) ................................................................................... 11

*Peterson Farms I v. Madigan,*
    782 F. Supp. 1 (D.D.C. 1991) ..................................................................................... 11

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ..................................................................................................... 20

*Rashid v. United States,*

170 F. Supp. 2d 642 (S.D. W. Va. 2001) ............................................... 10

*Saraco v. Hallett,*
831 F. Supp. 1154 (E.D. Pa. 1993) ............................................. 22, 25

*Spectrum Leasing Corp. v. United States,*
764 F.2d 891 (D.C. Cir. 1985) ....................................................... 16

*Students for a Conservative America v. Greenwood,*
378 F.3d 1129 (9th Cir. 2004) ....................................................... 19

*Transohio Savings Bank v. Director, Office of Thrift Supervision,*
967 F.2d 598 (D.C. Cir. 1993) ................................................. 13, 16

*Tuscon Airport Authority v. General Dynamics Corp.,*
136 F.3d 641 (9th Cir. 1998) ................................................ 7, 14, 16

*United States v. Goode,*
781 F. Supp. 704 (D. Kan. 1991) .................................................. 11

*United States v. Trucking Employers, Inc.,*
72 F.R.D. 98 (D.D.C. 1976) ...................................................... 22, 28

*United States v. W.T. Grant Co.,*
345 U.S. 629 (1953) ..................................................................... 18

*Williams v. General Electric Capital Automobile Lease, Inc.,*
159 F.3d 266 (7th Cir. 1998) ......................................................... 25

**STATUTES**

Administrative Procedure Act,
5 U.S.C. § 702 .......................................................................... 7, 15

5 U.S.C. § 704 ................................................................................ 7

Debt Collection Act,
31 U.S.C. § 3716(e)(1)............................................ 1, 2, 4, 7, 13, 17

Little Tucker Act, 28 U.S.C. § 1346(a)(2) ...................................... 6

28 U.S.C. § 1391(e)........................................................................ 20

28 U.S.C. § 1402(a)(1)............................................................. 19, 21

Tucker Act, 28 U.S.C. § 1491(a)(1) .................................................................... 16

28 U.S.C. § 1653 ................................................................................................ 18

**MISCELLANEOUS**

Dan D. Dobbs,
    LAW OF REMEDIES (2d ed. 1993) .................................................................... 3

Dan D. Dobbs,
    HANDBOOK ON THE LAW OF REMEDIES (1973) .............................................. 8

James M. Fischer,
    UNDERSTANDING REMEDIES (1999) ............................................................... 3

Colleen Murphy,
    *Money as a 'Specific' Remedy*, 58 Ala. L. Rev. 119 (2006) ........................... 3

Herbert Newberg & Alba Conte,
    NEWBERG ON CLASS ACTIONS(4th ed. 2002) ......................................... 22, 19

Douglas Laycock,
    THE DEATH OF THE IRREPARABLE INJURY RULE (1991) ............................... 3

**INTRODUCTION**

The Army and Air Force Exchange Service (AAFES) issues credit cards that are used by military personnel to buy uniforms and make other purchases at stores that AAFES operates on military bases. This is a proposed class action brought by named plaintiff Julius Briggs on behalf of himself and a class of soldiers and veterans who have used these credit cards. They allege that they have been subjected to unlawful collection practices arising out of AAFES's use of administrative offset—a procedure whereby federal payments, such as social security, veterans' benefits, and tax refunds, are offset to collect money from the recipients of those payments.

This lawsuit consists of two distinct claims. The first claim alleges that AAFES has unlawfully referred debt that has been outstanding for more than ten years for administrative offset, in violation of 31 U.S.C. § 3716(e)(1), a statute that expressly forbids such offsets. The second claim alleges that AAFES has imposed finance charges on debt arising out of uniform clothing purchases, without any authority for doing so and in violation of a contractual provision prohibiting such charges. The suit seeks injunctive relief that would require AAFES to cease these practices and make restitution of the unlawful collections. The government's motion for judgment on the pleadings is conspicuously silent about the merits of these claims. Instead, the government raises several procedural arguments challenging the jurisdiction of this Court to hear the case, which boil down to the following issues:

- **Sovereign Immunity and APA Jurisdiction:** The government contends that this Court lacks jurisdiction because this case falls outside the Administrative Procedure Act's waiver of sovereign immunity. The first claim falls within the APA waiver, however, because (1) it seeks only specific, rather than substitute, relief and is therefore not a claim for "money damages"; (2) the Court of Federal Claims

would not provide an adequate substitute for district-court review because that court could not grant the injunctive relief sought here and because it is doubtful that it could hear the claim at all; and (3) it is a statutory claim, not a contract-based claim, and is therefore not impliedly forbidden by the Tucker Act.

- **Voluntary Cessation and Mootness:** The government next contends that the second claim, which alleges improper finance charges, has become moot because AAFES has restated Mr. Briggs's account to remove the unauthorized charges. AAFES apparently made this change only in response to this litigation and provides no explanation for the change, no assurance that it is permanent, and no disclosure as to whether the change has been made for others. The mootness doctrine's exception for voluntary cessation of illegal conduct prevents defendants from mooting controversies in this manner, particularly in class actions.

- **Venue:** Finally, the government contends that this Court should dismiss the case for lack of venue, apparently on the theory that absent class members in a class action must live in the district in which the case is brought. But, in fact, the general rule in class actions is that only the named plaintiff must demonstrate venue and the government cites no authority to the contrary. Because the named plaintiff lives in this district, venue is proper.

## STATEMENT

AAFES is a non-appropriated fund instrumentality of the United States, meaning that it is a quasi-governmental entity that does not receive appropriations from Congress but is nevertheless deemed part of the United States for purposes of sovereign immunity. AAFES issues credit cards, known as Military Star cards, to military personnel and their families. (FAC ¶ 1). When repayment of debt on these cards is delinquent, the United States has the right to offset the delinquent debt against monies it owes the debtor for benefits and tax refunds. (*Id.*). Each federal agency refers delinquent debt to the Department of the Treasury, which administers a centralized collection effort, using administrative offsets, known as the Treasury Offset Program (TOP). Under 31 U.S.C. § 3716(e)(1), the offset procedure may only be used during the first ten years after the debt becomes outstanding; after ten years, offset is time-barred.

Plaintiff Julius Briggs is a veteran of the United States Army. He served in the Army for 21 years—three years of active duty from 1975 to 1978 and the Army Reserves from 1978 until 1996, including a six-month deployment in Saudi Arabia in the spring of 1991 in the aftermath of Operation Desert Storm. (*Id.* ¶ 3). In 1993, during his reserve duty, Mr. Briggs incurred the AAFES credit-debt that forms the basis of this lawsuit. (*Id.* ¶ 3).

In 1977, during his active duty, Mr. Briggs injured his back, which has become progressively worse over the years, limiting his employment opportunities. (*Id.* ¶ 4). Nevertheless, Mr. Briggs has attempted to find work when possible in security and loss prevention, a field of work not completely precluded by his back injury. (*Id.*). In 2000, Mr. Briggs began receiving military disability payments based on a partial service-connected disability rating for his 1977 back injury. (*Id.* ¶ 5). In spite of the disability payments and his efforts to find work, Mr. Briggs has had some periods of financial difficulty, especially when his disability payments were delayed. His financial difficulties have left him homeless for several periods during the past few years. (*Id.* ¶ 5).

In June of 1997 AAFES referred Briggs's account to the Treasury Department for the purpose of deducting, through the offset program, the outstanding balance from any payments that might be due to him from the government. Between 2004 and 2007, more than $2,300 in federal payments due to Mr. Briggs were withheld through the administrative offset program to pay AAFES credit-card debt that had been outstanding more than ten years. (*Id.* ¶ 5).

Mr. Briggs currently resides in San Francisco, California, in subsidized housing leased by Swords to Plowshares, a non-profit veterans' assistance organization, and the

most recent administrative offset was made while he lived there. (*Id.* ¶ 6).

In addition to making illegal offsets, AAFES made errors in the way that it calculated Briggs's outstanding credit card account balance after the referral to TOP in June of 1997. (*Id.* ¶ 19). Mr. Briggs's credit card agreement precluded AAFES from assessing any finance charge on the debt he owed for uniform-clothing purchases, known as UC purchases. (*Id.* ¶ 20). Nevertheless, after the outstanding balance was referred to TOP in June of 1997, AAFES started charging a finance charge of 6% per annum on the UC principal (in addition to a 6% penalty), without any legal authority for doing so and in direct violation of the contract requirement that no finance charge be imposed on the UC purchases. (*Id.* ¶ 21).

## ARGUMENT

## I.    THE FIRST CLAIM FALLS SQUARELY WITHIN THE APA'S WAIVER OF SOVEREIGN IMMUNITY.

The government's motion (at 4-7) contends that this Court lacks jurisdiction over this entire case because, in its view, this is "an action sounding in contract for damages" that does not fall within the Administrative Procedure Act's waiver of sovereign immunity. The government's motion, however, fails to distinguish between the two claims in the complaint. The first claim, which alleges a violation of the Debt Collection Act's ten-year time bar, 31 U.S.C. § 3716(e)(1), is a statutory claim that does not depend at all on the existence of a contract. (FAC ¶¶ 25-35).[1]

---

[1] The second claim is avowedly contract-based (FAC ¶¶ 37-42), but it, too, is properly before this Court because the Little Tucker Act, 28 U.S.C. § 1346(a)(2), gives district courts jurisdiction over contract claims not exceeding $10,000. *See* FAC ¶ 40. In class actions under the Little Tucker Act, jurisdiction turns on the individual claims, not the aggregate amount. *See March v. United States*, 506 F.2d 1306, 1309 n.1 (D.C. Cir. 1974).

The only genuine jurisdictional question raised by the government's motion is whether Briggs's first claim falls within the APA's general waiver of sovereign immunity. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). The Supreme Court has long instructed that the "generous review provisions" of the APA must be given "a hospitable interpretation" such that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967); *see Graham v. FEMA*, 149 F.3d 997, 1005 (9th Cir. 1998) (courts "must start with 'a strong presumption that Congress intends judicial review of administrative action.'"). The text of the APA, however, contains three specific limitations: Its waiver extends only to claims (1) that are for "relief other than money damages," (2) "for which there is no adequate remedy" available elsewhere, and (3) that are not "expressly or impliedly forbid[den] by another statute. 5 U.S.C. §§ 702, 704; *see Tuscon Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998).

A.  **Because Briggs seeks specific rather than substitute relief, he does not seek "money damages" within the meaning of the APA.**

The government argues (at 5) that Briggs's first claim seeks "money damages" because it "seeks a recovery of money paid to the United States via offsets." The government cites no precedent for that position, but instead appears to rely on a broad understanding of the word "damages" as encompassing any recovery of money. The APA, however, employs a much narrower meaning of "damages" based on the traditional law of remedies. The leading Supreme Court decision on the APA's money-damages limitation,

*Bowen v. Massachusetts*, holds that a claim does not seek "money damages" merely because a "judicial remedy may require one party to pay money to another." 487 U.S. 879, 893 (1988); *id.* at 896 (rejecting government's suggestion that the Court "substitute the words 'monetary relief' for the words 'money damages' actually selected by Congress."). Rather, the APA uses the term "money damages" narrowly, to refer to "a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" *Id.* at 895 (quoting Dan B. Dobbs, HANDBOOK ON THE LAW OF REMEDIES 135 (1973)).[2]

Under *Bowen*, the APA's money-damages limitation turns on the traditional common-law distinction between specific and substitute relief: Specific relief gives the plaintiff the original thing to which the plaintiff is or was entitled; substitute relief gives the plaintiff something other than the original entitlement. For example, if the plaintiff has not been paid for goods sold to the defendant, a court award for the amount owed gives the very thing—money—to which the plaintiff was originally entitled. By contrast, if a plaintiff suffers bodily injury and is awarded money as compensation, that relief is merely a substitute for the loss. Only a substitute remedy falls within the money-damages limitation.[3]

---

[2] *Bowen* relied heavily on Judge Bork's plain-meaning analysis of the APA money-damages limitation in *Maryland Dep't of Human Resources v. Dep't of Health & Human Svcs.*, 763 F.2d 1441 (D.C. Cir. 1985); *see also Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949) (contrasting "damages" and "specific relief" and including in the latter category "the recovery of specific property or monies"). The Supreme Court unanimously reaffirmed that analysis in *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 263 (1999) (emphasizing *Bowen*'s distinction "between specific relief and compensatory, or substitute, relief").

[3] *See generally* Colleen Murphy, *Money as a 'Specific' Remedy*, 58 Ala. L. Rev. 119 (2006)

Mr. Briggs's lawsuit seeks only specific, not substitute, relief. The complaint asks this Court to enjoin AAFES from violating 31 U.S.C. § 3716(e)(1) by making referrals of claims outstanding for more than ten years to the offset program, and to provide Briggs and the class that he represents with the amounts that were illegally offset and that they would have received had the government not made the illegal offsets. Such relief does not attempt to substitute for anything; rather, to the extent that he seeks money, Briggs seeks the very thing to which he was entitled—the money that was illegally offset.

In *Bowen* itself, the Supreme Court had before it a claim by Massachusetts that the federal government had failed to reimburse the state for expenses incurred under its Medicaid program, in violation of a federal statute. The Court concluded that the state's requested remedies constituted specific relief ("they undo the Secretary's refusal to reimburse"), not money damages ("they do not provide relief that substitutes for that which ought to have been done"), and were therefore within the district court's jurisdiction under the APA. *Id.* at 910. The same logic applies here: Briggs seeks only to undo AAFES's improper offsets (or, viewed another way, AAFES's failure to make federal payments that would otherwise have been made without offsets); he does not seek relief that substitutes for that which ought to have been done.

Under *Bowen*'s definition of specific relief, monetary remedies are considered specific relief where the plaintiff seeks the return of money taken by, or transferred to, the government. Such relief encompasses claims that funds have been transferred to the

---

(extensively discussing *Bowen*'s distinction between specific and substitute relief as applied to money); Dan D. Dobbs, LAW OF REMEDIES § 3.1, at 209 (2d ed. 1993) (distinguishing between specific and substitute relief); James M. Fischer, UNDERSTANDING REMEDIES § 2, at 4 (1999) (same); Douglas Laycock, THE DEATH OF THE IRREPARABLE INJURY RULE 12-13 (1991) ("The

---

government because, as here, the government collected money illegally or excessively.[4]

For example, in *Holly Sugar*, a group of sugar producers who had taken out loans from

the federal Commodity Credit Corporation sought restitution of amounts that had been

collected in excess of the proper interest rate. Relying on *Bowen*, the Court concluded

that such restitution—because it sought the very thing to which the plaintiffs were legally

entitled in the first place—was specific rather than substitute relief. *See Holly Sugar*, 355

F. Supp. 2d at 193 ("[T]he plaintiffs merely seek 'reimbursement' for the amount of

additional interest the CCC charged them in violation of the Act. An award of restitution

for the surcharges that were allegedly illegally collected would therefore be an

'adjustment,' which under *Bowen* is not a claim to recover money damages. The claim

therefore falls within the scope of the APA.").

Similarly, in *America's Community Bankers v. FDIC*, 200 F.3d 822, 824-26 (D.C.

Cir. 1988), a trade association of banks and savings institutions sought a declaration that

its members were entitled to refunds for payments made in response to unlawful demands

from the FDIC. Characterizing the requested remedy as specific relief rather than

substitute damages, the court reasoned:

> [T]his case questions whether the government can retain funds which
> originally belonged to [plaintiff's] members. . . . [The plaintiff] is not seeking

---

most fundamental remedial choice is between substitutionary and specific remedies.").

[4] *See, e.g., Holly Sugar Corp. v. Veneman*, 355 F. Supp. 2d 181, 192-93 (D.D.C. 2005) (plaintiffs' request that government refund money paid by plaintiffs for illegal interest-rate assessment on sugar loans was a request for specific relief under section 702 of the APA); *rev'd on unrelated grounds*, 437 F.3d 1210 (D.C. Cir. 2006); *BP Exploration & Oil, Inc. v. U.S. Dep't of Transp.*, 44 F. Supp. 2d 34, 36-37 (D.D.C. 1999) (plaintiff's request for refund of penalty collected by Coast Guard is request for specific relief and thus section 702 of the APA authorizes jurisdiction in district court); *Rashid v. United States*, 170 F. Supp. 2d 642, 647 (S.D. W. Va. 2001) (characterizing plaintiff's request for return of money paid under a settlement agreement with the federal government "not as money damages" barred under section 702 of the APA but as a request for "the return of the consideration he provided"), *aff'd*, 48 Fed. App'x 892 (4th Cir. 2002).

1    compensation for economic losses suffered by the government's alleged

2    wrongdoing; [it] wants the FDIC to return that which rightfully belonged to

     [its] member institutions in the first place.

3    *Id.* at 830 (emphasis added). Like the plaintiffs in *America's Community Bankers*, Briggs

4    is not asking to be compensated for economic or other types of losses, but is claiming a

5    right to funds that were unlawfully retained by the federal government and that would

6    otherwise be his. *See also Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 797 (Fed. Cir.

7    1993) (relief does not constitute "money damages" where government "holds funds

8    withheld illegally").

9        A slightly different way of characterizing the claim here is that it seeks a payment

10   of the amounts to which plaintiffs were otherwise legally entitled and that were

11   improperly offset. Federal courts have characterized suits claiming improper withholding

12   from various types of government spending programs as suits for specific relief.[5] For

13   example, in cases in which plaintiffs have argued that they were wrongfully suspended

14   from federal farm subsidy payments, the courts have appropriately characterized their

15   requests for missed subsidy payments as requests for specific relief rather than substitute

16   damages.[6] However it is characterized, Brigg's claim seeks specific rather than substitute

21   _____

22   [5] *See, e.g.*, *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 199-200 (Fed. Cir. 1997)
     (plaintiff's demand for the release of appropriated funds for scientific research and development
23   was not a demand for "money damages" under section 702 of the APA); *Esch v. Yeutter*, 876 F.2d
     976, 983-85 (D.C. Cir. 1989) (farmers' claims to enforce federal subsidy did not seek "money
24   damages" under section 702); *Peterson Farms I v. Madigan*, 782 F. Supp. 1, 3 (D.D.C. 1991)
     (farmers' claims for withheld subsidy payments were cognizable in federal district court under
25   section 702); *United States v. Goode*, 781 F. Supp. 704, 708-10 (D. Kan. 1991) (farmer's requested
     injunction to enforce subsidy payments was not a claim for money damages under section 702).
26

27   [6] *See, e.g.*, *Peterson Farms I*, 782 F. Supp. at 4 ("[P]laintiffs are not seeking money in
     compensation for losses that they may have suffered, or are suffering, by virtue of the withholding
28   of the 1987 payments. Rather, they are seeking a declaration of entitlement to reimbursement of
     the withheld funds."); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 677 (D. Kan. 1991)

relief for the simple reason that the money that he seeks would not substitute for any other kind of loss; the money itself is the thing to which Briggs was (and is) entitled.

### B. The Court of Federal Claims would not provide an adequate substitute for review by this Court.

The government next argues (at 5-6) that APA jurisdiction over Briggs's first claim is barred by section 704 because "adequate remedies" are available elsewhere. Once again, the Supreme Court's decision in *Bowen* forecloses that argument. As it did in *Bowen*, the government argues that section 704 should be construed to "bar review of the agency action in the District Court because monetary relief against the United States is available in the Claims Court under the Tucker Act." 487 U.S. at 904.

*Bowen* rejected the government's "novel submission that the entire action is barred by § 704" because, for two principal reasons, "the doubtful and limited relief available in the Claims Court [was] not an adequate substitute for review in the District Court." *Id. at* 901. First, the purpose of the adequate-remedy limitation was to ensure that the APA's "general grant of jurisdiction" would not "duplicate the previously established special statutory procedures relating to specific agencies," and the remedy available in the Claims Court was "plainly not the kind of 'special and adequate review procedure'" that would "oust a district court of its normal jurisdiction under the APA." *Id.* at 903-04. Second, the availability of adequate relief in the Claims Court was "doubtful" because "[t]he Claims Court does not have the general equitable powers of a district court to grant prospective relief," and in most cases, has "no power to grant equitable relief." *Id.* at 905. The Supreme Court was unwilling to assume that "a naked money judgment against the

(characterizing plaintiffs' requested remedy as asking for specific relief through the enforcement

1    United States will always be an adequate substitute for prospective relief" that is

2    fashioned in light of the ongoing relationship between the parties. *Id*.

3         The same justifications for APA review apply here. First, as in *Bowen*, there is no

4    special statutory procedure specifically relating to the AAFES that would oust district

5    court jurisdiction. *See El Rio Santa Cruz Neighborhood Health Center, Inc. v. U.S. Dept.

6    of Health & Human Svcs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005).

7

8         Second, as in *Bowen*, the Court of Federal Claims cannot provide an adequate

9    substitute for district-court review here because the complaint seeks prospective

10   injunctive relief in light of the ongoing relationship between the parties. Specifically, this

11   lawsuit seeks to modify AAFES's practice of collecting time-barred debt with respect to

12   Briggs, the class he seeks to represent, and future AAFES cardholders. *See Transohio

13   Savings Bank v. Director*, 967 F.2d 598, 608 (D.C. Cir. 1993) (where "the Claims Court

14   cannot grant the equitable relief" sought by the plaintiff, "the 'adequate remedy'

15   limitation on the APA's waiver of sovereign immunity does not interfere with district

16   court jurisdiction"). It is no answer to suggest that Briggs could somehow reframe his

17   complaint as one for damages and bring it in the Court of Federal Claims, as "[t]hat is

18   precisely the 'restrictive—and unprecedented—interpretation of § 704' that the Supreme

19   Court rejected" in *Bowen*. *Id*. (quoting *Bowen*, 487 U.S. at 904). Accordingly, the Ninth

20   Circuit has regularly held that APA jurisdiction is appropriate where a party seeks

21   prospective equitable relief against the government. *See Tuscon Airport Auth*, 136 F.3d

22   at 645 (Court of Claims does not provide an "adequate remedy" where the plaintiff "seeks

23

24

25

26

27

28

---

of a statutory mandate on the Secretary of Agriculture to make payments to the producer).

equitable relief that cannot be satisfied by the mere payment of money damages");
*Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1101 (9th Cir. 1990).

Because the Court of Federal Claims lacks authority to issue anything other than monetary relief, an injunction of the type sought in this case—to enjoin future illegal offsets—could not be granted by that court. *See N.Y. Power Auth. v. United States*, 42 Fed. Cl. 795, 802 (Fed. Cl. 1999) (holding, in case where plaintiff sought "to enjoin further collection of the special assessments," that it was "unlikely that this court may grant equitable relief in this case. Given these questions regarding this court's power to grant equitable relief, the district court is in a better position, and may in fact have the sole power, to grant equitable relief . . . ").[7]

Finally, even aside from the issue of prospective equitable relief, it is doubtful that Briggs's first claim could be brought in the Court of Federal Claims under the Tucker Act. The claim is premised entirely on 31 U.S.C. § 3716(e)(1), a provision of the Debt Collection Act that prohibits administrative offsets to collect claims that have been outstanding more than ten years. FAC ¶ 25-35. Although the Tucker Act creates

---

[7] Unlike the two Federal Circuit cases on which the government relies, this action seeks a global change in the defendant's practices and requests injunctive relief on behalf of a nationwide class of people who have an ongoing relationship with the defendant. It is therefore far afield of cases in which "a single, uncomplicated payment of money would provide [the plaintiff] with an entirely adequate remedy" or in which "[n]o prospective relief would be required and there would be no ongoing relationship to monitor and referee." *Brazos Electric Power Cooperative, Inc. v. United States*, 144 F.3d 784, 788 (Fed. Cir. 1998); *see Consol. Edison Co. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1384 (Fed. Cir. 2001) (holding that, in dispute between the government and a single corporation against whom the government would be bound by *res judicata*, the Claims Court could supply an adequate remedy "without an explicit grant of prospective relief").

"This is not," in other words, "a case in which the plaintiff's claim for relief is simply a request for money damages disguised as a request for an order granting injunctive relief, or in which the grant of equitable relief would give the plaintiff nothing more than an award of damages." *Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004) (distinguishing *Brazos* and *Consolidated Edison*).

---

jurisdiction for claims based on federal statutes, that jurisdiction is limited. The "cornerstone of th[e] court's jurisdiction is the Tucker Act's money-mandating requirement." *Cottrell v. United States*, 42 Fed. Cl. 144, 152 (Fed Cl. 1998). To invoke the Tucker Act, the plaintiff "must demonstrate that the source of the substantive law he relies upon 'can fairly be interpreted as *mandating compensation* by the Federal Government for the damage sustained.'" *Id.* (emphasis added). The government has not demonstrated that that is the case here. Moreover, even if that hurdle could be overcome, it is doubtful that Briggs could bring an "illegal exaction" claim with respect to the ten-year bar, as the government suggests. *See Lawrence v. United States*, 69 Fed. Cl. 550, 557 (2006) ("Although this Court could entertain a properly pleaded illegal exaction claim, Plaintiff has failed to state such a claim here. The offset Plaintiff is challenging would be an illegal exaction only if Plaintiff were 'not a debtor to the United States in the amount of the offset.'") (quoting *Bank One, Michigan v. United States*, 62 Fed. Cl. 474, 480 (2004)).

### C.    This suit does not seek relief forbidden by another statute.

Finally, the APA waives sovereign immunity only if no "other statute that grants consent to sue expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Although the government's motion does not specifically discuss this limitation on APA jurisdiction, it suggests (at 5-6) that all of Briggs's claims are contract-based claims that are impliedly forbidden by the Tucker Act, 28 U.S.C. § 1491(a)(1). The government, however, fails to distinguish between Briggs's two claims, the first of which is statutorily-based and the second of which is contractually-based. It is indisputable that Briggs's first claim is not a contract claim. "Whether a claim is a contract claim, and therefore not subject to APA jurisdiction, depends upon 'whether, despite the presence of a contract,

[the] plaintiffs' claims are founded only on a contract or whether they stem from a statute or the Constitution.'" *Transohio*, 967 F.2d at 609; *Tuscon Airport Auth.*, 136 F.3d at 657; *Holly Sugar Corp.*, 355 F.Supp.2d at 193-94.[8]

Simply put, Mr. Briggs's first claim exists independent of the credit card contract, is not dependent on that contract, and does not seek to assert or ask for a declaration of rights under that contract. Accordingly, the claim is not impliedly forbidden by the Tucker Act.

## II.    THE SECOND CLAIM IS NOT MOOT.

Briggs's second claim alleges that AAFES illegally assessed interest on uniform clothing purchases on Briggs's account and those of each class member he represents. It seeks correction of that error and restitution of any of the interest unlawfully offset. After the complaint was filed, AAFES restated only Briggs's account to remove the unauthorized interest and now asserts (at 7) that plaintiff's second claim is moot. AAFES has apparently made this change only in response to this suit, has provided no explanation for the change, has given no assurances that the change is permanent, and apparently has not made this change across the board or as a matter of policy. The government, in other words, contends that its voluntary cessation of the challenged practice—apparently as to

---

[8] Under that standard, "litigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government." *Transohio*, 967 F.2d at 609. Other decisions have similarly concluded that the mere existence of a contract does not necessarily mean that a case is "contractual" and thus, not subject to APA jurisdiction. *See Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893 (D.C.Cir. 1985) ( "A court will not find that a particular claim is one contractually based merely because resolution of that claim requires some reference to a contract"); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C.Cir. 1982) ("The mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action based on trespass or conversion into one on the contract and deprive the court of jurisdiction it might otherwise have.").

Briggs alone—has mooted the second claim. This attempt to "pick off" the named plaintiff and thereby defeat the class claim should not be permitted.

"[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *United States v. W.T. Grant Co.* 345 U.S. 629, 632 (1953). The voluntary-cessation exception stems from the principle that a party should not be able to alter its behavior or practices temporarily in order to evade judicial review or manipulate the jurisdiction of the courts. *See, e.g., City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 & n. 1 (2001) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 66-67, (1987)). Because defendants are "free to return to [their] old ways," a case or controversy remains. *Id.* "The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement." *W.T. Grant*, 345 U.S. at 632.

Accordingly, "[t]he burden of demonstrating mootness is a heavy one.'" *Northwest Envt'l Defense Ctr. v. Gordon*, 849 F.2d 1241, 1243 (9th Cir. 1988). A defendant's voluntary cessation of a challenged practice does not render a case moot unless the party asserting mootness meets the "heavy burden" of showing that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Students for a Conservative America v. Greenwood*, 378 F.3d 1129, 1131 (9th Cir. 2004) (quoting *Friends of the Earth. Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). The standard for assessing voluntary cessation is especially "stringent." *Laidlaw*, 528 U.S. at 189.

As the Supreme Court explained in *Deposit Guarantee Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980), the voluntary-cessation exception is particularly significant in the class-action context because it would be "contrary to sound judicial administration" if

1    judicial review of challenged conduct could be prevented "simply because the defendant

2    has sought to 'buy off' the individual private claims of the named plaintiffs." 445 U.S. at

3    339. The Court explained: "Requiring multiple plaintiffs to bring separate actions, which

4    effectively could be 'picked off by a defendant's tender of judgment before an affirmative

5    ruling on class certification could be obtained, obviously would frustrate the objectives of

6    class actions . . . ." *Id.*

7

8            Thus, particularly in a class action, a unilateral step by the defendant that does not

9    permanently change the challenged practice but merely ceases the conduct as to the

10   named plaintiff does not render the plaintiff's claims moot. *See* Newberg and Conte, 1

11   NEWBURG ON CLASS ACTIONS § 2:14 (4th ed. 2002) ("The specific relief sought by a

12   plaintiff may come about by the defendant's voluntary cessation of the challenged conduct,

13   but even when accompanied by assurances of future good conduct, this voluntary action

14   will not render the controversy moot unless the defendant meets a heavy burden to show

15   that its change of heart is permanent and that the defendant will not return to its old

16   ways."); *Amone v. Aveiro*, 226 F.R.D. 677, 687-88 (D. Hawaii. 2005).

17

18           Here, AAFES has apparently restated only named plaintiff Julius Briggs's account

19   in an attempt to moot his claim, defeat his ability to represent the class on this issue, and

20   thereby avoid litigation of this claim on a class basis. The complaint, however, alleges that

21   the interest overcharge was the result of AAFES's uniform policy, which affected not only

22   Mr. Briggs, but also the entire class of similarly situated account holders. As the

23   defendants apparently restated only Mr. Briggs's account, and only after this class-action

24   lawsuit was filed, defendants' voluntary cessation of the challenged activity—that of

25   unlawfully charging interest—appears to be a strategic move solely for the purpose of

26

27

28

---

1  defeating this class-action litigation. To demonstrate mootness, the government must

2  meet its "heavy burden" to show that this was not merely a strategic move to avoid

3  litigation, that its change of heart is permanent, and that it will not return to its old ways.

4  The defendants, however, have not even claimed to have stopped the challenged practice

5  as to members of the proposed class other than Mr. Briggs. Accordingly, the second claim

6  is not moot.[9]

7

8

9

10

11

12

13

14

15

16

17

18

19

20  _____

21  [9] The government also suggests (at 8) that judgment should be granted on the pleadings simply because the government has asserted a counterclaim seeking a setoff against any money

22  that Mr. Briggs may ultimately recover. The government cites no authority, and our research has located none, supporting dismissal on the pleadings merely because the government has asserted

23  such a counterclaim. Indeed, the case law points in the opposite direction. *See, e.g., Guillermety v. Secretary of Educ.*, 241 F. Supp. 2d 727 (E.D. Mich.) (deciding challenge to administrative offset in

24  violation of the ten-year time bar of 31 U.S.C. § 3716(e)(1), despite the government's assertion of counterclaims). In any event, the government's unprecedented position should be rejected because

25  it would sanction illegal conduct by shielding violations of section 3716(e)(1) from judicial scrutiny. In addition, the government's argument appears to overlook the limitations on counterclaims in

26  the class-action context. *See, e.g.,* Conte & Newberg, 2 NEWBERG ON CLASS ACTIONS, § 4:34 (4th ed. 2002) ("[T]o allow counterclaims in a class context would serve to emasculate the basic

27  objectives of class actions."). For reasons of fundamental due process, absent class members "are almost never subject to counterclaims or cross-claims[.]" *Phillips Petroleum Co. v. Shutts*, 472

28  U.S. 797, 810-811 (1985).

1

## III.    VENUE IS PROPER IN THIS DISTRICT.

2

3

### A.    The general class-action rule is that only the named plaintiff must demonstrate proper venue.

4

5

The government's final argument (at 9-10) is that the Court should dismiss this

6

action for improper venue. The alleged venue defect, however, is based on the

7

government's mistaken belief—for which it cites no authority—that all absent class

8

members in a class action must reside in the district in which the case is brought. [10]

9

"[U]nder the traditional standards of a class action suit, where the personal

10

appearance of a class member is not necessary for an adjudication of such a person's

11

12

rights and liabilities as a member of the class, lack of proper venue as to such absent class

13

members does not impair the Court's ability to entertain the action and adjudicate the

14

rights and liabilities of those absent class members." *United States v. Trucking*

15

*Employers, Inc.*, 72 F.R.D. 98, 100 (D.D.C. 1976); *see also Abrams Shell v. Shell Oil Co.*,

16

343 F.3d 482, 489 (5th Cir. 2003) (referring to *Trucking Employers* as the "leading case on

17

this issue," and noting that "[n]otwithstanding the relaxation of venue and personal

18

19

jurisdiction requirements as to *unnamed* members of a plaintiff class, it is by now well

20

settled that these requirements to suit must be satisfied for *each and every named*

21

*plaintiff* for the suit to go forward.") (emphasis in original); Newberg & Conte, 2

22

23

NEWBERG ON CLASS ACTIONS § 6:12 (4th ed. 2002). This rule was recognized in *Dukes v.*

24

25

26

[10] The government contends (at 9) that dismissal is warranted because of an alleged jurisdictional defect with respect to the first claim. As explained above in Part I, the first claim falls squarely within the APA's waiver of sovereign immunity.

27

28

Even if APA jurisdiction were lacking, however, the proper course would not be to dismiss the claim, but to grant leave to amend the class definition of the first claim so that it meets the jurisdictional-maximum of the Little Tucker Act. *See* 28 U.S.C. § 1653; *Saraco v. Hallett*, 831 F. Supp. 1154, 1159 (E.D. Pa. 1993).

*Wal-Mart Stores, Inc.*, 2001 WL 1902806, *9 (N.D. Cal. Dec. 3, 2001), in which Judge Jenkins, "consistent with the sound reasoning of *Trucking Employers*," allowed the named plaintiffs who had proper venue in this District to represent a nationwide class, but dismissed as named plaintiffs those class members who did not have proper venue here. Just as in *Dukes*, here venue is proper for the named plaintiff, Briggs, who resides in this district and seeks to represent a nationwide class of similarly situated persons.

The government, however, points to the Little Tucker Act's venue provision, which provides that "[a]ny civil action in a district court against the United States under [the Act] may be prosecuted only[] . . . in the judicial district where the plaintiff resides." 28 U.SC. § 1402(a)(1). Without explaining why or citing any authority that supports its view, the government seems to suggest that this language overrides ordinary class-action venue rules. That is not so. Indeed, the ability of a named plaintiff to represent a class including persons who do not all have venue in the district in which the case is filed is so well settled that it is rarely even raised as an issue. In the Little Tucker Act case of *Lebeau v. United States*, 474 F.3d 1334 (Fed. Cir. 2007), for example, the district court had certified a class of "Sisseton-Wahpeton Sioux Tribe lineal descendants who were determined eligible . . . to share in" a judgment fund created as the result of "breach of treaty obligations" by the United States. *Id.* at 1336. Without any discussion of whether unnamed members of the class resided in the district where the case was filed, the Federal Circuit found that the "district court had jurisdiction under the Little Tucker Act over each of the LeBeau plaintiffs' individual claims for money damages, which did not exceed $10,000." *Id.* at 1339.

## B.   Special rules for named plaintiffs in actions against the government are not relevant here.

In cases against the government, sometimes even *named* plaintiffs are allowed to proceed without proper venue. In *Exxon Corp. v. Federal Trade Commission*, 588 F.2d 895 (3d Cir. 1978), for example, a non-class action brought by several oil companies against the FTC, the FTC took the position that venue was not proper under 28 U.S.C. § 1391(e), which provides that "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof . . . may, except as otherwise provided by law, be brought in any judicial district in which . . . the plaintiff resides[.]" The FTC argued that all of the named plaintiffs had to be able to independently satisfy the venue requirements. The Third Circuit held that "requiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation. The language of the statute itself mandates no such narrow construction. There is no requirement that all plaintiffs reside in the forum district." *Id.* at 898–99.

An effort by the plaintiffs in *Dukes* to apply the *Exxon* approach in a class action against a private party was rejected: The named plaintiffs who did not have venue in the Northern District of California were dismissed, but the named plaintiffs with such venue were permitted to represent a nationwide class. Judge Jenkins found that *Exxon* was based on "Section 1391(e)'s highly-specialized venue provision aimed at lawsuits involving governmental entities." *Dukes*, 2001 WL 1902806, at *6. In this case, because Briggs is the only plaintiff and he lives in the Northern District, there is no conflict between the general rule for class action and the special rule for actions against the government: Both rules dictate that venue is proper.

### C.    "Opt-in" plaintiffs are named plaintiffs for venue purposes, but absent class members are not treated similarly.

The government argues (at 9 n.6) that "the national classes alleged by plaintiff, by definition, violate the venue requirement in § 1402(a)." Again, the government's position is based on the erroneous belief that *unnamed* class members must meet the same venue requirements as *named* class members.

To be sure, "opt-in" plaintiffs in cases under the Fair Labor Standards Act (FLSA) are treated as named parties for venue purposes, but treating absent plaintiffs the same way would be an absurd and "radical result." *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998). A good example of the FLSA opt-in scenario is *Saraco v. Hallett*, 831 F. Supp 1154 (E.D. Pa. 1993), which was filed by six named plaintiffs, who were U.S. Customs Service employees, and "more than 700 similarly situated employees of the Customs Service who have filed consent forms to participate in this action as 'opt-in' plaintiffs." *Id.* at 1156. Apparently treating the opt-in plaintiffs the same as the original named plaintiffs, the court found that "venue must be satisfied for each plaintiff." *Id.* at 1162. The district court in *Saraco* considered but rejected the argument that the *Exxon* rule should be followed, allowing named plaintiffs to appear without proper venue. The opinion makes no reference to unnamed class members. On its face, *Saraco* stands for the unremarkable proposition that named plaintiffs, including opt-in plaintiffs, must have venue in the district in which the action is filed.

The source of the government's confusion may be that, in the *Bautista-Perez v. Mukasey* case cited in its motion (at 10), Judge Henderson agreed with the plaintiff there that the defendant had waived a venue argument, but parenthetically described the

*Saraco* Federal Circuit opinion as "affirming transfer of nationwide class to Court of Federal Claims because venue was improper for all plaintiffs but those living in district where case was filed." *Bautista-Perez v. Mukasey*, 2008 WL 314486, *6 (N.D. Cal. 2008). Without explanation, this description may leave the mistaken impression that, had there been no waiver, the unnamed class members would have had to reside in the Northern District in order to be in the class, even though *Saraco* does not even mention venue of unnamed class members. The government (at 9) also cites *Baker v. United States*, 390 F. Supp. 532, 533 (D.D.C. 1975), but in that case all of the plaintiffs resided in the Maryland and the court found that venue was proper in that district but not the District of Columbia, where *none* of the plaintiffs resided. Moreover, *Baker* was not a class action and has no discussion whatever regarding venue of unnamed class members.

### D.    Only one case (not cited by the government) supports a district-only class, but it is poorly reasoned and has been rejected.

Although the government does not cite it, one case actually does hold that unnamed class members in a Little Tucker Act case must all reside in the district in which it is filed. *Favereau v. United States*, 44 F. Supp.2d 68 (D. Me. 1999), was a class action seeking recovery of enlistment and re-enlistment bonuses required to be returned to the government due to alleged noncompliance with weight and body fat rules governing military personnel. The named plaintiffs were residents of Maine but the class included people throughout the country. The court discussed *Davila v. Weinberger*, 600 F.Supp. 599 (D.D.C. 1985), an "opt-in" case similar to *Saraco* in its holding that all named plaintiffs must have proper venue, and found that although *Davila* "was not a formal class action, there is nothing to analytically distinguish it from a class of plaintiffs who reside in

different judicial districts." *Favereau*, 44 F. Supp.2d at 70. The court simply wiped out the traditional class-action distinction between named and unnamed class member venue requirements without even recognizing it was doing so. The opinion has no discussion of the cases dealing with venue of unnamed class members in class actions and apparently the plaintiffs did not bring any of these cases to the court's attention. The court considered and rejected *Exxon* and other cases dealing with venue of named parties, but apparently failed to grasp the general rule in class actions that only the named parties need proper venue.

No other case has accepted *Favreau*'s peculiar conclusion that "there is nothing to analytically distinguish" named plaintiffs from unnamed plaintiffs for venue purposes. Indeed, that view was expressly rejected in *Bywaters v. United States*, 196 F.R.D. 458 (E.D. Texas 2000), which cites *Trucking Employers*, 72 F.R.D. at 100, for the proposition that "the relevant venue question in a class action is whether venue is proper as to the parties representing, and 'in effect standing in for the absent class members.'" *Bywaters*, 196 F.R.D. at 464. In sum, because Mr. Briggs, the named class representative, has proper venue here, the action in his name of behalf of all unnamed class members may proceed here.

## CONCLUSION

This Court should deny the government's motion for judgment on the pleadings because this Court has jurisdiction over both of plaintiff's claims, the case is not moot, and venue is proper in this Court.

Dated:  March 13, 2008                     Respectfully submitted,


                                           _/s/ Deepak Gupta_____
                                           Deepak Gupta (*pro hac vice*)
                                           Brian Wolfman (*pro hac vice*)
                                           PUBLIC CITIZEN LITIGATION GROUP
                                           1600 20th Street, NW
                                           Washington, DC 20009
                                           Tel. (202) 588-7739 / Fax (202) 588-7795
                                           dgupta@citizen.org; brian@citizen.org

                                           S. Chandler Visher (State Bar No. 52957)
                                           LAW OFFICES OF S. CHANDLER VISHER
                                           44 Montgomery Street, Suite 3830
                                           San Francisco, California 94104
                                           Tel. (415) 901-0500 / Fax (415) 901-0504
                                           chandler@visherlaw.com

                                           Marie Noel Appel (State Bar No. 187483)
                                           CONSUMER LAW OFFICE OF
                                           MARIE NOEL APPEL
                                           44 Montgomery Street, Suite 3830
                                           San Francisco, California 94104
                                           Tel. (415) 901-0508 / Fax (415) 901-0504
                                           marie@consumerlaw.ws

                                           *Attorneys for Plaintiff Julius Briggs*