1    UNITED STATES DEPARTMENT OF JUSTICE
     Ruth A. Harvey
2    Assistant Director
     Michael J. Quinn (D.C. Bar No. 401376)
3    Beth E. Cook (D.C. Bar No. 413828)
     Trial Attorneys
4    Commercial Litigation Branch
     Civil Division
5    P.O. Box 875
     Ben Franklin Station
6    Washington, D.C.  20044-0875
     Telephone: (202) 616-2265; Facsimile: (202) 514-9163
7    beth.cook@usdoj.gov

8    Attorneys for Defendants

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14   JULIUS BRIGGS, on behalf of himself and      )    No. CV-07-5760 WHA
      all others similarly situated,              )
15                                                )
                  Plaintiff,                       )    REPLY TO PLAINTIFF'S
16                                                )    OPPOSITION TO DEFENDANTS'
          vs.                                      )    MOTION FOR JUDGMENT ON
17                                                )    THE PLEADINGS OR FOR
     UNITED STATES OF AMERICA and                 )    PARTIAL DISMISSAL
18   ARMY AND AIR FORCE EXCHANGE                   )
     SERVICE                                       )    Date: April 3, 2008
19                                                )    Time: 8:00 a.m.
                  Defendants.                      )    Courtroom 9, 19th Floor
20

21

22

23

24

25

26

27

28   Reply Brief                        CV-07-5760 WHA

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.    PLAINTIFF'S FIRST CLAIM DOES NOT FALL WITHIN THE
          ADMINISTRATIVE PROCEDURE ACT'S LIMITED WAIVER
          OF SOVEREIGN IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

         A.    Plaintiff's First Claim Is A Claim For Money . . . . . . . . . . . . . . . . . . . 2

         B.    Because At Least One Of The Limitations On The
             APA's Waiver Of Sovereign Immunity Applies,
             This Court Lacks Jurisdiction Over Plaintiff's
             Claims Under The APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

             1.    No jurisdiction under the APA exists for
                   plaintiff's first claim because it is contractually-based . . . . . . . . 4

             2.    An adequate remedy is available under the Little Tucker Act . . . . 5

             3.    The Court's interpretation of "money damages" in Bowen
                   does not affect the applicability of the other limitations on
                   the APA's waiver of sovereign immunity . . . . . . . . . . . . . . . . 6

    II.    PLAINTIFF ACKNOWLEDGES DEFECTIVE JURISDICTION
          ON THE FIRST CLASS CLAIM AND PROVIDES NO BASIS OR
          AUTHORITY FOR A NATIONAL CLASS ON EITHER CLAIM . . . . . . . . 7

    III.    PLAINTIFF'S SECOND CLAIM, RELATING TO INTEREST
          CHARGES ON DELINQUENT UNIFORM CLOTHING
          PURCHASES, IS MOOT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    IV.    BECAUSE THE GOVERNMENT'S RIGHT OF SETOFF AND
          COUNTERCLAIM FORECLOSES ANY ACTUAL RECOVERY,
          THE COURT LACKS JURISDICTION TO ENTERTAIN
          A FUTILE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Abrams Shell v. Shell Oil Co.,
    343 F.3d 482 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9

Bautista-Perez v. Mukasey, No. C 07-4192 TEH,
    2008 WL 314486 (N.D. Cal. Feb. 4, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Bowen v. Massachusetts,
    487 U.S. 879, 108 S. Ct. 2722 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 4, 6

Brazos Elec. Power Coop., Inc. v. United States,
    144 F.3d 784 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4, 5, 6

Brooks v. Weinberger,
    637 F. Supp. 22 (D.D.C. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Bywaters v. United States,
    196 F.R.D. 458 (E.D. Tex. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

Cermak v. Babbitt,
    234 F.3d 1356 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Consol. Edison Co. of N.Y., Inc. v. United States, Dep't of Energy,
    247 F.3d 1378 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Deposit Guarantee Nat'l Bank v Roper,
    445 U.S. 326, 100 S. Ct. 1166 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 12

Dukes v. Wal-Mart Stores, Inc.,
    No. C01-2252 MJJ, 2001 WL 1902806 (N.D. Cal. Dec. 3, 2001). . . . . . . . . . . . . . . . .  9

Favereau v. United States,
    44 F. Supp. 2d 68 (D. Me. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

Gengler v. United States,
    453 F. Supp. 2d 1217 (E.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Hodge v. Dalton,
    107 F.3d 705 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Jobie O. v. Spitzer, No. 03 Civ 8331 CM,
    2007 WL 4302921 (S.D.N.Y. Dec. 5, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Johnson v. United States,
    208 F.R.D. 148 (W.D. Tex. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Johnson v. United States,
    238 F.R.D. 199 (W.D. Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Klender v. United States,
    218 F.R.D. 551 (E.D. Mich. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lebeau v. United States,
    474 F.3d 1334 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lusardi v. Xerox Corp.,
    975 F.2d 964 (3d Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Marshall Leasing, Inc. v. United States,
    893 F.2d 1096 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Matsuo v. United States,
    416 F. Supp. 2d 982 (D. Haw. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mitsui & Co. v. Puerto Rico Water Res. Auth.,
    528 F. Supp. 768 (D.P.R. 1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Nat'l Treasury Employees Union v. Reagan,
    629 F. Supp. 762 (D.D.C.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

North Star Alaska v. United States,
    9 F.3d 1430 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

North Star Alaska v. United States,
    14 F.3d 36 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Nortz v. United States,
    294 U.S. 317, 55 S. Ct. 428 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Public Utilities Comm'n v. FERC,
    100 F.3d 1451 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Saraco v. Hallett,
    831 F. Supp. 1154 (E.D. Pa. 1993),
    aff'd, 61 F.3d 863 (Fed. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Sopcak v. N. Mountain Helicopter Serv.,
    52 F.3d 817 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Sosna v. Iowa,
    419 U.S. 393, 95 S. Ct. 553 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Students for a Conservative America v. Greenwood,
    378 F.3d 1129 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Suburban Mortgage Assocs., Inc. v. HUD,
    480 F.3d 1116 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Telecare Corp. v. Leavitt,
      409 F.3d 1345 (Fed. Cir. 2005), cert. denied, 546 U.S. 1089 (2006). . . . . . . . . . . . . . . 5

Tucson Airport Auth. v. General Dynamics Corp.,
      136 F.3d 641 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

United States Parole Comm'n v. Geraghty,
      445 U.S. 388, 100 S. Ct. 1202 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. W.T. Grant Co.,
      345 U.S. 629, 632, 73 S. Ct. 894, 897 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Trucking Employers, Inc.,
      72 F.R.D. 98 (D.D.C. 1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

**STATUTES**

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704. . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1292(d)(4)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Little Tucker Act, 28 U.S.C. § 1346(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

28 U.S.C. § 1391. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

28 U.S.C. § 1402(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10

28 U.S.C. § 1631. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**MISCELLANEOUS**

Gregory C. Sisk, The Tapestry Unravels: Statutory Waivers of Sovereign Immunity and
      Money Claims against the Untied States, 71 Geo. Wash. L. Rev. 602,
      682 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Prac. Guide Fed. Civ. Pro. Before Trial ¶ 4:505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

1

**ARGUMENT**

2

**I.    PLAINTIFF'S FIRST CLAIM DOES NOT FALL WITHIN THE
ADMINISTRATIVE PROCEDURE ACT'S LIMITED WAIVER
OF SOVEREIGN IMMUNITY.**

3

4        Plaintiff admits that his second claim for allegedly improper finance charges imposed on

5    his uniform purchases is contract-based and that the only applicable waiver of sovereign

6    immunity arises under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).  See Plaintiff's Opposition

7    to Defendants' Motion for Judgment on the Pleadings or for Partial Dismissal ("Opp.") at 4 n.1.

8    Instead of acknowledging that his first claim (the alleged improper collection of his debts) also

9    falls within the Little Tucker Act's waiver of sovereign immunity, plaintiff tries to shoehorn that

10   claim within the limited waiver of sovereign immunity contained in the Administrative

11   Procedure Act ("APA"), 5 U.S.C. §§ 702, 704.

12       Whether this Court has jurisdiction over plaintiff's first claim under the APA or the Little

13   Tucker Act is more than a theoretical question.  The APA and the Little Tucker Act afford

14   different remedies and contain different venue provisions for class action claims.  That this

15   Court's jurisdiction exists only under the Little Tucker Act is supported by plaintiff's own

16   allegations, see First Amended Complaint ("FAC") ¶ 9 ("plaintiff's causes of action arise under

17   the AAFES Credit Card Contract"), and the specific reference to express or implied contracts

18   with the Army and Air Force Exchange Service ("AAFES") in the Little Tucker Act.  28 U.S.C.

19   § 1346(a)(2) ("For the purpose of this paragraph, an express or implied contract with [AAFES] . .

20   . shall be considered an express or implied contract with the United States.").  "Any waiver of

21   immunity must be unequivocally expressed, and any limitations and conditions upon the waiver

22   must be strictly observed and exceptions thereto are not to be implied."  Hodge v. Dalton, 107

23   F.3d 705, 707 (9th Cir. 1997) (internal quotation and citation omitted).  The party bringing a suit

24   bears the burden of establishing the predicate jurisdiction.  Sopcak v. N. Mountain Helicopter

25   Serv., 52 F.3d 817, 818 (9th Cir. 1995).

26       Recent decisions of the United States Court of Appeals for the Federal Circuit, the court

27

28   Reply Brief                          CV-07-5760 WHA                          Page 1

1    with the congressionally-mandated role of resolving jurisdictional disputes involving the Tucker

2    Act,[1] clarify that a two-step analysis should be used to decide whether a claim falls within the

3    Tucker Act's or the APA's waiver of sovereign immunity.  The first step is to determine whether

4    a plaintiff's claim in reality seeks money regardless of how that claim is framed in the pleadings.

5    The second step is to determine whether any one of the three limitations on the APA's waiver of

6    sovereign immunity applies.  See Suburban Mortgage Assocs., Inc. v. HUD, 480 F.3d 1116, 1126

7    (Fed. Cir. 2007) (explaining two-step analysis).  If any one of the limitations applies, then the

8    court does not have jurisdiction under the APA.

9         A.    Plaintiff's First Claim Is A Claim For Money.

10        When evaluating the jurisdictional boundary between the Tucker Act and the APA, courts

11   first "look beyond the form of the pleadings to the substance of the claim" to determine whether

12   the claim is a "claim for money."  Suburban Mortgage Assocs., 480 F.3d at 1124.  To keep

13   plaintiffs from forum shopping or trying to take advantage of more favorable forms of relief,

14   courts consider the true nature of a plaintiff's claim.  Courts will pierce the pleadings and

15   disregard a plaintiff's attempt to frame a complaint as seeking injunctive, equitable, or

16   declaratory relief when the plaintiff in reality seeks to obtain money from the United States.  See,

17   e.g., Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1099 (9th Cir. 1990) ("A party may

18   not avoid the [Court of Federal Claims'] jurisdiction by framing an action against the federal

19   government that appears to seek only equitable relief when the party's real effort is to obtain

20   damages . . . .");  Suburban Mortgage Assocs., 480 F.3d at 1124 (decrying the "cottage industry

21   among lawyers attempting to craft suits, ultimately seeking money from the Government, as suits

22

23        [1] When federal district courts deny motions to transfer actions to the Court of Federal

24   Claims pursuant to 28 U.S.C. § 1631, the Federal Circuit has exclusive jurisdiction to hear
     interlocutory appeals of such denials.  28 U.S.C. § 1292(d)(4)(A).  Thus, as noted by one

25   commentator, it is "fitting and proper" for the Federal Circuit to establish "uniform and
     predictable jurisdictional lines" between the Tucker Act and the APA.  Gregory C. Sisk, The

26   Tapestry Unravels: Statutory Waivers of Sovereign Immunity and Money Claims against the

27   Untied States, 71 Geo. Wash. L. Rev. 602, 682 (2003).

28

1  for declaratory or injunctive relief without mentioning the money"); Brazos Elec. Power Coop.,

2  Inc. v. United States, 144 F.3d 784, 786-87 (Fed. Cir. 1998) (disagreeing with plaintiff's

3  characterization of its claim as seeking the "correct bookkeeping entry on the Government's

4  books, not the payment of money").

5      Although plaintiff's First Amended Complaint ("FAC") seeks injunctive relief and other

6  appropriate equitable remedies, FAC ¶ 2, the true nature of his complaint is that the United States

7  breached his AAFES Credit Card Contract by violating paragraph 11, which provides that his

8  "debt may be submitted for deduction from an Federal Income Tax refund to which [he] may be

9  entitled." FAC, Ex. A, ¶ 11. Any award upon this contract claim would require either the

10  payment of funds to plaintiff or the crediting of those funds to plaintiff's outstanding debt (as

11  contemplated in the Government's counterclaim). Despite plaintiff's efforts to recast his first

12  claim as one for injunctive relief, it is a claim seeking money, which is properly brought under

13  the Little Tucker Act and not the APA.

14      B.    Because At Least One Of The Limitations On The APA's Waiver
             Of Sovereign Immunity Applies, This Court Lacks Jurisdiction
15             Over Plaintiff's Claims Under The APA.

16      After determining that plaintiff's claim is actually one for money, the analysis turns to

17  whether any one of the three limitations on the waiver of sovereign immunity contained in the

18  APA applies, and thus precludes this Court from exercising jurisdiction under the APA. The

19  three limitations on the APA's waiver of sovereign immunity are: (1) claims for "money

20  damages," 5 U.S.C. § 702; (2) claims for which an adequate remedy is available elsewhere, id. §

21  704; and (3) claims seeking relief expressly or impliedly forbidden by another statute, id. § 702;

22  see Tucson Airport Auth. v. General Dynamics Corp., 136 F.3d 641, 645 (9th Cir. 1998). These

23  three limitations "function in the disjunctive," Suburban Mortgage Assocs., 480 F.3d at 1126,

24  meaning that if any one of the three applies, the court lacks jurisdiction over the claim under the

25  APA. Tucson Airport Auth., 136 F.3d at 646-47 (holding that because the plaintiff's claims were

26  contractually-based, the Tucker Act impliedly forbid equitable relief and thus the APA did not

27

28  Reply Brief                    CV-07-5760 WHA                    Page 3

waive sovereign immunity).

1.      No jurisdiction under the APA exists for
plaintiff's first claim because it is contractually-based.

Plaintiff characterizes his first claim as "statutorily-based" (Opp. at 13-14) to avoid Ninth Circuit precedent that the APA does not waive sovereign immunity for declaratory or injunctive relief if the claim is grounded in contract, rather than a statute, because the Tucker Act and Little Tucker Act impliedly forbid such relief in contract cases. North Star Alaska v. United States, 9 F.3d 1430, 1432 (9th Cir. 1993) (en banc); Gengler v. United States, 453 F. Supp. 2d 1217, 1228 (E.D. Cal. 2006). Sovereign immunity under the APA is not waived when "a plaintiff's claim is concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently of the contract." North Star Alaska v. United States, 14 F.3d 36, 37 (9th Cir. 1994) (panel decision after resubmission). Moreover, the Supreme Court's holding in Bowen does not apply to contractually-based claims for equitable relief because Bowen "did not involve a contract and it did not address the 'impliedly forbids' limitation on the APA's waiver of sovereign immunity." Id. at 38.

Plaintiff's argument that his first claim is statutorily-based is belied by his FAC, which expressly alleges that both of his causes of action arise under his AAFES Credit Card Contract. FAC ¶ 9. A claim is contractually-based when it is founded upon a contract; the source of the claim and the relief sought must arise from a contract. 14 F.3d at 37. Claims can be contractually-based even when the complaint alleges violations of a statute. For example, in Tucson Airport Authority, the first two counts of plaintiff's complaint alleged violations of a federal statute, the Contract Settlement Act. While the defendant United States acknowledged that the contract was subject to that statute, the court held that the claims that emerged from the statute were contractually-based. 136 F.3d at 646. The court reasoned that the plaintiff's claims did not exist independent of the contract and that the applicable statute did not "impose a substantive duty" on the United States to defend the claims. Id. at 647. The duty to defend the claims derived from the contract. Id.; see also Brazos, 144 F.3d at 788 (holding dispute to be

1    contractual in nature even though the contract incorporated certain terms and conditions from the

2    Rural Electrification Act).

3    In his Opposition, plaintiff contends that his first claim, alleging improper collection of

4    his debts, is a "statutory claim that does not *depend at all* on the existence of a contract."  Opp. at

5    4 (emphasis added).   Plaintiff's FAC alleges in its first paragraph that collections under TOP

6    "are governed by the AAFES Credit Card Contract," attached as Exhibit A to the FAC.  In

7    alleging jurisdiction, plaintiff further asserts that "[t]he facts supporting jurisdiction are that

8    plaintiff's causes of action arise under the AAFES Credit Card Contract which, by its terms, is

9    governed by federal law." FAC ¶ 9.  In this allegation, plaintiff does not distinguish between his

10    two claims, but instead asserts that the facts supporting jurisdiction for both causes of action arise

11    under the contract.  In addition, paragraph 13 of the FAC asserts that "[t]he rights of defendants

12    to impose finance charges, penalties, and other charges in connection with use of the AAFES

13    credit card are governed by the 1993 AAFES Credit Card Contract . . . ." FAC ¶ 13.  Plaintiff's

14    claims arise under a contract because paragraph 11 of the AAFES Credit Card Contract

15    authorizes delinquent debt to be deducted from any federal income tax refund to which the

16    cardholder may be entitled.  FAC, Ex. A, ¶ 11.  The contract created the means by which plaintiff

17    incurred his debts to the federal government and authorized the mechanisms to collect any

18    delinquent debts.  It is the contract that expressly states that plaintiff's debts may be deducted

19    from any tax refund.  Plaintiff can assert no claim against the United States independent of the

20    AAFES Credit Card Contract.

21    2.    An adequate remedy is available under the Little Tucker Act.

22    "The availability of an action for money damages under the Tucker Act or Little Tucker

23    Act is presumptively an 'adequate remedy'. . . ." Telecare Corp. v. Leavitt, 409 F.3d 1345, 1349

24    (Fed. Cir. 2005), cert. denied, 546 U.S. 1089 (2006).  Thus, when a claim can be brought under

25    the Little Tucker Act, a waiver of sovereign immunity under the APA does not exist.  In Brazos,

26    where the plaintiff sought a refund of a prepayment penalty claimed to be improperly assessed in

27

28    Reply Brief                         CV-07-5760 WHA                         Page 5

1    violation of the Rural Electrification Act, the Federal Circuit held that this claim could be heard

2    pursuant to the Tucker Act.  The Federal Circuit contrasted Brazos's claim, where a "single,

3    uncomplicated payment of money" would provide him with an adequate remedy, 144 F.3d at

4    788, with the circumstances in Bowen v. Massachusetts, 487 U.S. 879, 108 S. Ct. 2722 (1988),

5    where the state and federal government were engaged in a complex, ongoing relationship

6    administering the Medicaid program.  The Federal Circuit held that no prospective relief would

7    be required to address Brazos's claim as there "would be no ongoing relationship to monitor and

8    referee." Brazos, 144 F.3d at 788.  Thus, the Tucker Act provided an adequate remedy to address

9    Brazos's claim.  Id. at 787.  Moreover, *res judicata* principles address any concerns about

10   obtaining prospective relief from future wrongful withholdings of funds by the Government, as

11   the United States would be required to refund any payments that were wrongfully exacted in the

12   future.  Consol. Edison Co. of N.Y., Inc. v. United States, Dep't of Energy, 247 F.3d 1378, 1384-

13   85 (Fed. Cir. 2001).

14          As in Brazos, the Tucker Act provides an adequate remedy to address plaintiff's first

15   claim.  Plaintiff's contract-based claim is uncomplicated, involving a fixed amount in dispute,

16   and does not require prospective relief for its resolution.  Plaintiff's claim -- an individual suing

17   the federal government for breach of an agreement -- is a straightforward contractual dispute of

18   the kind that the Court of Federal Claims routinely handles.  While Bowen suggests that a federal

19   district court would be better suited than a specialized tribunal in the nation's capital to exercise

20   jurisdiction over Medicaid disallowance disputes between the state and federal governments, 487

21   U.S. at 907-08, 108 S. Ct. at 2722, those federalism concerns do not apply here.

22
23          3.      The Court's interpretation of "money damages" in Bowen
                    does not affect the applicability of the other limitations on
                    the APA's waiver of sovereign immunity.

24
25          Plaintiff stresses the distinction made in Bowen between money damages awarded as a

26   substitute for an injury or loss and specific remedies attempting to award the plaintiff the very

27   thing to which he or she is entitled to receive.  See Opp. at 5-9.  Even if plaintiff is correct that

28   Reply Brief                        CV-07-5760 WHA                              Page 6

the relief he seeks is properly characterized as a specific remedy and not money damages, no

waiver of sovereign immunity under the APA exists unless he can also show that the APA's

"forbidden relief" and "adequate remedy" limitations do not apply.  He has not done so in his

Opposition, and cannot do so because the allegations in his FAC establish that jurisdiction exists,

if at all, only under the Little Tucker Act for both of his contractually-based claims.

## II.    PLAINTIFF ACKNOWLEDGES DEFECTIVE JURISDICTION ON THE FIRST CLASS CLAIM AND PROVIDES NO BASIS OR AUTHORITY FOR A NATIONAL CLASS ON EITHER CLAIM.

Plaintiff concedes that if the Court's subject matter jurisdiction arises under the Little

Tucker Act, 28 U.S.C. § 1346(a)(2), the Court's ability to adjudicate the claims are likewise

circumscribed by the Little Tucker Act's statutory scheme, including venue.  The Little Tucker

Act is both a grant of subject matter jurisdiction and a waiver of sovereign immunity, see Cermak

v. Babbitt, 234 F.3d 1356 (Fed. Cir. 2000), and it creates limited concurrent jurisdiction in the

federal district courts with the Court of Federal Claims for claims "not exceeding $10,000 in

amount." 28 U.S.C. § 1346(a)(2).  Plaintiff tacitly concedes, see Opp. at 18 n.10, that his first

class claim (regarding offsets), which states no $10,000 limitation, is jurisdictionally defective

under § 1346(a)(2).

Plaintiff's arguments on venue concede less but fare no better.[2]  First, plaintiff fails to

allege that venue exists under 28 U.S.C. § 1402(a), the venue provision that applies to actions

filed under the Little Tucker Act.  This omission renders the FAC defective because plaintiff has

the burden of alleging and demonstrating proper venue, but he failed to do so here.

Moreover, in putative class action suits, "[t]he majority of courts that have confronted this issue

have held that the venue requirement in § 1402(a) must be satisfied for each plaintiff." Favereau

v. United States, 44 F. Supp. 2d 68, 69 (D. Me. 1999) (emphasis added); see also Saraco v.

Hallett, 831 F. Supp. 1154, 1162-63 (E.D. Pa. 1993), aff'd, 61 F.3d 863 (Fed. Cir. 1995) (noting

---

[2]  The instant motion challenges the class-based allegations and their failure to satisfy the special venue restriction for Little Tucker Act claims, but defendants also generally deny proper venue as to Mr. Briggs.  See Answer to First Amended Complaint ¶ 10.

1   that the weight of authority holds that under the Little Tucker Act venue must be satisfied for

2   each plaintiff); Brooks v. Weinberger, 637 F. Supp. 22, 24 (D.D.C. 1986) (venue in the district

3   court under the Little Tucker Act was proper only with respect to individuals who reside in that

4   district); Nat'l Treasury Employees Union v. Reagan, 629 F. Supp. 762, 765 (D.D.C.1985)

5   (claims of nonresidents dismissed under 28 U.S.C. § 1402(a) for improper venue).

6       Favereau's rationale is particularly mindful of Congress's specific and limited purpose in

7   granting a district court concurrent jurisdiction under the Little Tucker Act to resolve claims that

8   would otherwise be adjudicated in the Court of Federal Claims.  Congress deliberately allowed

9   plaintiffs with relatively small claims to have the option of bringing those claims in the district

10  court where they reside, see 44 F. Supp. 2d at 69-70, presumably recognizing the cost-savings

11  advantage the option would provide for litigants with small claims.  The court, however, declined

12  to extend this option to all plaintiffs in a class action filed under the Little Tucker Act because

13  nothing in the grant of concurrent jurisdiction was intended to diminish the Court of Federal

14  Claims' jurisdiction over suits involving plaintiffs who reside in different districts.  See Saraco,

15  831 F. Supp. at 1163.  The court then followed the majority rule that the act's venue provision

16  requires that all plaintiffs reside in the district where they bring their claims.  44 F. Supp. 2d at

17  69-70.  Plaintiff offers nothing to distinguish or rebut Favereau's sound reasoning that

18  § 1402(a)'s venue restriction applies across the putative class.

19      Plaintiff improperly bases his argument on cases applying different venue provisions

20  from the sole provision applicable here, none of which is pertinent or instructive in the special

21  case of Little Tucker Act venue.  See United States v. Trucking Employers, Inc., 72 F.R.D. 98,

22  100 (D.D.C. 1976) (involving enforcement under Title VII of the 1964 Civil Rights Act);

23  Abrams Shell v. Shell Oil Co., 343 F.3d 482, 489 (5th Cir. 2003) (applying Petroleum Marketing

24  Practices Act venue, 15 U.S.C. § 2805(a)).  Those cases neither address nor consider the

25  important purpose behind the special, more restrictive venue provision embodied in § 1402(a).

26  This is a crucial distinction that is expressly recognized in the unpublished decision from this

27

28  Reply Brief                        CV-07-5760 WHA                        Page 8

1   District upon which plaintiff also relies, Dukes v. Wal-Mart Stores, Inc., No. C01-2252 MJJ,

2   2001 WL 1902806 (N.D. Cal. Dec. 3, 2001).  As in Trucking Employers, Dukes involves venue

3   under Title VII of the 1964 Civil Rights Act, which is not applicable here, but the court noted

4   that in analyzing special venue provisions, courts will consider the purpose and policy underlying

5   that provision.  2001 WL 1902806, at *5.  Plaintiff tenders no reason for ignoring the purpose

6   behind the special venue provision for Little Tucker Act cases, as articulated in Favereau, and

7   therefore provides no basis for treating this special venue provision as though it had the same aim

8   and purpose as the provisions at issue in these other cases.[3]

9        Indeed, although plaintiff also relies on Bywaters v. United States, 196 F.R.D. 458 (E.D.

10  Tex. 2000), in support of his argument that the special venue provision of § 1402(a) should not

11  apply to all putative class members, the narrow reasoning applied in that case actually supports

12  defendants' venue challenge under § 1402(a).  As Favereau recognizes and Dukes explains, a

13  special venue provision must be applied with a view toward furthering, rather than impeding, the

14  purpose behind the venue provision.  Bywaters is a demonstration of that careful consideration.

15  That case involved a suit by neighbors of a railroad corridor for unconstitutional taking of their

16  property, and the corridor at issue traversed several adjacent counties, at least one of which was

17  situated outside the Eastern District of Texas.  Although the Bywaters court acknowledged that

18  some class members resided outside its district, the court adopted no general exemption for

19  unnamed class members as plaintiff seeks here, but simply found no justification for excluding

20  class members who resided just inside the neighboring boundary of the Northern District of

21  Texas.  196 F.R.D. at 464.  The Bywaters case, therefore, does not stand as an endorsement of

22  nationwide classes under § 1402(a), as plaintiff contends, but actually, in its reasoning, militates

23  against plaintiff's expansive argument.  Indeed, plaintiff cites not one case that has accepted or

24

25
_____

26       [3]  For the same reason, all of plaintiff's argument and citation of precedent concerning
    application of the different venue provision in 28 U.S.C. § 1391(e), see Opp. at 19-20, is
27  irrelevant and unavailing.

28  Reply Brief                         CV-07-5760 WHA                              Page 9

adopted his nationwide class approach under § 1402(a).[4]

In addition to <u>Favereau</u>, several authorities support the view that § 1402(a)'s special venue provision applies to every class member.  For example, in <u>Bautista-Perez v. Mukasey</u>, No. C 07-4192 TEH, 2008 WL 314486, at *6 (N.D. Cal. Feb. 4, 2008), the court held – <u>not</u> that the special venue requirement was inapplicable to absent class members – but that the government had waived the objection.  <u>Accord</u> <u>Matsuo v. United States</u>, 416 F. Supp. 2d 982, 996 (D. Haw. 2006) ("the entire putative class of federal employees living in the contiguous United States would not meet § 1402's venue requirement") (dicta); <u>Klender v. United States</u>, 218 F.R.D. 551 (E.D. Mich. 2003) (plaintiff class properly limited to residents of the Eastern District of Michigan); <u>Johnson v. United States</u>, 208 F.R.D. 148 (W.D. Tex. 2001) (accepting amended class limited to residents of the Western District of Texas, notwithstanding the <u>Bywaters</u> decision); Cal. Prac. Guide Fed. Civ. Pro. Before Trial ¶ 4:505 (citing <u>Favereau</u> for rule that "all plaintiffs must reside in the same district").[5]

## III.    PLAINTIFF'S SECOND CLAIM, RELATING TO INTEREST CHARGES ON DELINQUENT UNIFORM CLOTHING PURCHASES, IS MOOT.

Plaintiff attacks the argument that his second claim is moot by clinging to his alleged role as the representative of a putative class, but his argument does not withstand scrutiny under

---

[4]  Plaintiff does cite <u>Lebeau v. United States</u>, 474 F.3d 1334 (Fed. Cir. 2007), but concedes that venue is not addressed; it could have been waived, as occurred in <u>Bautista-Perez</u>.

[5]  Plaintiff tries to distinguish "opt-in" classes  involving cases under the Fair Labor Standards Act, Opp. at 21-22, but omits mention that these cases, which apply § 1402(a) to all class members, are one type of Little Tucker Act case.  <u>See</u> <u>Johnson v. United States</u>, 238 F.R.D. 199 (W.D. Tex. 2006).  Plaintiffs offer no reason this type of Little Tucker Act case should apply § 1402's requirements differently from other Little Tucker Act cases.  Moreover, such use of "opt-in" classes in some Little Tucker Act cases, which is at odds with Rule 23's opt-out practice, <u>see id.</u>, further demonstrates that Little Tucker Act cases are not "ordinary" class actions.  With a right of set-off and a compulsory counterclaim against each class member, unnamed class members may likely be more involved than typically occurs in "ordinary" class actions.  Only careful adherence to the special venue requirement will adequately protect all parties and prevent circumvention of proper jurisdiction before the Court of Federal Claims.

1  controlling class action "mootness" precedents of the Supreme Court, none of which Mr. Briggs

2  addresses in his brief.  Although defendants rely heavily on the Ninth Circuit's decision in <u>Public</u>

3  <u>Utilities Comm'n v. FERC</u>, 100 F.3d 1451, 1458 (9th Cir. 1996), which does not itself address

4  mootness in the class action context, plaintiff neither distinguishes the case nor contests its

5  applicability to the case at bar.  Such silence is tantamount to a concession of defendants'

6  argument that his second claim is indeed moot.  The fact remains that, as soon as plaintiff raised

7  the issue of improper interest charges on his uniform purchases in his FAC, AAFES carefully

8  considered his contentions, reviewed his account, and reversed the disputed interest charges.

9  AAFES thus conferred on plaintiff the benefit of the relief he seeks, as stated in the Answer to

10  the First Amended Complaint ¶ 39.

11       Contrary to plaintiff's characterization that AAFES is attempting to "pick[ ] off" his

12  claim, Opp. at 16, the FAC contains no allegation that plaintiff either raised his interest

13  complaint with AAFES prior to suit or that he remains a customer of AAFES such that he could

14  be subjected to such an interest charge sometime in the future.  Even if he were somehow to

15  become an AAFES customer again, this new relationship would be defined by an entirely new

16  contract.  AAFES never collected any of the disputed Uniform Clothing interest, so AAFES'

17  bookkeeping adjustments deleting the disputed interest ends the matter.

18       Plaintiff nevertheless seeks to insulate his own, now satisfied claim, by emphasizing his

19  class action allegations, but his efforts to preserve his possible role as a class representative do

20  not materially change the mootness of his second claim.  His reliance on <u>Deposit Guarantee Nat'l</u>

21  <u>Bank v Roper</u>, 445 U.S. 326, 100 S. Ct. 1166 (1980), is misplaced.  Unlike plaintiff's present

22  circumstance, <u>Roper</u> involved a class action for usurious interest where class certification had

23  already been briefed, denied, unsuccessfully appealed and then remanded for further proceedings

24  <u>before</u> the question of mootness arose.  No such circumstances exist here.  Plaintiff has done no

25  more than allege a class action; he has neither moved for certification nor made even a <u>prima</u>

26  <u>facie</u> case for class treatment.  Thus, the class issue is not even properly before the Court at this

27

28  Reply Brief                          CV-07-5760 WHA                          Page 11

1    stage.  The mootness issue in Roper also rested upon entry of a judgment by the district court

2    over the plaintiffs' objections after they refused to accept a refund from the defendant bank.  By

3    contrast, Mr. Briggs disputed one type of interest charge and AAFES promptly removed the

4    charge from his account; his relief does not depend upon his acceptance of any money from

5    AAFES.  Thus, the plaintiffs' personal stake in Roper was substantially greater than the

6    preliminary, speculative interest Mr. Briggs has as a class representative here, based upon the

7    status of the action, its brief tenure, and the nature of the relief demanded.

8          The Supreme Court has held that mootness of the named plaintiff's individual claim after

9    a class has been duly certified does not render the action moot.  Sosna v. Iowa, 419 U.S. 393, 95

10   S. Ct. 553 (1975).  It has also held that a named plaintiff may appeal the denial of certification

11   even though his individual claim has been rendered moot.  United States Parole Comm'n v.

12   Geraghty, 445 U.S. 388, 100 S. Ct. 1202 (1980).  In Geraghty, the Supreme Court described the

13   personal stake that must exist to permit continued representation of a class claim despite

14   mootness of the named plaintiff's individual claim.

15          When the claim on the merits is "capable of repetition, yet evading
       review," the named plaintiff may litigate the class certification issue despite loss
16     of his personal stake in the outcome of the litigation.  The "capable of repetition,
       yet evading review" doctrine to be sure, was developed outside the class-action
17     context.  But it has been applied where the named plaintiff does have a personal
       stake at the outset of the lawsuit, and where the claim may arise again with respect
18     to that plaintiff; the litigation then may continue notwithstanding the named
       plaintiff's current lack of a personal stake.  Since the litigant faces some likelihood
19     of becoming involved in the same controversy in the future, vigorous advocacy
       can be expected to continue.

20
              When, however, there is no chance that the named plaintiff's expired claim
21     will reoccur, mootness still can be avoided through certification of a class prior to
       expiration of the named plaintiff's personal claim.
22
23   Id. at 398-99, 100 S. Ct. at 1209-10 (citations omitted) (emphasis added).  Under Geraghty, if

24   there is less than a likelihood of future occurrence as to the named plaintiff, then the class must

     already be certified in order to preclude dismissal of the entire claim.
25
26          Plaintiff cites no authority that rescues an otherwise concluded individual claim from

27   dismissal solely by reason of a class allegation, where mootness occurs before a motion for

28

1    certification is even filed.  Instead, cases addressing this situation have come to the opposite

2    conclusion.  Lusardi v. Xerox Corp., 975 F.2d 964, 983 (3d Cir. 1992) ("We are not aware of a

3    single case holding that a district court has subject matter jurisdiction to hear a motion to certify

4    filed by named plaintiffs whose personal claims have expired."); Jobie O. v. Spitzer, No. 03 Civ

5    8331 CM, 2007 WL 4302921, at *8 (S.D.N.Y. Dec. 5, 2007) ("[C]ourts of appeals have

6    repeatedly refused to apply Geraghty's relation back doctrine when the named plaintiff's

7    individual claims became moot before application for class certification.") (quoting Lusardi, 975

8    F.2d at 977).  To rule otherwise would inject the worst incentives into federal litigation:

9    plaintiffs would seek to include class allegations whenever possible and defendants would have

10   even less reason to concede issues early in a case.  In this case, plaintiff received his interest

11   correction before class certification and even before his complaint was answered.  He has no

12   likelihood of being subjected to a repeat occurrence of improper interest charges on uniform

13   purchases in the future.  As such, his second claim disputing interest ought to be dismissed

14   notwithstanding his class allegation.[6]

15   **IV.    BECAUSE THE GOVERNMENT'S RIGHT OF SETOFF AND**
         **COUNTERCLAIM FORECLOSES ANY ACTUAL RECOVERY,**
16       **THE COURT LACKS JURISDICTION TO ENTERTAIN A FUTILE ACTION.**

17          Plaintiff relegates his opposition to dismissal of his first claim to one footnote.  Opp. at

18   17 n. 9.  Mr. Briggs does not deny that his FAC concedes that he owes money to the United

19   States by reason of his AAFES debts, that the amounts subjected to administrative offset were

20   actually owed to the United States, and that his account still shows a debt of several thousand

21   dollars.  He also ignores the United States' unequivocal, statutory right to setoff the amounts he

22

23

24          [6]  Plaintiff's other cited cases do not aid his opposition. His quotation of United States v.
     W.T. Grant Co., 345 U.S. 629, 632, 73 S. Ct. 894, 897 (1953), omits the critical preceding phrase
25   that, in that case, "[b]oth sides agree[d] to the abstract proposition" about voluntary cessation of
     conduct in an antitrust case, rendering the quoted language dictum. Plaintiff also cites Students
26   for a Conservative America v. Greenwood, 378 F.3d 1129 (9th Cir. 2004), but there the Ninth
     Circuit upheld the dismissal for mootness.
27

28   Reply Brief                          CV-07-5760 WHA                          Page 13

owes, which by his own admission is at least equal to the amount of recovery he seeks.[7]  Having

so conceded this liability, he cannot and should not be permitted to invoke use of judicial

resources that will net him zero recovery in the end.  See Mitsui & Co. v. Puerto Rico Water Res.

Auth., 528 F. Supp. 768, 780 (D.P.R. 1981) (the "futile exercise of suing merely to win a suit

was not consented to by the United States when it gave its consent to be sued for its breaches of

contract") (quoting Severin v. United States, 99 Ct. Cl. 435, 443 (1943)); see also Nortz v.

United States, 294 U.S. 317, 327, 55 S. Ct. 428, 430 (1935) (the "Court of Claims has no

authority to entertain the action, if the claim is at best one for nominal damages").


*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

[7]  Plaintiff's attack upon the assertion of counterclaims in class actions mischaracterizes both the law and the United States' counterclaims, but it is also immaterial.  The existence of a right of set-off, and his admission of liability, are enough to negate his claim.

Reply Brief                          CV-07-5760 WHA                          Page 14

1

2                                    **CONCLUSION**

3          For the foregoing reasons, and for the reasons stated in Defendants' Motion for Judgment

4   on the Pleadings or for Partial Dismissal, this Court should enter a judgment on the pleadings

5   against plaintiff or, in the alternative, dismiss Count II of the First Amended Complaint, together

6   with all class claims and claims based on the APA.

7
    Dated: March 20, 2008                    Respectfully submitted,
8
                                             JEFFREY S. BUCHOLTZ
9                                            Acting Assistant Attorney General
                                             MICHAEL F. HERTZ
10                                           Deputy Assistant Attorney General
                                             J. CHRISTOPHER KOHN
11                                           Director
                                             RUTH A. HARVEY
12                                           Assistant Director

13

14                                             /s/ Beth E. Cook
                                             BETH E. COOK
15                                           (D.C. Bar No. 413828)
                                             Trial Attorney
16                                           MICHAEL J. QUINN
                                             Trial Attorney
17                                           Commercial Litigation Branch
                                             Civil Division
18                                           P.O. Box 875
                                             Ben Franklin Station
19                                           Washington, D.C. 20044-0875
                                             Telephone: (202) 616-2265
20                                           Facsimile: (202) 514-9163

21                                           Attorney for Defendants and Counterplaintiff

22

23

24

25

26

27

28   Reply Brief                      CV-07-5760 WHA                         Page 15

1

2                          <u>CERTIFICATE OF SERVICE</u>

3          I hereby certify that, on March 20, 2008, the foregoing *Reply to Plaintiff's Opposition to*

4   *Defendants' Motion for Judgment on the Pleadings or for Partial Dismissal* was served by

5   Electronic Case Filing.

6

7

8                                      /s/ Beth E. Cook
                                       Beth E. Cook
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Reply Brief                          CV-07-5760 WHA