IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS BRIGGS, on behalf of himself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA and ARMY AND AIR FORCE EXCHANGE SERVICE,<br><br>  Defendant. | No. C 07-05760 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART AND DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR PARTIAL DISMISSAL** |

**INTRODUCTION**

In this proposed class action, plaintiff Julius Briggs, on the behalf of soldiers and veterans who use credit cards issued by the Army and Air Force Exchange Service ("AAFES"), has sued defendants the United States of America and AAFES for allegedly unlawful debt-collection practices. Count One alleges improper debt-collection and Count Two alleges improper finance charges. Defendants move for judgment on the pleadings, or, in the alternative, for partial dismissal on the grounds that: (i) there is a lack of subject-matter jurisdiction; (ii) jurisdiction is also lacking as to Count Two because no case or controversy exists; (iii) any recovery plaintiff might be able to obtain would be subject to immediate and equal setoff by the United States; and (iv) there is improper venue for all counts. For the reasons stated below, the motion for judgment on the pleadings or for partial dismissal is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

This order must take the well-pled allegations in the complaint as true. The AAFES issued credit cards to military personnel to purchase uniforms and other merchandise from post-exchange stores in U.S. military bases. For purposes of this action, the terms of usage were governed by the 1993 AAFES Credit Program Account Agreement. The credit-card plan under the agreement offered two types of purchases: the Uniform Clothing Deferred Payment Plan ("UC") for uniforms and the Deferred Payment Plan ("DPP") for other goods. Card users had the option to pay their balances in full or to pay a minimum monthly payment as shown on their account statements. UC balances were *not* subject to a finance charge while DPP balances were subject to a periodic finance charge. If card users failed to make monthly payments on time, the agreement allowed AAFES to impose "an administrative fee to cover the cost of processing and handling a delinquent claim," and "a penalty charge at 6 percent annually for failure to pay any part of this amount more than 90 days past due" (First Amd. Compl. Exh. A).

The federal agency referred delinquent debts to the Department of the Treasury, which administered the Treasury Offset Program ("TOP"). TOP collected delinquent debts owed to federal agencies and states pursuant to 26 U.S.C. 6402(d) (collection of debts owed to federal agencies) and 31 U.S.C. 3720A (reduction of tax refund by the amount of debt). When card users failed to repay their credit-card debt, TOP offset the delinquent debt against funds the government owed the debtor, if any, for benefits and tax refunds. The agreement, signed by Plaintiff Julius Briggs, explicitly authorized this referral: "Your debt may be submitted for deduction from any Federal Income Tax refund to which you may be entitled under provisions of the Deficit Reduction Act, 25 U.S.C. 6402(d) and 31 U.S.C. 3720A" (First Amd. Compl. Exh. A). Following the referral to TOP, AAFES continued to accrue interest, penalty and administrative charges on a delinquent account.

Plaintiff Briggs is an army veteran. On November 12, 1993, he began using a credit card issued by AAFES. He stopped using the card on December 16, 1993. By that point, he had incurred charges of $348.19 for UC purchases and $1508.89 for DPP purchases. His monthly credit-card statement required him to make a minimum payment of $31 by December

13, 1993. Plaintiff Briggs did not make the minimum payment and made no further payments on the account thereafter.

He received a credit-card statement with a closing date of December 18, 1993, which stated, "Notice: Administrative fees and penalties will be assessed on delinquent accounts as authorized by 31 U.S.C. 3717 [the Debt Collection Act]." In a box labeled, "Overdue Notice," the statement further stated, "Payment of $31.00 from previous statements has not been received. If the amount is not received by 04 Jan 94, overdue notification will be sent to your unit commander/work supervisor. If payment is not received by 18 Jan 94, your account (*) will be delinquent and payroll deductions will begin for the account balance. Charge privileges are suspended pending receipt of the overdue amount" (First Amd. Compl Exh. B).

AAFES continued to send Plaintiff Briggs billing statements between January 1994 and June 1997. AAFES, however, did not take any other action to collect the outstanding balance. In June 1997, AAFES referred the account to the Department of the Treasury. It is unclear from the pleadings whether AAFES sent further notice to Plaintiff Briggs regarding the referral (besides what was stated in the original agreement). TOP did not start offsetting payments until 2003. TOP withheld the following federal payments: $411.84 on April 18, 2003; $818.00 on January 30, 2004; $646.65 on February 18, 2005; $397.00 on February 17, 2006; and $511.30 on May 4, 2007 (First Amd. Compl Exh. C). Even after these payments, AAFES asserted that Plaintiff Briggs still owed more than $4000.

Plaintiff Briggs corresponded with AAFES about the allegedly improper debt collection prior to filing suit. Attached to the complaint was a letter dated May 24, 2007, from AAFES' general counsel. It appears that Plaintiff Briggs only discussed Count One, the improper debt-collection issue, at that time. The letter stated, in relevant part (First Amd. Compl Exh. D):

> I am responding to your letter dated May 14, 2007, concerning your client, Julius Briggs, and the debt he owes to the Army and Air Force Exchange Service (AAFES), a non-appropriated fund instrumentality of the United States.
>
> Your letter states that Mr. Briggs' debt has been delinquent since

3

December 1993 or January 1994 and that offsets of Mr. Briggs' tax returns occurred outside the 10 year limitation for collection of federal debts. For the reasons stated below, AAFES disagrees.

Plaintiff Briggs commenced this action in November 2007. A first amended complaint was filed in January 2008. He makes two claims: Count One alleges that AAFES unlawfully referred debt that had been outstanding for more than ten years for administrative offset in violation of the Debt Collection Act, 31 U.S.C. 3716(e)(1); and Count Two alleges that AAFES imposed finance charges on debt arising out of UC purchases, without any authority for doing so and in violation of a contractual provision prohibiting such charges. Plaintiff Briggs seeks to sue on behalf of a class of persons subject to TOP collections for debts outstanding for more than ten years (for Count One) and persons subject to TOP collections whose UC debt was improperly charged interest (for the Count Two). He requests that AAFES be enjoined from making referrals to TOP of debts outstanding for more than ten years. Plaintiff Briggs also seeks restitution of all allegedly improper TOP collections and UC finance-charge collections. Defendants now move for judgment on the pleadings and to dismiss the first amended complaint with prejudice, or, in the alternative, to dismiss all claims for relief in the first amended complaint except for Plaintiff Briggs' individual claim against the United States (contained in Count One of the complaint). A case management scheduling order was issued in February 2008.

**ANALYSIS**

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FRCP 12(c). A motion for judgment on the pleadings is evaluated according to virtually the same legal standard as a motion to dismiss under Rule 12(b)(6), in that the pleadings are construed in the light most favorable to the non-moving party. *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1130-31 (N.D. Cal. 2005) (Walker, J.). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and

4

that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).[1]

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1255, 1264–65 (2007).

Defendants also move to dismiss for lack of subject-matter jurisdiction. Defendants do not rely on outside evidence. "Whether subject-matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the plaintiff's complaint.] We assume [the plaintiff's] allegations to be true and draw all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

**1.   DOES THE COURT HAVE SUBJECT-MATTER JURISDICTION OVER THIS ACTION?**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 472, 475 (1994).

The parties contest whether the Administrative Procedure Act, 5 U.S.C. 701–06, versus the Little Tucker Act, 28 U.S.C. 1346, applies to Count One.[2] Defendants assert that jurisdiction exists with respect to Count One under the Little Tucker Act, which governs contract-based claims against the government. If the Little Tucker Act applies, potential class

---

[1] Unless indicated otherwise, internal citations are omitted from all cites.

[2] Plaintiff Briggs concedes that Count Two is contract-based and is subject to the Little Tucker Act.

5

members might be subject to the special-venue provision under 28 U.S.C. 1402(a), which requires all class members to reside in the judicial district where the action was brought. This venue provision could have a limiting effect on the class size, if a class were ever certified. Plaintiff Briggs, on the other hand, contends that the waiver exists under the APA. In that case, the general-venue provision under 29 U.S.C. 1391 would apply and persons residing outside the judicial district could be members of a certified class.[3]

In *Suburban Mortgage Assoc., Inc. v. United States Dept. Of Housing and Urban Development*, 480 F.3d 1116 (Fed. Cir. 2007), the Federal Circuit applied a two-step approach to evaluate an APA waiver. It first asked whether the plaintiff was really seeking money. "[O]ur cases have emphasized that in determining whether a plaintiff's suit is to be heard in district court or the Court of Federal Claims, we must look beyond the form of the pleadings to the substance of the claim. We have cautioned litigants that dressing up a claim for money as one for equitable relief will not remove the claim from Little Tucker Act jurisdiction and make it an APA case." *Suburban Mortgage*, 480 F.3d 1124. After discerning that the "true nature of a plaintiff's claim as a claim for money," the Federal Circuit then asked whether the claim was excluded from APA jurisdiction by the limitations set forth in Title 5, United States Code Sections 702 and 704. *Ibid*.[4]

Assuming *arguendo* that Plaintiff Briggs is making a claim for money, this order evaluates whether an APA waiver applies. The APA waives sovereign immunity only if three conditions are met: (i) the claims are not for "money damages," as that term is used in 5 U.S.C.

---

[3] There is a distinction between the Little Tucker Act and Big Tucker Act. The Little Tucker Act applies to money claims not exceeding $10,000. For these claims, district courts have concurrent jurisdiction with the Court of Federal Claims. The Big Tucker Act, codified at 28 U.S.C. 1491, grants the Court of Federal Claims exclusive jurisdiction over money claims against the United States where more than $10,000 is at stake.

[4] According to 5 U.S.C. 702 (emphasis added): "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States." In relevant part, 5 U.S.C. 702 provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."

702; (ii) an adequate remedy for the claims is not available elsewhere; *and* (iii) the claims do not seek relief expressly or impliedly forbidden by another statute. *Tuscon Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998). Defendants say that at least one of the conditions is not met here, so the APA waiver does not apply.

This order agrees. Plaintiff Briggs seeks less than $10,000 in allegedly wrongful offsets from the government. The Little Tucker Act provides district courts with concurrent jurisdiction over "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. 1346. If Plaintiff Briggs were to prevail, he could collect the amount of illegal offsets under the Little Tucker Act. This would be an adequate remedy for his claims.

Plaintiff Briggs argues that the Little Tucker Act does not provide an adequate remedy because it does not provide for injunctive or prospective relief. He relies primarily on *Bowen v. Massachusetts*, 487 U.S. 879 (1988). In *Bowen*, Massachusetts sued the Department of Health and Human Services for failing to reimburse the state for Medicaid expenses. The Supreme Court rejected the DHHS's argument that the Little Tucker Act provided an adequate remedy. It reasoned, "[T]he remedy available to the State in the Claims Court is plainly not the kind of 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA . . . The Claims Court does not have the general equitable powers of a district court to grant prospective relief." *Bowen*, 487 U.S. at 904–05. Plaintiff Briggs "seeks to modify AAFES's practice of collecting time-barred debt with respect to Briggs, the class he seeks to represent, and future AAFES cardholders" (Opp. 11). The Little Tucker Act, he argues, cannot provide him with an adequate remedy.

At this stage of the proceedings when no class has been certified, this order only looks to the validity of Plaintiff Briggs' individual claims. Plaintiff's reading of *Bowen* is overbroad. There is little risk that defendants would continue to illegally offset funds vis-a-vis Plaintiff Briggs once a court decided in his favor. Moreover, principles of res judicata would prevent

7

defendants from doing so. In *Consolidated Edison Co. of New York, Inc. v. United States Department of Energy*, 247 F.3d 1378, 1384–85 (Fed. Cir. 2001), the Federal Circuit stated:

> Turning first to the facts of this case, [plaintiff's] district court complaint seeks a prospective injunction on its future payments of money under EPACT [the Energy Policy Act]. In the event of success in its claims before the Court of Federal Claims, [plaintiff] will receive a refund of all payments under EPACT because the United States illegally exacted those funds. In the face of such a judgment, the United States could not proceed to assess further EPACT payments without again illegally exacting funds. Res judicata principles would require immediate refund of any assessment with interest. Moreover, this court cannot imagine that the United States would continue to require the utility companies to pay unlawful exactions.

So too here. Prospective relief would be superfluous. The Federal Circuit has distinguished between situations like this and the situation in *Bowen*. "While the Supreme Court in *Bowen* was concerned that the Court of Federal Claims would not be able to fashion the type of prospective relief that might have been necessary to resolve the suit, there can be no such concern here. Indeed, in the instant case, a single, uncomplicated payment of money would provide [the plaintiff] with an entirely adequate remedy. No prospective relief would be required and there would be no ongoing relationship to monitor and referee." *Brazos Elec. Power Co-op., Inc., v. United States*, 144 F.3d 784, 788 (Fed. Cir. 1998). In the instant action, once Plaintiff Briggs was paid, it would be unlikely (and inappropriate) for defendants to continue with wrongful offsets. Plaintiff Briggs only argues that his action "seeks a global change in the defendant's practices and requests injunctive relief on behalf of a nationwide class of people who have an ongoing relationship with the defendant" (Opp. 12 n.7). Again, at this stage, no class has been certified and this order only focuses on Plaintiff Briggs' claims. He has not shown why he personally would need prospective relief.

Another reason why Plaintiff Briggs claims that there is no other adequate remedy is because it is doubtful that Count One could be brought in the Court of Federal Claims under the Little Tucker Act.

> The cornerstone of this court's jurisdiction is the Tucker Act's money-mandating requirement. 'Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States.' Merely requesting money damages,

8

> however, does not satisfy the money-mandating criterion; there must be a statute, regulation, or contract that specifically allows the monetary relief plaintiff requests. Additionally, the specific authority granting money relief must be distinct from Tucker Act itself. In summary, plaintiff 'must demonstrate that the source of substantive law he relies upon "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."

*Cottrell v. United States*, 42 Fed. Cl. 144, 152 (Fed. Cl. 1998). Plaintiff Briggs contends that defendants have not demonstrated this.

Count One, however, does qualify as an illegal-exaction claim, which falls within the ambit of the Little Tucker Act. "Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law. The Court of Claims explained that an illegal exaction claim may be maintained when 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996). Here, Plaintiff Briggs claims that defendants have wrongfully offset his tax refunds and benefits. In effect, he has paid money over to the government and seeks return of that sum. This was done allegedly in contravention of the Debt Collection Act, 31 U.S.C. 3716(e)(1), which allowed offsets only on debts that were outstanding for less than ten years.

Plaintiff Briggs then relies on *Lawrence v. United States*, 69 Fed. Cl. 550 (Fed. Cl. 2006), to further claim that "it is doubtful that Briggs could bring an 'illegal exaction' claim with respect to the ten-year bar" (Opp. 13). In *Lawrence*, the Court of Federal Claims stated, "Although this Court could entertain a properly pleaded illegal exaction claim, Plaintiff has failed to state such a claim here. The offset Plaintiff is challenging would be an illegal exaction only if Plaintiff were 'not a debtor to the United States in the amount of the offset.'" *Id.* at 557.

This order fails to see how *Lawrence* helps Plaintiff Briggs. In *Lawrence*, a federal employee brought suit to recover money deducted from his salary by his employing agency due to an erroneous overpayment of an employee's living quarters allowance. The plaintiff in *Lawrence* did not contest that he was overpaid the living quarters allowance, and he acknowledged that the debt was due and owing. And although the plaintiff in *Lawrence*

9

alleged that the offsets violated the Debt Collection Act, he did not pursue the allegations in his motion papers or allege any facts supporting a violation of the statute. Here, Plaintiff Briggs says there was no debt due to the ten-year bar, and he certainly pursued the allegations in his memoranda. Moreover, there is an adequate remedy if Plaintiff Briggs has the opportunity to bring suit and obtain relief under the Little Tucker Act; an adequate remedy does not require that he necessarily prevail in court. In sum, because there is an adequate remedy under the Little Tucker Act, the APA waiver does not apply to Count One. Subject-matter jurisdiction exists for Count One only pursuant to the Little Tucker Act. *See also Brant v. Cleveland Nat. Forest Service*, 843 F.2d 1222, 1223 (9th Cir. 1988) (holding that an action alleging the wrongful withholding of pension funds falls under the Little Tucker Act).[5]

Because both counts are in district court due to the Little Tucker Act, AAFES must be dismissed as a party defendant. According to the Little Tucker Act, "For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service . . . shall be considered an express or implied contract with the United States." 28 U.S.C. 1346(a)(2). The United States is the only remaining defendant in this case.

**2.   IS THE CASE OR CONTROVERSY MOOT AS TO COUNT TWO?**

In Count Two, Plaintiff Briggs asserts that AAFES improperly imposed finance charges on his UC debt. Defendants "admit that interest charges were computed and added to Plaintiff Briggs' UC balance during the period alleged" (Br. 7). They assert, however, that because AAFES has removed the disputed interest charges before class certification and Plaintiff Briggs no longer uses the credit card, the claim alleged in Count Two is moot and should therefore be dismissed.

---

[5] In *Brant*, the United States Forest Service charged the plaintiff the cost of suppressing a fire on his property. The plaintiff refused to pay so the Forest Service made an administrative offset against his federal pension pursuant to 31 U.S.C. 3716. The plaintiff filed suit in district court seeking declaratory and injunctive relief, judicial review of the administrative offset, and damages equal to the pension amount withheld under the offset. The district court ruled in favor of defendants. The Ninth Circuit stated, "[The plaintiff's] claim against the United States is essentially one for money: He seeks pension funds that he alleges were wrongfully withheld by the United States pursuant to Cal.Health & Safety Code § 13009(a). His claim thus falls under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1982), which covers claims against the United States founded upon 'any Act of Congress, or any regulation of an executive department.' Indeed, [the plaintiff] pleaded the Little Tucker Act in his complaint as a basis for jurisdiction in the district court." *Ibid*.

10

"In general a case becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Public Utilities Comm'n of State of California v. FERC*, 100 F.3d 1451, 1458 (9th Cir.). "In 'determining whether a request for declaratory relief ha[s] become moot . . . basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Ibid*.

There are the following exceptions to the mootness doctrine. *First*, "[a] case otherwise moot will be heard if it presents an issue that is capable of repetition while evading review. 'This exception applies only in exceptional circumstances,' and it 'provides only minimal protection to individual plaintiffs.' In order to fit this exception, a controversy must meet two requirements: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id* at 1459. *Second*, "[c]ourts have held 'that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot,' unless 'there is no reasonable expectation that the wrong will be repeated.'" *Id.* at 1460. *Third*, "[a]nother exception to the mootness doctrine applies to situations where a petitioner would suffer collateral legal consequences if the actions being appealed were allowed to stand." *Ibid*.

Plaintiff Briggs argues that Count Two is not moot because it falls under the voluntary-cessation exception. According to plaintiff, defendants have not met their burden in showing that there is no reasonable expectation that the wrong will be repeated. Moreover, Plaintiff Briggs says, this is an especially important concern in a proposed class action. "To deny the right to appeal simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to sound judicial administration. Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite

11

waste of judicial resources by stimulating successive suits brought by other claiming aggrievement." *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Defendants counter that the action has been rendered moot *before* the motion for class certification has been filed. They argue that *Roper* does not apply because the issue of class certification had already been briefed, denied, unsuccessfully appealed and remanded before the question of mootness arose in this case. The Supreme Court has held that an action does not become moot if the named plaintiff's included claim evaporates only *after* the district court has certified a class action because "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant." *Sosna v. Iowa*, 419 U.S. 393, 399 (1975).

In contrast, the Supreme Court stated in *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398–99 (1980) (emphasis added):

> When the claim on the merits is "capable of repetition, yet evading review," the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation. The "capable of repetition, yet evading review" doctrine to be sure, was developed outside the class-action context. But it has been applied where the named plaintiff does have a personal stake at the outset of the lawsuit, *and where the claim may arise again with respect to that plaintiff*; the litigation then may continue notwithstanding the named plaintiff's current lack of a personal stake. Since the litigant faces some likelihood of becoming involved in the same controversy in the future, vigorous advocacy can be expected to continue.
>
> When, however, there is no chance that the named plaintiff's expired claim will reoccur, mootness still can be avoided through certification of a class prior to expiration of the named plaintiff's personal claim.

Under *Geraghty*, if there were no chance that Plaintiff Briggs' expired claim could reoccur, a class would have to be certified before his personal claim expired. This, however, did not happen here. There is little chance that the claim may arise again with respect to Plaintiff Briggs. From the pleadings, it did not appear that he notified defendants about the improper charges in his correspondence prior to suit. Plaintiff Briggs then received his interest correction before a class-certification motion was filed and before his complaint was even answered. Plaintiff Briggs has not used the credit card since December 1993 and he is therefore not likely

12

to be subject to any interest charge on UC purchases in the future. There is no reasonable expectation that the wrong would be repeated for Plaintiff Briggs. Yet, if he were allowed to move forward with class certification, the class would be headed by a representative who did not have a live stake in the litigation. Accordingly, Count Two is dismissed as moot.[6]

### 3. SHOULD JUDGMENT BE ENTERED AGAINST PLAINTIFF BECAUSE HE WILL NOT EARN NET RECOVERY?

Defendants further argue that, because Plaintiff Briggs' debt balance exceeds the amount he claims as damages, it would be futile to devote judicial resources for discovery, further hearings, and a trial that will earn Plaintiff Briggs no net recovery. Defendants cite *Mitsui & Co., Inc. v. Puerto Rico Water Res. Auth.*, 528 F. Supp. 768, 780 (D.P.R. 1981), and *Nortz v. United States*, 294 U.S. 317, 327 (1936), for the proposition that plaintiff should not be allowed to go through the futile exercise of suing merely to win a suit for breach-of-contract or to claim nominal damages. This order rejects defendants' contention. Plaintiff Briggs is *not* suing merely to win a suit or to claim nominal damages. If he prevails in this action, his debt will be reduced by several thousands of dollars and his benefits and tax refunds will not be subject to offset.

### 4. IS THERE IMPROPER VENUE?

Finally, defendants assert improper venue. According to defendants, the governing venue provision is 28 U.S.C. 1402(a), which applies to the Little Tucker Act, not 29 U.S.C. 1391, the general-venue provision. Under 28 U.S.C. 1402(a), any civil action in a district court against the United States under the Little Tucker Act may be prosecuted only in the judicial district where the plaintiff resides. There is improper venue here, defendants argue, because the

---

[6] *See also Lusardi v. Xerox Corp.*, 975 F.2d 964, 983 (3d Cir. 1992): "We are not aware of a single case holding that a district court has subject matter jurisdiction to hear a motion to certify filed by named plaintiffs whose personal claims have expired. Without a rule that plaintiff have a live claim at least when the motion to certify is filed, the 'case or controversy' requirement would be almost completely eviscerated in the class action context, since almost anybody might be deemed to have standing to move to certify a class. For example, a concerned citizen, with no personal grievance whatsoever against defendant, might file a class action out of empathy for those who were allegedly injured. However, '[t]o permit the certification of a class headed by a representative who did not have a live controversy with the defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions.' The mere fact that the named plaintiffs in this case used to have a controversy with the defendant cannot confer a valid, unending procedural claim to represent that class."

13

first amended complaint does not limit class membership to persons residing within the Northern District of California. The issue of whether there is proper venue for the proposed class members should be resolved at a future proceeding for class certification.

## CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings or for partial dismissal is **DENIED IN PART AND GRANTED IN PART**. Venue and jurisdiction are proper here only under the Little Tucker Act. Count Two, however, is dismissed as moot.

**IT IS SO ORDERED.**

Dated: April 7, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14