UNITED STATES DEPARTMENT OF JUSTICE
Ruth A. Harvey
Assistant Director
Michael J. Quinn (D.C. Bar No. 401376)
Beth E. Cook (D.C. Bar No. 413828)
Trial Attorneys
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 616-2265; Facsimile: (202) 514-9163
beth.cook@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIUS BRIGGS, on behalf of himself and all others similarly situated,<br><br>    Plaintiff/Counterdefendant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant/Counterplaintiff. | No. CV-07-5760 WHA<br><br>DECLARATION OF WENDY COKER-STOWE IN SUPPORT OF THE UNITED STATES'S MOTION FOR SUMMARY JUDGMENT<br><br>Date: October 2, 2008<br>Time: 8:00 a.m.<br>Courtroom 9, 19th Floor |

Pursuant to 28 U.S.C. § 1746, I, Wendy Coker-Stowe, state as follows:

1. I am employed by the Army and Air Force Exchange Service (AAFES). I have been employed by AAFES for three years.

2. My title is Accounting Tech IV, assigned to the Finance and Accounting Collection Division, AAFES. I have been in this position since January 2008. In this position, my responsibilities include, but are not limited to, supervising a group of employees responsible

COKER-STOWE DECLARATION    No. CV-07-5760 WHA    Page 1 of 4

for all support functions of the Collections Department, including researching customer accounts, preparing account summaries, and responding to customer inquiries.

3. As an Accounting Tech IV, I am often asked to prepare account summaries of customers' accounts with AAFES. I was asked to prepare such an accounting for Julius Briggs's AAFES account based on the terms of the 1993 AAFES Credit Program Account Agreement (1993 Credit Agreement) that he entered into with AAFES, attached as Exhibit A to my declaration. I have access to and knowledge about records showing charges to Mr. Briggs's account.

4. My accounting, attached as Exhibit B to my declaration, is a summary of activity on Mr. Briggs's AAFES credit account from the open date of November 6, 1993 to the present.

5. My accounting shows that, even after reducing the amount owed to account for the offsets made through the Treasury Offset Program, Mr. Briggs has a total outstanding balance of $1,925.22. (Ex. B at 2.)

6. Mr. Briggs made two different types of charges on his AAFES account. He initially made seven different purchases for what is coded as "E1 debt," general merchandise purchased through the "Deferred Payment Plan" (DPP). These seven purchases totaled $1,508.89. These purchases are listed in the second column on the first page of my accounting. (Ex. B at 1.)

7. Mr. Briggs also made two different purchases for what is coded as "E2 debt," uniforms purchased through the "Uniform Clothing Deferred Payment Plan" (UCDPP). These two purchases totaled $348.19, and are listed in the sixth column on the first page of my accounting. (Ex. B at 1.)

8.  Pursuant to the 1993 Credit Agreement, I calculated the finance charge for Mr. Briggs's DPP purchases by applying the periodic rate in effect at the close of the bill cycle each month to the "average daily balance." (Ex. A, ¶ 5.) The 1993 Credit Agreement states that the finance charge calculations are based on an annual percentage rate of 12%, which is equivalent to a periodic rate of 1% per month. (Ex. A, ¶ 6.) The finance charges apply only to the DPP purchases; uniform purchases are not subject to finance charges under the 1993 Credit Agreement. (Ex. A, ¶ 5.) My calculations of the finance charges that should be applied to Mr. Briggs's DPP purchases based on the terms of the 1993 Credit Agreement are shown in column 3 of my accounting. The finance charges total $1,829.36 for the period of December 1993 through January 2004. (Ex. B at 2.) I stopped calculating the finance charges as of January 18, 2004 because AAFES typically does not assess such charges once the ten-year period for taking administrative offsets has passed.

9.  Pursuant to the 1993 Credit Agreement, AAFES assesses penalty charges of 6% annually when an account holder fails to pay any part of the amount more than 90 days past due. (Ex. A, ¶ 9.) Mr. Briggs made no voluntary payments on his account. My accounting shows that, beginning on the statement dated July 18, 1995, penalty charges began to accrue on both the DPP and UCDPP accounts at a rate of 6% annually on the total amount past due. The time period during which charges were assessed to Mr. Briggs account are reflected in the "Remarks" column of my accounting. The penalty charges shown on the fourth and seventh columns of my accounting total $951.16. (Ex. B. at 2.) I stopped calculating the penalty charges as of January 18, 2004 because AAFES typically does not assess such charges once the ten-year period for taking administrative offsets has passed.

COKER-STOWE DECLARATION    No. CV-07-5760 WHA    Page 3 of 4

10. My accounting shows that there were five offsets taken through the Treasury Offset Program that were applied to reduce the amount due and owing on Mr. Briggs's account. My understanding is that Mr. Briggs does not contest the first offset taken on April 27, 2003 because that offset occurred before the expiration of the ten-year offset period. The amounts credited on Mr. Briggs' account are the income tax offsets minus a standard fee charged by the Department of the Treasury for administering the offset program. That fee is electronically deducted from the offset amount prior to the funds being transferred from Treasury to AAFES.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August _15_, 2008.

_____
Wendy Coker-Stowe

# EXHIBIT A

## AAFES CREDIT PROGRAM ACCOUNT AGREEMENT

These are the terms and conditions for establishing an AAFES Credit Program account with AAFES. The conditions of this agreement apply to the Deferred Payment Plan and the Uniform Clothing Deferred Payment Plan. These payment plans are governed by the laws of the United States of America.

1. AAFES will establish DPP credit limits and monthly payment limits based on your disposable income. All military grades have a separate limit for UCDPP. Your indebtedness to AAFES for purchases under these plans may not exceed these limits. Your credit limits will be shown on your monthly statement of account.

    a. You may continue to make purchases through your ETS/expiration date. At that time, your charge privileges are suspended. You must notify us if your ETS changes and your privileges will be restored. If you do not reenlist, you may pay off the obligation over the normal time period, even after separating from the service.

    NOTE: In the event AAFES is notified of your pending separation from military/civilian service under other than normal/honorable conditions, AAFES may request the U.S Armed Forces, or other organizations for civilian personnel, to withhold from your pay for payment to AAFES, an amount EQUAL TO THE BALANCES owed in connection with your obligations under this agreement.

    b. If you are retiring, or transferring to the National Guard or Reserve, you may retain and use your account in your new customer status.

2. We will send you a monthly statement for each billing cycle in which there is account activity or your balance owed is greater than $1.00. The statement will show your beginning balance, detail transactions for the billing cycle, FINANCE CHARGES, if any, and the new account balance(s). The statement will also show the payments due for each active payment plan and the payment due date. Monthly payments are determined as follows:

    a. DPP: When you make a purchase under the Deferred Payment Plan, your monthly payment is determined based on a 36 month payback period (including new purchases). The minimum monthly payment for DPP is $10, unless the new balance is less than $10, in which case the new balance is due in full by the payment due date.

    b. UCDPP: When you make a purchase under the Uniform Clothing Deferred Payment Plan, your monthly payment is determined based on an 8 month payback period (including new purchases). The minimum monthly payment for UCDPP is $25, unless the new balance is less than $25, in which case the new balance is due in full by the payment due date.

3. Payments are automatically applied to all account balances unless otherwise specified. Your monthly obligation can be prepaid up to two months in advance. All other money received is applied against the remaining balance(s).

4. You have the following payment options:

    a. You may pay the entire Deferred Payment Plan balance on or before the payment due date shown on the monthly statement. No additional finance charges will be assessed.

    b. You may pay minimum monthly payment amount as shown on your statement of account.

    NOTE--IRREGULAR PAYMENTS: We will accept and post payments marked as "PAYMENT IN FULL" or with similar terms; however, acceptance of checks or money orders with such terms does not constitute acknowledgment by AAFES that the account is paid in full.

5. There is no periodic FINANCE CHARGE assessed against the Uniform Clothing Deferred Payment Plan. The Deferred Payment Plan has a periodic FINANCE CHARGE, as follows:

    a. We figure the FINANCE CHARGE for purchases on your account by applying the periodic rate each month to the AVERAGE DAILY BALANCE of purchases on your account (including current transactions).

    b. To get the AVERAGE DAILY BALANCE, we take the beginning balance of purchases each day (including UNPAID FINANCE CHARGES), add any new purchases or debit adjustments, and subtract any payments or credits. This gives us the daily balance of purchases. Then, we add up all the daily balances for the billing period and divide the total by the number of days in the billing period. This gives us the AVERAGE DAILY BALANCE.

    c. The FINANCE CHARGE is determined by applying the periodic rate in effect at the close of the bill cycle to the AVERAGE DAILY BALANCE.

    d. GRACE PERIOD--No FINANCE CHARGE is assessed;

        (1) In a monthly billing period during which there was no previous DPP balance or in a monthly billing period during which payments and/or credits equal or exceed the previous balance.

        (2) You may pay your entire balance at any time without incurring additional FINANCE CHARGES.

6. The FINANCE CHARGE calculation is based on an ANNUAL PERCENTAGE RATE of 12%, a periodic rate of 1% per month.

7. If the amount of the Finance Charge due for any billing period is less than fifty cents ($.50), a minimum FINANCE CHARGE of fifty cents ($.50) will be charged for the billing period.

8. LATE PAYMENTS:

    a. If we do not receive your payment by the due date, your account is considered OVERDUE. AAFES credit program charge privileges are withdrawn until the overdue amount is paid, and your unit commander or work supervisor may be notified and asked to assist in collection.

    b. If payment is not made within 30 days after the due date, your account is considered DELINQUENT, at which time the entire account balance becomes due. At the same time, your AAFES credit program and check presentation privileges are both suspended.

    c. In the event your check presentation privileges are suspended for reasons other than account delinquency, charge privileges are also suspended, even if your account is not in an "OVERDUE" or "DELINQUENT" status.

AAFES FORM 6450-1 (FEB 93) (REPLACES 6450-8 AND 6450-85)
Item No. 752645001     CRC No. 860-6147

9. Under the provisions of 31 U.S.C. 3717, AAFES will assess on a delinquent debt: (1) an administrative fee to cover the cost of processing and handling a delinquent claim; and (2) a penalty charge of 6 percent annually for failure to pay any part of this amount more than 90 days past due.

10. Under the provisions of 31 U.S.C. 3711(f), AAFES may disclose your indebtedness to a consumer reporting agency should it become delinquent.

11. Your debt may be submitted for deduction from any Federal Income Tax refund to which you may be entitled under provisions of the Deficit Reduction Act, 26 U.S.C. 6402(d) and 31 U.S.C. 3720 A.

**CHANGE IN TERMS**

12. We have the right to change any of the terms of this agreement at any time. We will provide you written notification of any changes, as required by law, at least 30 days before the effective date of the change.

13. Any change in terms will apply to your account on the effective date of the change and will apply to transactions made on or after the effective date, as well as to any outstanding balance(s). If the change has the effect of increasing your finance charge, the periodic interest rate or other fees or charges, the change will not apply if:

    a. You notify us in writing within the period of notification specified in the change that you do not agree to accept such change, and/or
    b. You do not use your account for purchases on or after the effective date specified in the notice of change. Use of the account for purchases on or after the date of the change will constitute your acceptance of the terms specified in the change.

**FAMILY MEMBER AUTHORIZATION**

14. The account holder may authorize family members over the age of 18 to use the account(s) without their being present. To do this, account holders can identify the authorized family members on the application.

15. Family members with a current General Power of Attorney signed by the account holder may use the account even if not specifically named by the account holder on the application. When a family member presents a General Power of Attorney at the exchange, we will enter that family member's SSN as an authorized user of the customer's account(s). We will record that action in the account holder's account record.

16. Withdrawal of family member authorization must be requested by the account holder in writing. A written request is also required when the account holder rescinds a General Power of Attorney previously provided to a family member.

### IN CASE OF ERRORS OR INQUIRIES ABOUT YOUR BILL

17. This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

18. Notify Us in Case of Errors or Questions About Your Bill

    If you think your bill is wrong, or if you need more information about a transaction on your bill, write us (on a separate sheet) at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

19. In your letter, give us the following information:

    a. Your name and account number.
    b. The dollar amount of the suspected error.
    c. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

20. Your Rights and Our Responsibilities After We Receive Your Written Notice

    a. We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

    b. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

    c. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

    d. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

21. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Purchases**

22. If you have a problem with the quality of property or services that you purchased on account, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or service. There are two limitations on this right:

    a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
    b. The purchase price must have been more than $50.

24. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**EXHIBIT B**

| Account opened 06 Nov 1993 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | DPP Purch/ Principal | DPP Finance Chgs 12% | DPP Penalty Chgs 6% | DPP Balance | UCDPP Purch | UCDPP Penalty Chgs 6% | UCDPP Balance | Payments | Combined Balance | Remarks |
| 12-Nov-93 | $701.40 | | | $701.40 | | | $0.00 | | $701.40 | |
| 12-Nov-93 | $33.64 | | | $735.04 | | | $0.00 | | $735.04 | |
| 13-Nov-93 | $176.25 | | | $911.29 | | | $0.00 | | $911.29 | |
| 27-Nov-93 | $122.15 | | | $1,033.44 | | | $0.00 | | $1,033.44 | |
| 27-Nov-93 | $169.20 | | | $1,202.64 | | | $0.00 | | $1,202.64 | |
| 05-Dec-93 | $191.25 | | | $1,393.89 | | | $0.00 | | $1,393.89 | |
| 13-Dec-93 | $115.00 | | | $1,508.89 | | | $0.00 | | $1,508.89 | |
| 15-Dec-93 | | | | $1,508.89 | $154.03 | | $154.03 | | $1,662.92 | |
| 16-Dec-93 | | | | $1,508.89 | $194.16 | | $348.19 | | $1,857.08 | |
| 18-Dec-93 | | $9.11 | | $1,518.00 | | | $348.19 | | $1,866.19 | |
| 18-Dec-94 | | $181.07 | | $1,699.07 | | | $348.19 | | $2,047.26 | Jan - Dec 1994 |
| 18-Dec-95 | | $181.07 | | $1,880.14 | | | $348.19 | | $2,228.33 | Jan - Dec 1995 |
| | | | $45.27 | $1,925.41 | | | $348.19 | | $2,273.60 | July - Dec 1995 |
| | | | | $1,925.41 | | $10.45 | $358.64 | | $2,284.05 | July - Dec 1995 |
| 18-Dec-96 | | $181.07 | | $2,106.48 | | | $358.64 | | $2,465.12 | Jan - Dec 1996 |
| | | | $90.53 | $2,197.01 | | | $358.64 | | $2,555.65 | |
| | | | | $2,197.01 | | $20.89 | $379.53 | | $2,576.54 | |
| 18-May-97 | | $75.45 | | $2,272.46 | | | $379.53 | | $2,651.99 | Jan - May 1997 |
| | | | $37.70 | $2,310.16 | | | $379.53 | | $2,689.69 | |
| | | | | $2,310.16 | | $8.70 | $388.23 | | $2,698.39 | |
| | | | | $2,310.16 | | | $388.23 | | $2,698.39 | |
| Totals | $1,508.89 | $627.77 | $173.50 | $2,310.16 | $348.19 | $40.04 | $388.23 | $0.00 | $2,698.39 | |

CUSTOMER'S NAME: Julius L. Briggs    Case 3:07-cv-05760-WHA    Document 40    Filed 08/15/2008    Page 10 of 10   Collection System Account Summary
ACCOUNT NUMBER: xxx-xx-3755

| DATE | DPP Purch/ Principal | DPP Finance Chgs 12% | DPP Penalty Chgs 6% | DPP Balance | UCDPP Purch | UCDPP Penalty Chgs 6% | UCDPP Balance | Payments | Combined Balance | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| **Debt Transferred to Collections Dept** | | | | | | | | | | |
| | $1,508.89 | $627.77 | $173.50 | $2,310.16 | $348.19 | $40.04 | $388.23 | | $2,698.39 | |
| 01-Dec-97 | | $106.23 | | $2,416.39 | | | $388.23 | | $2,804.62 | June - Dec 1997 |
| | | | $52.96 | $2,469.35 | | | $388.23 | | $2,857.58 | |
| | | | | $2,469.35 | | $12.22 | $400.45 | | $2,869.80 | |
| 01-Dec-98 | | $181.07 | | $2,650.42 | | | $400.45 | | $3,050.87 | Jan - Dec 1998 |
| | | | $90.32 | $2,740.74 | | | $400.45 | | $3,141.19 | |
| | | | | $2,740.74 | | $20.84 | $421.29 | | $3,162.04 | |
| 01-Dec-99 | | $181.07 | | $2,921.81 | | | $421.29 | | $3,343.11 | Jan - Dec 1999 |
| | | | $90.32 | $3,012.14 | | | $421.29 | | $3,433.43 | |
| | | | | $3,012.14 | | $20.84 | $442.14 | | $3,454.27 | |
| 01-Dec-00 | | $181.07 | | $3,193.21 | | | $442.14 | | $3,635.34 | Jan - Dec 2000 |
| | | | $90.32 | $3,283.53 | | | $442.14 | | $3,725.66 | |
| | | | | $3,283.53 | | $20.84 | $462.98 | | $3,746.50 | |
| 01-Dec-01 | | $181.07 | | $3,464.60 | | | $462.98 | | $3,927.57 | Jan - Dec 2001 |
| | | | $90.32 | $3,554.92 | | | $462.98 | | $4,017.89 | |
| | | | | $3,554.92 | | $20.84 | $483.82 | | $4,038.73 | |
| 01-Dec-02 | | $181.07 | | $3,735.99 | | | $483.82 | | $4,219.80 | Jan - Dec 2002 |
| | | | $90.32 | $3,826.31 | | | $483.82 | | $4,310.12 | |
| | | | | $3,826.31 | | $20.84 | $504.66 | | $4,330.96 | |
| 01-Dec-03 | | $181.07 | | $4,007.38 | | | $504.66 | | $4,512.03 | Jan - Dec 2003 |
| | | | $90.32 | $4,097.70 | | | $504.66 | | $4,602.35 | |
| | | | | $4,097.70 | | $20.84 | $525.50 | | $4,623.19 | |
| 18-Jan-04 | | $8.94 | | $4,106.63 | | | $525.50 | | $4,632.13 | Jan 1 - 18, 2004 (10yr from Del Date) |
| | | | $4.45 | $4,111.09 | | | $525.50 | | $4,636.58 | |
| | | | | $4,111.09 | | $1.03 | $526.52 | | $4,637.61 | |
| 27-Apr-03 | | | | | | | | ($398.64) | $4,238.97 | TOP Payment - Fee $13.20 |
| 10-Feb-04 | | | | | | | | ($805.80) | $3,433.17 | TOP Payment - Fee $12.20 |
| 24-Feb-05 | | | | | | | | ($631.65) | $2,801.52 | TOP Payment - Fee $15.00 |
| 23-Feb-06 | | | | | | | | ($382.00) | $2,419.52 | TOP Payment - Fee $15.00 |
| 10-May-07 | | | | | | | | ($494.30) | $1,925.22 | TOP Payment - Fee $17.00 |
| | $1,508.89 | $1,829.36 | $772.83 | | $348.19 | $178.33 | | ($2,712.39) | $1,925.22 | Totals |