LAW OFFICES OF S. CHANDLER VISHER
S. Chandler Visher (California State Bar No. 52957)
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Telephone: (415) 901-0500; Facsimile: (415) 901-0504
chandler@visherlaw.com

CONSUMER LAW OFFICE OF MARIE NOEL APPEL
Marie Noel Appel (California State Bar No. 187483)
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Telephone (415) 901-0508; Facsimile: (415) 901-0504
marie@consumerlaw.ws

PUBLIC CITIZEN LITIGATION GROUP
Deepak Gupta (pro hac vice application to be filed)
Brian Wolfman (pro hac vice application to be filed)
1600 20th Street, NW
Washington, DC 20009
Telephone: (202) 588-7739; Facsimile: (202) 588-7795
dgupta@citizen.org; brian@citizen.org

Attorneys for plaintiff Julius Briggs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIUS BRIGGS, on behalf of himself and all others similarly situated,<br>　　　　　　　Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>　　　　　　　Defendant. | No. CV – 07 – 5760 WHA<br><br>**CLASS ACTION**<br><br>**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　October 2, 2008<br>Time:　　8:00 A.M.<br>Location: Courtroom 9, 19th Floor |

/ / /

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 2

II.  ISSUES TO BE DECIDED. ....................................................................................... 4

IV.  ARGUEMENT ............................................................................................................ 4

A.  AAFES debt claim is not one that "arises out of the transaction or occurrence that is the subject matter" of Briggs' Claim that tax refund illegally withheld ..................... 4

B.  Court Correctly Rejected Dismissal Based of on Absence of Cash Recovery .............. 10

   1. Declaratory Relief is Appropriate Even if Plaintiff is Not Entitled to Net Monetary Relief ................................................................................................................. 11

v. CONCLUSION ............................................................................................................ 14

**TABLE OF AUTHORITIES**

**Cases**

*In re Malone,* 115 B.R. 252, 254 (Bankr. E.D. Cal. 1990) ................................................................ 4

*Woodrow v. Stake Family Trust,* 2006 WL 2092630, slip p. 1 (N.D. Cal. July 27, 2006) ............. 4

*IML Freight, Inc. v. United States,* 639 F.2d 676 (Ct.Cl.1980) ........................................................ 5

*Mariner v. United States,* 1 Cl. Ct. 430 (Cl. Ct. 1983) ............................................................ 5, 6, 9

*Sea-Land Service, Inc. v. United States,* 493 F.2d 1357 (Ct.Cl.1974) ........................................... 6

*American Heritage Bancorp v. United States,* 56 Fed. Cl. 596 (Ct.Cl. 2003) ............................... 7

*Jana, Inc. v. United States,* 34 Fed. Cl. 447 (1995) ................................................................. 8, 10

*Simmonds Precision Products, Inc. v. United States,* 546 F.2d 886 (Ct. Cl. 1976) .................. 8, 9

*Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) ............................ 13

*Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission,* 34 F.Supp. 26 (M.D.Penn
    1940) ............................................................................................................................................ 13

*Nemitz v. Norfolk & W. Ry. Co.,* 309 F.Supp. 575, 585 (N.D.Ohio, 1969) .................................. 13

*A.L. Mechling Barge Lines, Inc. v. Unites States,* 368 U.S. 324, 3331 (1961) ............................ 13

*American Nat. Property and Cas. Co. v. Weese,* 863 F.Supp. 297, 299 (S.D.W.Va., 1994) ....... 13

*North Star Alaska v. United States,* 9 F.3d 1430, 1432 (C.A.9 (Alaska), 1993).) ....................... 14

**Rules**

FRCP, Rule 13(a)(b) ............................................................................................................................ 4

FRCP, Rule 56(d)(1) .......................................................................................................................... 11

FRCP, Rule 57 ................................................................................................................................... 13

**Statutes**

28 U.S.C. §2415(f) ............................................................................................ 2, 4, 5, 6, 8, 9, 10, 14

28 U.S.C. §2415(a) ............................................................................................................................. 4

28 U.S.C. §2411 ................................................................................................................................ 11

28 U.S.C. §2201 ................................................................................................................................ 13

28 U.S.C. §2202 ................................................................................................................................ 13

## I. INTRODUCTION

The Court noted in its Order on defendants' Motion for Judgment on the Pleadings that the government had argued in that motion that "because Plaintiff Briggs' debt balance exceeds the amount he claims as damages" the complaint should be dismissed. (Order Granting in Part and Denying and Defendants' Motion for Judgment on the Pleadings or for Partial Dismissal ("Order on Motion"), Doc. 34, 14:6 - 9.) The Court did not mince words in deciding the merits of the government's position: "This order rejects the defendants' contention." (Order on Motion, 14:12 - 13.) In rejecting the government's argument the Court explained that "Plaintiff Briggs is *not* suing merely to win a suit or to claim nominal damages. If he prevails in this action . . . his benefits and tax refunds will not be subject to offset.[1]" (Order on Motion, 14:13 – 16.) In its Motion for Summary Judgment the government makes the exact same argument, that Plaintiff can not get "any monetary recovery from the United States." (Notice of Motion and Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("MSJ"), Doc 39, 1:13; [Proposed] Order, Doc. 39 p. 12, line 5.) The government cites no authority in its Motion for Summary Judgment that bears on the reasons the Court gave for rejecting the government's position; in fact the government does not even acknowledge in its papers that its position has already been rejected. The Court's prior determination that Plaintiff's potential inability to obtain a net money judgment is not a bar to his suit was undoubtedly correct and should not be disturbed.

The real thrust of the government's Motion for Summary Judgment appears to be to obtain an affirmative judgment against Plaintiff for amounts it claims are still due to it. The government's counterclaim "may, if time-barred, be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery" *unless* the government's claim "arises out of the transaction or occurrence that is the subject matter" of Plaintiff's claim. (28 U.S.C. § 2415(f).) To obtain a judgment against Plaintiff for the unpaid

---

[1] The Court's statement is unaffected by the change in the law noted in footnote 1 of the Motion for Summary Judgment, as the government contends that the applicable ten year period is found in 31 C.F.R. section 285.2(d)(1)(ii), which has not been amended.

balance on the AAFES debt, not just a setoff against Plaintiffs, not to exceed Plaintiff's recovery, the government must show that its claim "arises out of" the same "transaction or occurrence" as the Plaintiff's claim. Plaintiff Briggs' claim that his tax refund should have been given to him in the years 2004 – 2007 rather than to the Army and Air Force Exchange Service (AAFES), because it was illegal to offset the tax refunds for a debt more than 10 years old, is not one that "arises" out of the 1993 credit card transactions on which the government's counterclaim is based. Plaintiff's claim "arises out of" a statutory violation that occurred more than 10 years after the debt became delinquent in connection with his tax refund.

Plaintiff will first demonstrate that the government is limited in any counterclaim to, at most, an offset against the amount of Plaintiff's recovery. Plaintiff will then explore problems with defendant's claim that Plaintiff's complaint should be dismissed without a determination of the merits of his claim that the offsets were illegal.

## II.    ISSUES TO BE DECIDED

The Motion for Summary Judgment presents two issues: (1) Should judgment be awarded to defendant on Plaintiff's complaint, with a determination of whether the complained offsets were illegal, based on the fact the government may have an offset right equal to Plaintiff's monetary recovery and; (2) Should judgment be entered on the government's counterclaim for amounts in addition to its claim of setoff against plaintiff's recovery.

## III.    RELEVANT FACTS

On January 18, 2004, Plaintiff Briggs became delinquent on debt owed to AAFES.. On the dates and in the amounts set forth in Exhibit B of the Declaration of Wendy Coker-Stowe in Support of the United States Motion for Summary Judgment, the United States made administrative offsets against tax refunds due to Plaintiff. (Declaration of Wendy Coker-Stowe in Support of the United States's Motion for Summary Judgment, Doc. 40.) The only justification asserted by the government for the offsets was to pay the AAFES debt. The offsets made after January 18, 2004, were made more than 10 years after the debt on which they were based was delinquent.

## IV. ARGUMENT

### A. *AAFES debt claim is not one that "arises out of the transaction or occurrence that is the subject matter" of Briggs' Claim that tax refund illegally withheld*

28 U.S.C. section 2415(f) acts as an exception to the six year statute of limitations on actions by the United States to collect debts found in 28 U.S.C. 2415(a). The exception is different for a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" than for a claim that does not so arise. If the government's claim "arises" out of Mr. Briggs' claim, then the government may assert the full amount of its claim in a counterclaim. If the government's claim is not one that "arises" out of Mr. Briggs' claim, then the government is limited to an offset that at most can be equal to the amount of Mr. Briggs' "recovery" against the government. (28 U.S.C. 2415(f).)

The distinction in section 2415(f) between counterclaims that are unlimited in amount and those that are limited to Plaintiff's "recovery" parallel's the distinction between compulsory counterclaims in Federal Rules of Civil Procedure Rule 13(a) and permissive counterclaims in Rule 13(b), so that cases interpreting the compulsory counterclaim provisions of Rule 13(a) may offer "useful guidance" in determining when a claim arises out of the same "transaction or occurrence." (*In re Malone*, 115 B.R. 252, 254 (Bankr. E.D. Cal. 1990.) The test "for determining whether a counterclaim is compulsory under Rule 13(a) is whether the counterclaim bears a logical relationship to the Plaintiff's claim." (*Id.*) Magistrate Judge Wayne Brazil explained how this logical relation test works in *Woodrow v. Stake Family Trust*, 2006 WL 2092630, slip p. 1 (N.D. Cal. July 27, 2006):

> "In determining whether a counterclaim is compulsory, the Ninth Circuit applies a 'logical relationship test,' where the court 'analyze[s] whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.' *Pochiro v. Prudential Ins. Co. of Amer.,* 827 F.2d 1246, 1249 (9th Cir.1987) *(quoting Harris v. Steinem,* 571 F.2d 119, 123 (2d Cir.1978)). A logical relationship exists when a counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the

> Plaintiff's claim rests activates additional legal rights otherwise dormant in the defendant. *Pinkstaff v. United States (In re Pinkstaff),* 974 F.2d 113, 115 (9th Cir.1992); *see also Moore v. New York Cotton Exch.,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)"

The "the aggregate core of facts upon which the Plaintiff's claim rests" are that he was owed tax refunds that the government withheld without a legal basis to do so.  The claimed basis for the offset against the tax refund due, a credit card debt to AAFES incurred more than 10 years before, is only relevant to Plaintiff's claim to the extent that Plaintiff has the burden of showing that the government did not have a legitimate basis for the offset, and then only to the extent of showing the delinquency date of the debt.  The validity of the underlying debt, the nature of the contract under which the debt was incurred, the failure of Plaintiff to make payments on the debt, the balance due on the contract and how it is calculated and other matters relevant to the government's counterclaim are not part of the "aggregate core facts upon which the Plaintiff's claims rests."

The government argues that its counterclaim "is plainly rooted in the exact same contract as the Plaintiff's claim" and thus meets the requirements for an unlimited counterclaim under section 2415(f). (MSJ, 9:3 – 4.)  In passing section 2415 the Congress did not intend to allow the government to illegally withhold a 2007 tax refund and then, when the taxpayer sued for payment of the refund, use the tax refund suit as a pretext to revive a 1994 credit card debt claim that had been time barred by the same statute, so that the government ends up not only keeping the tax refund but getting a judgment against the debtor that it could not have gotten if it had not forced the debtor to sue it in order to get the illegally withheld tax refund.

Where the government's debt claim is unrelated to the plaintiff's complaint, the "not to exceed the amount of the opposing party's recovery" portion of section 2415(f) has been applied. For example, in *IML Freight, Inc. v. United States* 639 F.2d 676 (Ct. Cl. 1980) the government administratively set off against a payment claim by a freight carrier on one job, a time-barred claim it had against the carrier for damage to freight shipped on a prior job.  The court found that the "not to exceed the amount of the opposing party's recovery" language was applicable.  (*IML Freight, Inc. v. United States,* 639 F.2d at 679.)  In *Mariner v. United States*, 1 Cl. Ct. 430 (Cl. Ct. 1983) the plaintiff's complaint sought military and disability retirement pay from the

government. The government raised in its counterclaim a mortgage debt on which suit was barred by the applicable statute of limitations. Citing *IML Freight, Inc.* the *Mariner* court stated: "Under 28 U.S.C. § 2415(f) (1976), a time-barred counterclaim that does not arise out of the subject matter of the opposing party's claim (which is the case here) may be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery." (*Mariner v. United States, supra,* 1 Cl. Ct. at 436.) The back pay claim of the Plaintiff against which the government offset the mortgage debt in *Mariner* was no more related to that debt than the tax refund claim of plaintiff here is related to the AAFES debt.

In its Motion for Judgment on the Pleadings the government said it would dismiss its counterclaim if the court accepted its argument that Plaintiff's claim should be dismissed because he could not obtain an affirmative money judgment. (Defendants' Motion for Judgment on the Pleadings or for Partial Dismissal, Doc. 17, p. 9, n. 4.) Perhaps recognizing that the Court may affirm its prior rejection of defendant's position on dismissal of Plaintiff's claim, the government now seeks an affirmative judgment for amounts of AAFES debt unpaid by the administrative offsets. (MSJ, 9:12 – 13.) The government begins its argument for a judgment in excess of amounts already offset by citing four cases that stand for the proposition, not contested by Plaintiff, that when the claim and counterclaim arise from the same "transaction or occurrence" the government may assert a counterclaim for the total amount of its claim and is not limited by the amount of the Plaintiff's recovery. (MSJ, 8:7 – 22.)

The cases the government cites on the application of section 2415(f) to allow unlimited counterclaims in single contract situations are presumably those, in the government's view with facts closest to our situation. A review of these cases helps understand when the claim and counterclaim truly arise from the same contract, although such a review also roves that none of them support the government's claim that the tax refund claim of the Plaintiff and the AAFES debt claim of the government arise from the same "transaction or occurrence." *Sea-Land Service, Inc. v. United States*, 493 F.2d 1357 (Ct. Cl. 1974), was a dispute involving the exchange of three vessels owned by the government for three owned by Sea-Land under an "Exchange Contract." (*Sea-Land Service. Inc., supra,* 493 4.2d at 1359.) The "ultimate issue" in

the case was "whether the values assigned by the contracting officer to both the exchange and transfer ships were 'fair and reasonable' as required" by law. (*Sea-Land Service. Inc., supra,* 493 4.2d at 1359.)  The ships that were to be given to Sea-Land in the exchange were not ready for delivery, so a "Use Agreement" gave Sea-Land the right to continue to use the ships it was giving the government in the trade. (*Sea-Land Service. Inc., supra,* 493 4.2d at 1359.)  The government's counterclaim involved the costs of repair for which the government claimed Sea-Land was liable under the Use Agreement.  Sea-Land was responsible for certain repair costs under both the Exchange Contract and the Use Agreement, so that some of the government's recovery under the Exchange Contract would reduce its recovery under the Use Agreement. (*Sea-Land Service. Inc., supra,* 493 4.2d at 1370.)  Sea-Land claimed that the counterclaim did not arise out of the same "transaction or occurrence" as its claim because Sea-Land's claim was on the Exchange Contract while the government's claim was on the Use Agreement.  (*Sea-Land Service. Inc., supra,* 493 4.2d at 1371.)  Noting that the claims arise out of the same transaction or occurrence when they are "logically related," the court held that the ship trade with continued use by Sea-Land of its ships while the ships was "one single transaction" and that the "two contracts involved the same ships, they were executed on the same day and they incorporated each other by reference." (*Sea-Land Service. Inc., supra,* 493 4.2d at 1371.)  In addition, the examination of the ships under the Use Contract was the basis for the repair obligation of Sea-Land under both the Use Contract and the Exchange Contract. (*Id.*)  Certainly the intertwined contractual obligations that were the basis of both the claim and counterclaim in *Sea-Land Service* bear no similarity to the factual basis for the claim and counterclaim in our case.

In *American Heritage Bancorp v. United States*, 56 Fed. Cl. 596 (Ct. Cl. 2003), the Plaintiff sought to dismiss the government's counterclaim on the basis that it failed to state a claim, not because it did not arise out of the same transaction and occurrence as the complaint. (*American Heritage Bancorp v. United States*, *supra,* 56 Fed. Cl. at 597.)  In fact, the court noted that it "is not disputed that the government's counterclaims here arise out of the same alleged contract" as the plaintiff's complaint. (*American Heritage Bancorp v. United States*, *supra,* 56 Fed. Cl. at 606.)  The case provides an interesting glimpse into the savings and loan scandal of

the 1980's, but has no useful discussion on how to determine whether a claim and counterclaim arise out of the same transaction or occurrence.

*Jana, Inc. v. United States*, 34 Fed. Cl. 447 (1995) found that the government's common law claims arising from the "same transaction or occurrence" as plaintiff's claims were also allowed as unlimited counterclaims under the authority of section 2415(f). In that case the plaintiff submitted time cards as the basis for payment for work under two government contracts. The government asserted that the time cards were fraudulent because the job numbers had been changed to reflect work under a contract under which the plaintiff was paid by the hour rather than the fixed price contract under which the hours were actually performed. Some of the government's counterclaims were not affected by section 2415(f), but the question of which claims and counterclaims arose as part of the same transaction or occurrence does not appear to have been contested. The case does not include a useful discussion, then, on how to distinguish whether a counterclaim is based on the same transaction or occurrence as the claim.

The final case on the same transaction or occurrence point cited by the government is *Simmonds Precision Products, Inc. v. United States*, 546 F.2d 886 (Ct. Cl. 1976). The government suggests that it is sufficient to meet the same transaction or occurrence requirement for the plaintiff in its complaint to have "raised the subject matter of the contract" on which the counterclaim is based. (MSJ, 8:21 – 22.) A reading of *Simmonds,* however, shows that it does not allow an unlimited counterclaim on so tenuous a ground as a mention in the complaint of the contract on which the counterclaim is based. *Simmonds* involved "multiple contracts for the supply of aircraft parts and equipment." (*Simmonds Precision Products, Inc. v. United States*, *supra,* 546 F.2d at 888.) When the plaintiff became delinquent, the government withheld money pursuant to liquidated damage provisions in two different sets of contracts relating to different plants operated by the plaintiff. (*Simmonds Precision Products, Inc. v. United States*, *supra,* 546 F.2d at 888.) The counterclaim was based on liquidated damages claimed by the government above those withheld. Because of a delay of two years in asserting the counterclaim, the plaintiff attacked the counterclaims as untimely. (*Id.*) The plaintiff's complaint sought payment on the contracts that contained the liquidated damage provisions on which the counterclaim was

1  founded. (*Simmonds Precision Products, Inc. v. United States*, *supra,* 546 F.2d at 888.) It does
2  not appear that the plaintiff contested that the claim and counterclaim arose from the same set of
3  contracts, as the court merely notes that plaintiff "ignores" the government's rights under section
4  2415(f). (*Simmonds Precision Products, Inc. v. United States*, *supra,* 546 F.2d at 892.) Again,
5  there is nothing in the facts of *Simmonds* that suggests the claim and counterclaim here should be
6  considered part of the same "transaction or occurrence."
7        Clearly the *Mariner* case presents facts much closer to those in our case than do any of
8  the cases cited by defendant. The government asserts two reasons why its counterclaim should
9  be viewed as "rooted in the exact same contract as the Plaintiff's claim." (MSJ, 9:3 – 21.) The
10 first reason is the argument that Plaintiff's claim and the counterclaim each "springs" from the
11 same "Credit Agreement and the same debts" because the right of AAFES to use TOP to offset
12 the Plaintiff's tax refund is "expressly authorized by the Credit Agreement" and the right to
13 collect the debt also arises from that Agreement. (MSJ, 9:4 – 7.) It is true that the Credit
14 Agreement makes reference to the right of offset the government has, but it is not the contract
15 that gives the government this offset right but, rather, the statute itself. If the government's
16 position is correct, then any offset by the government is based on the same "transaction or
17 occurrence" as the debt for which the money is offset and any person who sues for a return of an
18 illegal offset would be subject to renewal of the debt and a judgment against them for the full
19 amount of the debt regardless of the statute of limitations.
20       Second, the government argues that the claim and counterclaim both "involve an analysis
21 of the amount [Plaintiff] owes and the amount offset through TOP" and that "the facts necessary
22 to prove both claims substantially overlap," which, the government would have the Court
23 believe, shows the two claims are based on the same transaction or occurrence. (MSJ 9:7-11)
24 Actually, Plaintiff's claim does not involve any analysis of how much he owes to AAFES. The
25 only facts relevant to Plaintiff's claim are the amount of his tax refund that he did not get and
26 that the United States had no legal basis for refusing to give it to him. The amount due to
27 AAFES is important to the counterclaim, of course, but is not relevant to Plaintiff's claim that
28 the government had no right to withhold his tax refund.

### B.  *Court Correctly Rejected Dismissal Based on Absence of Cash Recovery*

As demonstrated above, the government is left here only with the same argument previously rejected by the Court, that Plaintiff's claim should be dismissed because the government may have a setoff right against a recovery by Plaintiff, up to the full amount of that recovery, by application of 28 U.S.C. 2415(f).  The government has not presented any new arguments as to why the Plaintiff's claim should not go forward merely because he may not be able to get a net monetary recovery – it has not even restated the ones previously rejected by the Court. (See, Order on Motion, Doc. 34, 14:9 – 11, referencing cases cited in the prior motion on this point; these cases are not cited in the MSJ.)

The factual details of the government's claim help illustrate why the case should not be terminated before a ruling that the TOP offsets were illegal can be made.  Section 2415(f) provides that a government claim that "does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim may, if time-barred, be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery."  This language requires a determination of (1) the amount of the government's claim that could be offset, (2) the amount of the Plaintiff's "recovery" and (3) the amount of the government's claim "allowed" and thus; (4) the remaining amount of the government's claim that is not allowed as an offset but which might be open to collection through other means, such as future legal administrative offsets.  A look at the facts now before the Court shows that not all of these determinations are ripe for decision.

The government's papers allow a determination of the amount of the government's debt claim, but show that it made large errors in its past debt calculations.  In its Counterclaim the government asserts that the balance due on the AAFES debt, after the offsets that have been made are credited is $3,938.37.  (Answer and Counterclaim to the First Amended Complaint, Doc. 18, 12:9.)  Now the government asserts that the balance due is only $1,925.22, more than $2,000 less than it asserted was due in the Counterclaim. (Declaration of Wendy Coker-Stowe in Support of the United States' Motion for Summary Judgment, Doc. 40, para. 5.)

Even the reduced $1,925.22 balance due figure, however, is based on the premise that the offsets were *legally made* and that the $59.20 administrative fees[2] taken at the time of the offsets made more than 10 years after the debt became delinquent do not have to be repaid and that no interest was due. Prejudgment interest due on the tax refund is provided by 28 U.S.C. 2411. This statute provides for interest as determined by section 6621 of the Internal Revenue Code of 1986, which in turn sets the rate at 3% plus the applicable Federal short term rate. Plaintiff understands that the current Federal short term rate is slightly more than 2%, making the current interest rate due on the refund slightly over 5%. Using the dates and amounts of offsets listed in the papers supporting the Motion for Summary Judgment and a 5% simple interest rate, Plaintiff would be owed interest in the amount of approximately $386 as of the date of the hearing of the Motion. Plaintiff's "recovery" rights, then, are in the neighborhood of $450 more than asserted in the government's papers. The right to the return of the administrative fees and payment of interest are dependent on a determination that the offsets were illegal. This matter can be resolved on summary judgment at some point, but that judgment will have to include a determination of whether the offsets were illegal, which will impact the amount of the recovery of Plaintiff and the class. Without knowing the amount of the recovery, any amount still due can not properly be calculated. The most the Court should now do is determine pursuant to Federal Rules of Civil Procedure (FRCP), Rule 56(d)(1), that the maximum amount of the government's setoff rights against a recovery by Plaintiff is the $4,238.97 it asserts was due prior to the illegal offsets that commenced in 2004. (Declaration of Wendy Coker-Stowe in Support of the United States's Motion for Summary Judgment, Doc. 40, Exhibit B, p. 2, Combined Balance after April 27, 2003, offset payment.)

---

[2] The administrative fee is shown in the "Remarks" column on page 2 of Exhibit B of the Declaration of Wendy Coker-Stowe in Support of the United States' Motion for Summary Judgment, Doc. 40. The amount offset from the Plaintiff's tax refunds was the total of the administrative fee and the amount in the "Payments" column in Exhibit B. Plaintiff does not want to distract the Court with the details of administrative costs on offsets, but because the costs are now $15 on each offset and offsets are often on monthly benefit payment of small denominations, the administrative fees alone can be a significant portion of the amount offset, leaving significantly less of the offset amount applied to pay off the debt.

OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT   CV-07-5760 WHA   11

### 1. DECLARATORY RELIEF IS APPROPRIATE EVEN IF PLAINTIFF IS NOT ENTITLED TO NET MONETARY RELIEF

Another reason the case should proceed to a determination of the amount of Plaintiff's recovery and the related determination of whether the offsets were illegal is that without such a determination there can be no assurance that the illegal practice will stop. In its Order on the government's Motion to for Judgment on the Pleadings this Court noted that no injunction against the government was necessary because "once a court decided in [Plaintiff's] favor" the "principles of res judicata would prevent defendants from" continuing the offsets. (Order on Motion, Doc. 34, 7:28 – 8:1.) However, although an injunction may not be necessary to stop the illegal offsets, a determination that they were illegal is necessary if there is going to be any res judicata effect.

Title 28 USC section 2201 provides that "[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Federal Rules of Civil Procedure, Rule 57, provides that "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." "Even where declaratory relief is not requested the courts may grant such relief where the pleading and proof show such to be appropriate. *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); *Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission*, 34 F.Supp. 26 (M.D.Penn. 1940)." (*Nemitz v. Norfolk & W. Ry. Co.*, 309 F.Supp. 575, 585 (N.D.Ohio, 1969).) "Declaratory judgment is a remedy committed to judicial discretion. (*A. L. Mechling Barge Lines, Inc. v. U.S.*, 368 U.S. 324, 331 (1961).) "[A] district court must exercise its discretion to hear declaratory actions liberally." (*American Nat. Property and Cas. Co. v. Weese*, 863 F.Supp. 297, 299 (S.D.W.Va.,1994). In *Katzenbach v McClung* the Supreme Court considered appellants' claim that the complaint should be dismissed for lack of equity jurisdiction on the ground that the statute sued under provided only for preventive relief. As there was no threat of enforcement and no irreparable injury, injunctive relief was inappropriate. (*Katzenbach v. McClung*, 379 U.S. 294, 296 (1964).) The Court stated: "[W]e may and do consider this

complaint as an application for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 (1958 ed.)." (*Id.*)  The court further noted that FRCP 57 permits declaratory relief even where another adequate remedy exists, except where a special statutory proceeding has already been provided. (*Id.*)

The Court therefore has discretion to award declaratory relief even though not specifically pleaded in Plaintiff's complaint.  Declaratory relief, in the form of a declaration clarifying the application of the ten year limitations period on offset, is particularly appropriate here.  As Plaintiff is suing on behalf of a class of persons subject to offset beyond the ten year limitation, such declaration would determine the rights of all parties involved and whether the class members are entitled to relief.  This determination would further promote judicial economy by eliminating the need for further separate litigation which would be warranted if the issue is not resolved in this action.  Moreover, the Little Tucker Act, which this Court has previously determined provides the basis for this Court's jurisdiction, does not preclude declaratory relief where, as here, such relief rests upon statutory rights:

> "Generally speaking, the Tucker Act does not permit the claims court to grant equitable or declaratory relief in a contract dispute case. [Citations.]  Similarly, the Little Tucker Act does not specifically authorize the district court to grant declaratory or equitable relief against the United States in contract cases. [Citations.]  However, the district court does have jurisdiction to hear claims for equitable relief which "rest [ ] at bottom on statutory rights." [Citations.]"

(*North Star Alaska v. U.S*., 9 F.3d 1430, 1432 (C.A.9 (Alaska),1993).)

At this stage of the proceedings the Court is also not in a position to determine the nature of Plaintiff's recovery.  Specifically, Plaintiff believes the Court should put the parties back in the position that they would have been in had the illegal offsets not occurred.  In other words, the government should give Mr. Briggs his tax refund and his AAFES debt should be incremented in the appropriate amount.  Then, and only then, the government could use whatever proper collection methods it had at its disposal.  The government could obtain a judgment by offset in the amount of the recovery but should not be able to get the advantage of its illegal withholding to apply that judgment against the illegally held monies.  It should be required to give the money back that then exercise its rights.  The Court may ultimately choose not to grant this form of

relief, but at this stage of the proceedings it should not preclude the case from reaching a stage where it can make a decision what relief to grant.

Finally, section 2415(f) should not be interpreted as a *carte blanche* for the government to illegally make offsets for debts due without any remedy or way for an aggrieved party to obtain a judgment that the practice was illegal unless the offset was in excess of the debt due.[3]

## V. CONCLUSION

The government has asked the court to reconsider its argument that Plaintiff must have a net monetary claim in order to proceed with his suit. The Court should "re-reject" this argument. The government asserts that it should have a judgment against the Plaintiff in excess of his recovery. This argument is without merit and should be rejected. The Court should determine that the maximum amount the government may offset against Plaintiff's recovery in this action is the lesser of $4,238.97, or the amount of Plaintiff's recovery, but the Court should reserve ruling on whether the government can apply this offset to tax refunds it illegally holds.

Dated: September 11, 2008          Respectfully submitted,

LAW OFFICES OF S. CHANDLER VISHER
CONSUMER LAW OFFICE OF MARIE NOEL APPEL
PUBLIC CITIZEN LITIGATION GROUP


By:     /s/ S.Chandler Visher_____
        S. Chandler Visher, Esq., Attorneys for Plaintiff

---

[3] The huge disparity between the debt balance claimed in the Counterclaim and that presented in the Motion for Summary Judgment suggests that class members against whom the governmet has collected the full amount it claimed was due may have net monetary claims against the government even after consideration of the government's offset rights. However, in view of the fact that the overstated claims issue is not presented by the Plaintiff's complaint, the Court should assume that if Plaintiff is not able to get a determination of the legality of the offsets then no class member will be in a better position to do so.