United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JULIUS BRIGGS, on behalf of himself
and all others similarly situated,

      Plaintiff,

  v.

UNITED STATES OF AMERICA,

      Defendant.

                           /

No. C 07-05760 WHA

**ORDER DENYING
DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT ON
PLAINTIFF'S CLAIM AND
DEFENDANT'S
COUNTERCLAIM**

**INTRODUCTION**

In this putative class action, plaintiff Julius Briggs, on behalf of himself and other

soldiers and veterans similarly situated, sued the United States of America for unlawful debt-

collection practices.  The lawsuit alleges that defendant illegally withheld tax refunds and other

benefits to satisfy debt on a credit card issued to plaintiff by the Army and Air Force Exchange

Service ("AAFES"), in violation of a statutory ten-year limitation on such administrative

offsets.  Defendant filed a counterclaim against plaintiff to recover the balance due on plaintiff's

debt.  Defendant moves for summary judgment in its favor on plaintiff's debt-collection claim

and also moves for summary judgment in its favor on its counterclaim.  For the reasons stated

below, defendant's motions for summary judgment are **DENIED**.

**STATEMENT**

The Army and Air Force Exchange Service ("AAFES") issues credit cards to military

personnel to purchase uniforms and other merchandise from post-exchange stores on U.S.

United States District Court
For the Northern District of California

1   military bases.  Plaintiff Briggs is an army veteran.  Briggs began using a credit card issued by

2   AAFES on November 12, 1993.  By December 16, 1993, Briggs had incurred charges totaling

3   $1,857.08.  He made no further charges on the credit card.  In this lawsuit, he challenges a

4   government debt-collection practice — withholding tax refunds and other benefits and

5   offsetting those monies against his delinquent AAFES debt, *after* a statutory ten-year

6   limitations period for such administrative offsets has expired.  31 U.S.C. 3716(e) (2004) (since

7   amended).

8          Briggs received a credit card statement with a closing date of November 18, 1993, that

9   required him to make a minimum payment of $31.00 by December 13, 1993.  Briggs did not

10   make the minimum payment and made no further payments thereafter.  He received a later

11   credit card statement with a closing date of December 18, 1993.  That statement stated, "Notice:

12   Administrative fees and penalties will be assessed on delinquent accounts as authorized by 31

13   U.S.C. 3717 [the Debt Collection Act]."  In a box labeled, "Overdue Notice," the statement

14   further stated, "Payment of $31.00 from previous statements has not been received . . . .  If

15   payment is not received by 18 Jan 94, your account [] will be delinquent and payroll deductions

16   will begin for the account balance.  Charge privileges are suspended pending receipt of the

17   overdue amount" (First Amd. Compl ¶ 4 and Exh. B).

18          When debts become delinquent, the United States is authorized to withhold tax refunds

19   or other benefits that the government owes the debtor and to offset those monies against the

20   delinquent debt.  31 U.S.C. 3716, 3720A.  Federal agencies refer delinquent debts to the

21   Department of the Treasury, which administers a centralized debt collection effort called the

22   Treasury Offset Program ("TOP") using administrative offsets (First Amd. Compl ¶ 1, 16–18).

23   The AAFES credit agreement, which plaintiff signed, explicitly authorized referral to TOP:

24   "Your debt may be submitted for deduction from any Federal Income Tax refund to which you

25   may be entitled under provisions of the Deficit Reduction Act, 25 U.S.C. 6402(d) and 31 U.S.C.

26   3720A" (First Amd. Compl. Exh. A).  Following referral to TOP, AAFES credit cards continue

27   to accrue interest, penalty and administrative charges on delinquent debts.  Prior to June 2008,

28   the statute included a ten-year limit on such administrative offsets:  "(e) This section does not

United States District Court

For the Northern District of California

1  apply -- (1) to a claim under this subchapter that has been outstanding for more than 10 years."

2  31 U.S.C. 3716(e) (2004).[1]

3      AAFES continued to send Plaintiff Briggs billing statements between January 1994 and

4  June 1997 but took no further action to collect the outstanding balance.  In June 1997, AAFES

5  referred plaintiff's delinquent debt to the Department of the Treasury's TOP.  Treasury,

6  however, did not start offsetting payments until 2003.  TOP withheld the following federal

7  payments:  $411.84 on April 18, 2003; $818.00 on January 30, 2004; $646.65 on February 18,

8  2005; $397.00 on February 17, 2006; and $511.30 on May 4, 2007 (First Amd. Compl Exh. C).

9  After deduction of these payments, defendant asserts that Briggs continues to owe it $1,925.22.[2]

10      Briggs commenced this putative class action in November 2007 and filed a two-count

11  first amended complaint in January 2008.  The first count alleged that defendant unlawfully

12  withheld tax refunds and benefits as offsets against debts more than ten years after those debts

13  arose, in violation of the above-quoted statutory ten-year limit on administrative offsets.  31

14  U.S.C. 3716(e) (2004).  Plaintiff alleges that all but the first of the offsets listed above were

15  untimely.  Plaintiff seeks restitution of all untimely TOP collections.  The second count alleged

16  that certain finance charges were improper.

17      On February 14, 2008, defendants filed an answer to the first amended complaint and

18  also asserted a counterclaim to recover the balance remaining on plaintiff's AAFES debt.

19  Defendants then filed a motion for judgment on the pleadings or for partial dismissal.  An April

20  2008 order dismissed the second count as moot (Dkt. No. 34).  It also concluded that subject-

21  matter jurisdiction arose from the Little Tucker Act, rather than the Administrative Procedure

22  Act, and dismissed the claims against AAFES as a distinct party, leaving only the claims against

23

24      [1] In May 2008, Congress amended the statute to remove the ten-year limitations period on
   administrative offsets.  As plaintiff emphasizes, however, the ten-year window remains intact by regulation, at
25  least for offsets of tax refund payments: "[f]or purposes of this section, when a Federal agency refers a
   past-due, legally enforceable debt to FMS for tax refund offset, the agency will certify to FMS that: . . .  (ii)
26  Except in the case of a judgment debt or as otherwise allowed by law, the debt is referred for offset within ten
   years after the agency's right of action accrues."  31 C.F.R. 285.2(d)(1)(ii).
27

28      [2] In its answer and counterclaim, defendant originally asserted that plaintiff continues to owe it nearly
   $4,000 (Ans. and Counterclaim ¶ 18).  Defendant revised that figure in its motion and now asserts that, after the
   challenged administrative offsets, plaintiff continues to owe it $1,925.22 (Reply at 4).

3

1    the United States.  The order, however, rejected defendants' contention that the complaint is

2    futile merely because plaintiff's debt to the United States exceeded the asserted damages, and

3    the order therefore declined to enter judgment against plaintiff on the first count.

**ANALYSIS**

5    Summary judgment is granted when "the pleadings, depositions, answers to

6    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

7    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

8    matter of law." Fed. R. Civ. P. 56(c).  A district court must determine, viewing the evidence in

9    the light most favorable to the nonmoving party, whether there is any genuine issue of material

10   fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007).  A genuine

11   issue of fact is one that could reasonably be resolved, based on the factual record, in favor of

12   either party.  A dispute is "material" only if it could affect the outcome of the suit under the

13   governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

14   The moving party "has both the initial burden of production and the ultimate burden of

15   persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

16   Cos., Inc.*, 210 F. 3d 1099, 1102 (9th Cir. 2000).  When the moving party meets its initial

17   burden, the burden then shifts to the party opposing judgment to "go beyond the pleadings and

18   by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

19   designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*,

20   477 U.S. 317, 324 (1986).

21   Defendant seeks summary judgment in its favor both on plaintiff's sole remaining claim

22   (the second claim having been dismissed earlier) and on defendant's counterclaim to recover the

23   balance due on plaintiff's debt.  A six-year statute of limitations on government contract claims

24   is pertinent to both motions: "every action for money damages brought by the United States or

25   an officer or agency thereof which is founded upon any contract express or implied in law or

26   fact, shall be barred unless the complaint is filed within six years after the right of action

27   accrues." 28 U.S.C. 2415(a).  This statute of limitations is subject to two exceptions relevant to

28   the present motion.  *First*, the claim "may, if time-barred, be asserted [] by way of offset and

4

1    may be allowed in an amount not to exceed the amount of the opposing party's recovery." *Id*. at

2    § 2415(f). *Second*, the statute of limitations "shall not prevent the assertion, in an action against

3    the United States . . . of any claim of the United States or an officer or agency thereof against an

4    opposing party . . . that arises out of the *transaction or occurrence* that is the subject matter of

5    the opposing party's claim." *Ibid*. (emphasis added).  Relying on these exceptions, defendant

6    asserts (1) that plaintiff can win no net monetary recovery through this lawsuit because the

7    United States is entitled to setoff any recovery plaintiff wins against plaintiff's remaining debt

8    to the government, and (2) that the United States is entitled to judgment on its counterclaim for

9    the balance remaining on plaintiff's debt because the counterclaim arises from the same

10   "transaction or occurrence" as plaintiff's claim, and the amount of that debt poses no genuine

11   issue of material fact.

12        **1.    DEFENDANT'S POTENTIAL SETOFF RIGHTS.**

13        "The equitable right of setoff . . . allows parties that owe mutual debts to state the

14   accounts between them, subtract one from the other and pay only the balance.  The rule is

15   grounded on the absurdity of 'making A pay B when B owes A.'" *Matter of Bevill, Bresler &*

16   *Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir. 1990) (quoting *Studley v.*

17   *Boylston Nat'l Bank*, 229 U.S. 523, 525 (1913)).  Defendant contends that it is entitled to

18   summary judgment on plaintiff's claim because "the United States can raise as a defense to

19   Plaintiff's claim its right to set off the countervailing debts.  The end result of this setoff would

20   be that Plaintiff would be entitled to no recovery and would owe the balance currently

21   outstanding on his account" (Br. at 7).

22        The setoff rights defendant now asserts should not be confused with the administrative

23   offsets which plaintiff challenges in this lawsuit.  The complaint challenges the government's

24   practice under the Treasury Offset Program of withholding tax refunds or other benefits in order

25   to satisfy debts owed to it, after the ten-year window for such administrative offsets had closed.

26   31 U.S.C 3716 (2004) (since amended).  In contrast, defendant now relies on the equitable right

27   of setoff in litigation, which "allows parties that owe mutual debts to state the accounts between

28

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1    them, subtract one from the other and pay only the balance." *Bevill, Bresler & Schulman Asset*

2    *Management Corp.*, 896 F.2d at 57.

3         The government certainly has litigation setoff rights. *Dunn & Black, P.S. v. United*

4    *States*, 492 F.3d 1084, 1092 n.10 (9th Cir. 2007) (federal government has common-law as well

5    as statutory setoff rights). *See also* 31 U.S.C. 3728 (government's statutory setoff right). It

6    would be premature, however, for this order to apply those litigation setoff rights. The issues

7    posed in this litigation must be addressed in the proper order. *First*, it is necessary to establish

8    whether plaintiff will prevail on the merits of his claim and, if so, how much he will recover.

9    Defendant's motions do not present those questions for adjudication. *Second*, if plaintiff

10   prevails on his claim, then it will be necessary to evaluate the defensive setoffs.

11        Defendant cites several decisions regarding setoff rights, but in all of them, there was no

12   doubt that two parties *already owed* each other mutual debts, and the courts permitted the

13   application of setoff rights merely to facilitate collection of those debts. *See, e.g.*, *Citizens Bank*

14   *of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("The right of setoff (also called 'offset') allows

15   entities that owe each other money to apply their mutual debts against each other, thereby

16   avoiding 'the absurdity of making A pay B when B owes A') (citation omitted); *Matter of*

17   *Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d at 57 ("[t]he right of setoff

18   depends on the existence of mutual debts and claims between creditor and debtor"); *Dunn &*

19   *Black*, 492 F.3d at 1092 n.10 (permitting the government to assert a setoff right where "the

20   taxpayer owe[d] the government for unpaid tax liabilities and the government also owe[d] the

21   taxpayer for a tax overpayment or an unrelated debt"); *Bohack Corp. v. Borden, Inc.*, 599 F.2d

22   1160, 1169 n.9 (2nd Cir. 1979) ("Under [§] 68 Borden's right to a setoff in the bankruptcy

23   proceeding would not mature unless and until Borden and Bohack become mutual debtors.

24   Their status as mutual debtors cannot be determined until the conclusion of the antitrust case").

25   Here, in contrast, it would be premature to grant defendant summary judgment before deciding

26   whether plaintiff is in fact entitled to recover on his claim and now large that recovery will be.

27        Defendant also asserts that the applicable jurisdictional provision, the Little Tucker Act,

28   does not permit plaintiff to seek a declaratory judgment. Plaintiff, however, does not merely

United States District Court

For the Northern District of California

1    seek a declaratory judgment.  Plaintiff contends that the United States illegally withheld roughly

2    $2,300 of tax refunds or other benefits from plaintiff as administrative offsets against plaintiff's

3    debts; that the United States charged administrative fees for those improper offsets; and that

4    plaintiff is entitled by statute to prejudgment interest on the funds illegally withheld.  A ruling

5    in plaintiff's favor would not only establish that the government's TOP offsets after the

6    statutory ten-year window were illegal but would also potentially grant plaintiff restitution and

7    (if plaintiff is able to establish entitlement thereto) prejudgment interest.  Once it is determined

8    what, if anything, plaintiff is entitled to recover in this lawsuit, defendant would then be in a

9    position to assert its setoff rights against that recovery.  For these reasons, defendant's motion

10   for summary judgment on plaintiff's claim is denied.[3]

11              **2.       DEFENDANT'S COUNTERCLAIM.**

12   Defendant also moves for summary judgment in its favor on its counterclaim to recover

13   the full balance remaining on plaintiff's credit card debt.  As stated, "every action for money

14   damages brought by the United States . . . shall be barred unless the complaint is filed within six

15   years after the right of action accrues," 28 U.S.C. 2415(a), but the government's claim is not

16   barred if it "arises out of *the transaction or occurrence* that is the subject matter of the opposing

17   party's claim."  *Id*. at § 2415(f) (emphasis added).  The government, therefore, may pursue the

18   full value of its counterclaim if the counterclaim arises out of the same transaction or

19   occurrence as plaintiff's claim. *Thomas v. Bennett*, 856 F.2d 1165, 1169 (8th Cir. 1988).  As

20   explained, if defendant's counterclaim does *not* arise out of the same transaction or occurrence

21   as plaintiff's claim, Section 2415(f) permits defendant to assert it "only by way of offset . . . in

22   an amount not to exceed the amount of the opposing party's recovery."

23   Federal courts rarely have interpreted Section 2415(f)'s phrase "transaction or

24   occurrence."  Decisions that have done so have looked to case law interpreting the similar

25   phrase in the compulsory counterclaim rule of Rule 13(a).  *In re Malone*, 115 B.R. 252, 254

26   (Bkrtcy E.D. Cal. 1990) ("The limited case law addressing § 2415(f) does not elucidate on the

27

28   [3] Defendant vigorously challenges plaintiff's entitlement to prejudgment interest.  It is premature to decide this issue before resolving the merits of the case or plaintiff has moved for prejudgment interest.

1  meaning of the words 'transaction or occurrence' . . . .  The legislative history merely restates

2  the words of the statute . . . .  However, the similarity between the language of § 2415(f) and

3  Rule 13(a) suggests that the latter, although not necessarily controlling resolution of this issue,

4  offers useful guidance."); *Sea-Land Serv., Inc. v. United States*, 493 F.2d 1357, 1371 (Ct. Cl.

5  1974) (applying the Rule 13(a) test under Section 2415(f):  "claims arise out of the same

6  'transaction or occurrence' if they are 'logically related'") (citation omitted).  The parties agree

7  that the inquiry under Section 2415(f) is the same as that under Rule 13(a).

8       To interpret Rule 13(a), the Ninth Circuit applies the "logical relationship" test.  *In re*

9  *Lazar*, 237 F.3d 967, 979 (9th Cir. 2001).  "A logical relationship exists when the counterclaim

10  arises from the same aggregate set of operative facts as the initial claim, in that the same

11  operative facts serve as the basis of both claims or the aggregate core of facts upon which the

12  claim rests activates additional legal rights otherwise dormant in the defendant."  *Ibid.*  "This

13  flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the

14  various claims are so logically connected that considerations of judicial economy and fairness

15  dictate that all the issues be resolved in one lawsuit."  *Pochiro v. Prudential Ins. Co. of Am.*,

16  827 F.2d 1246, 1249 (9th Cir. 1987).

17       Defendant contends that its counterclaim and plaintiff's claim arise from the same

18  "transaction or occurrence" because both arise from the same contract:  plaintiff's credit card

19  debt (Br. at 9).  Defendant argues that the logical relationship test "focuses on the similarity of

20  the facts underlying both claims, not the similarity of the underlying legal theories" and that

21  "[t]he operative facts are exactly the same for Plaintiff's claim as for the United States'

22  counterclaim" (Reply at 2–3).  The operative facts, however, are not the same.  Defendant

23  focuses on 1993 and the credit card debt which then arose.  Plaintiff's claim, however,

24  challenges defendants' practice, more than ten years later, of withholding tax refunds or other

25  benefits as administrative offsets against plaintiff's debt, after the statutory window for doing so

26  had closed.  Plaintiff does not challenge the validity of the credit card agreement or any term of

27  the agreement, and plaintiff's claim does not depend on the establishing the amount of debt it

28

United States District Court

For the Northern District of California

1   presently owes or the amount it owed prior to the TOP offsets.  Those facts, however, are

2   pivotal to the counterclaim.

3           In analogous circumstances, courts have found that claims and counterclaims do *not*

4   arise from the same transaction or occurrence.  For example, in *Jones v. Ford Motor Credit Co.*,

5   358 F.3d 205, 209–10 (2d Cir. 2004), borrowers sued a finance company alleging race

6   discrimination under the Equal Credit Opportunity Act pertaining to the company's policy of

7   marking up the financing rates on certain loans.  The defendants asserted counterclaims to

8   recover amounts due on the underlying loans.  The Second Circuit, which also utilizes the

9   "logical relationship" test, concluded that the counterclaim was permissive rather than

10  mandatory — *i.e.*, it did not arise from the same transaction or occurrence as the plaintiffs'

11  claims.  Although both the claims and counterclaims related to the underlying debt in some

12  manner,

13          [t]he Plaintiffs' ECOA claim centers on Ford Credit's mark-up
            policy . . . .  Ford Credit's debt collection counterclaims are
14          related to those purchase contracts, but not to any particular
            clause or rate.  Rather, the debt collection counterclaims concern
15          the individual Plaintiffs' non-payment after the contract price was
            set.  Thus, the relationship between the counterclaims and the
16          ECOA claim is "logical" only in the sense that the sale, allegedly
            on discriminatory credit terms, was the "but for" cause of the
17          non-payment.  That is not the sort of relationship contemplated by
            our case law on compulsory counterclaims.  The essential facts
18          for proving the counterclaims and the ECOA claim are not so
            closely related that resolving both sets of issues in one lawsuit
19          would yield judicial efficiency.

20  *Id* at 209.  This reasoning equally applies to the present case.  Here, plaintiff's lawsuit

21  challenges the government's practice of withholding tax refunds and other benefits to satisfy

22  debts owed to it, and the government counterclaimed for the balance due on plaintiff's AAFES

23  credit card debt.  Although plaintiff's credit card debt is a historical background fact in both the

24  complaint and counterclaim, plaintiff's lawsuit does not challenge any term of the credit

25  agreement itself or the balance due under the agreement; it only challenges, on statutory

26  grounds, defendant's conduct some ten years after the agreement was entered and the debt

27  arose.

28

United States District Court
For the Northern District of California

9

United States District Court
For the Northern District of California

1     Decisions under the Truth in Lending Act ("TILA") also provide a useful analogy.  Most

2  circuits to have examined the issue have concluded that borrower lawsuits under the Act — for

3  example, for inadequate or misleading disclosures — are not the same "transaction or

4  occurrence" as counterclaims by the lenders to recover the unpaid balance on the borrower's

5  debt.  *See, e.g.*, *Maddox v. Kentucky Finance Co.*, 736 F.2d 380, 382–83 (6th Cir. 1980)

6  (applying the "logical relationship" test and concluding that "The TILA claim does not involve

7  the obligations created by the underlying contract.  Rather, the TILA claim enforces a federal

8  policy regarding disclosure by invoking a penalty . . . .  The claim and counterclaim will present

9  entirely different legal, factual, and evidentiary questions"); *Valencia v. Anderson Brothers*

10 *Ford*, 617 F.2d 1278, 1291 (7th Cir.1980), *rev'd on other grounds*, 452 U.S. 205 (1981) ("the

11 sole connection between a TILA claim and a debt counterclaim is the initial execution of the

12 loan document").  Again, the analysis of these decisions largely applies to the present case —

13 plaintiff's claim does not "involve the obligations created by the underlying contract" but rather

14 seeks to "enforce[] a federal policy" regarding debt collection.  In fact, the rationale for

15 deeming the claim and counterclaim different "transaction[s] or occurrence[s]" may be even

16 stronger here than in the TILA decisions.  Unlike the TILA decisions, here the conduct

17 underpinning plaintiff's claim occurred more than ten years after plaintiff entered the debt

18 obligation and ceased making payments thereon; defendant's challenged conduct had nothing to

19 do with plaintiff's decision to incur the debt or to make timely payments on the debt.

20    For these reasons, this order finds that defendant's counterclaim to collect the unpaid

21 balance on plaintiff's debt did not arise from the same "transaction or occurrence" as plaintiff's

22 illegal-collection claim.

23    Defendant urges a contrary result, citing four decisions under Section 2415(f).  *Am.*

24 *Heritage Bancorp. v. United States*, 56 Fed. Cl. 596, 606 (2003); *Jana, Inc. v. United States*, 34

25 Fed. Cl. 447, 452 (1995); *Simmonds v. United States*, 546 F.2d 886, 892 (Ct. Cl. 1976); *Sea-*

26 *Land Serv., Inc. v United States*, 493 F.2d 1357, 1371 (Ct. Cl. 1974).  Those decisions,

27 defendant asserts, establish that a claim and counterclaim concern the same transaction or

28 occurrence if both arise from the same contract.  This proposition, however, only begs the

10

**United States District Court**
For the Northern District of California

1   pertinent question:  if the operative facts of both the claim and counterclaim have *some*

2   connection the same contract, what is the nature of that connection and how close must it be?

3   None of those decisions analyzed the issue in depth and all of them involved far closer

4   congruity of fact between the claim and counterclaim than the present case.  In three, the parties

5   either did not contest that the claim and counterclaim arose from the same contract or the court

6   assumed without discussion that they did.  *Am. Heritage Bancorp.*, 56 Fed. Cl. at 606; *Jana,*

7   *Inc.*, 34 Fed. Cl. at 452; *Simmonds*, 546 F.2d at 892.  The fourth did not address an analogous

8   situation.  That decision explained,

9   >               [a]lthough the parties entered into two separate contracts . . . [one
>               for a swap of certain ships and the other the charter of some of
10  >               those ships to one of the parties,] they engaged in one single
>               transaction.  The two contracts involved the same ships, they were
11  >               executed on the same day and they incorporated each other by
>               reference [in several ways] . . . .  The facts and circumstances of
12  >               the case clearly support a finding that defendant's counterclaim
>               arises out of the same 'transaction or occurrence' that is the
13  >               subject matter of plaintiff's main claim.

14  *Sea-Land Service, Inc. v United States*, 493 F.2d 1357, 1371 (Ct. Cl. 1974).  Here, in contrast,

15  there is only one contract at issue and the question is whether the mere fact that the claim and

16  counterclaim both have *some* connection to that contract necessarily means the claim and

17  counterclaim arose from the same transaction or occurrence.  *Sea-Land Service* was

18  uninstructive on that question.  For these reasons, this order finds defendant's citations

19  unpersuasive.

20       No doubt, the counterclaim here asserted would be permissive under Rule 13 but more is

21  required to be compulsory.  To return to the earlier part of this order, the amount of the

22  administrative setoff can be raised as a litigation setoff which may zero out any plaintiff

23  recovery in this case but it is premature to leap ahead and make that adjudication.

24

25

26

27

28

11

1

2                                    **CONCLUSION**

3          For all of the above-stated reasons, defendant's motion for summary judgment in its

4    favor on plaintiff's illegal-debt-collection claim is **DENIED**.  Defendant's motion for summary

5    judgment on its counterclaim is also **DENIED**.

6

7          **IT IS SO ORDERED.**

8

9    Dated:  October 22, 2008

10                                          WILLIAM ALSUP
                                            UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

12