IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS BRIGGS, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant.<br>_____/ | No. C 07-05760 WHA<br><br>**ORDER GRANTING**<br>**CLASS CERTIFICATION** |

**INTRODUCTION**

In this putative class action, plaintiff Julius Briggs, on behalf of himself and other soldiers and veterans similarly situated, sued the United States of America for unlawful debt-collection practices. The lawsuit alleges that defendant illegally withheld tax refunds and other benefits to satisfy debt on a credit card issued to plaintiff by the Army and Air Force Exchange Service ("AAFES"), in violation of a statutory ten-year limitation on such administrative offsets. Plaintiff moves for class certification. For the reasons that follow, this order finds that jurisdiction and venue are proper in this district and **GRANTS** the motion for class certification.

**STATEMENT**

The facts of this case have been set forth in previous orders (*see* Dkt. No. 44). The Army and Air Force Exchange Service ("AAFES") issues credit cards to military personnel to purchase uniforms and other merchandise from post-exchange stores on U.S. military bases. Plaintiff Briggs is an army veteran. Briggs began using a credit card issued by AAFES on

1  November 12, 1993.  By December 16, 1993, Briggs had incurred charges totaling $1,857.08.
2  He made no further charges on the credit card.  In this lawsuit, he challenges a government
3  debt-collection practice — withholding tax refunds and other benefits and offsetting those
4  monies against his delinquent AAFES debt, *after* a statutory ten-year limitations period for such
5  administrative offsets has expired.  31 U.S.C. 3716(e) (2004) (since amended).

6  When debts become delinquent, the United States is authorized to withhold tax refunds
7  or other benefits that the government owes the debtor and to offset those monies against the
8  delinquent debt.  31 U.S.C. 3716, 3720A.  Federal agencies refer delinquent debts to the
9  Department of the Treasury, which administers a centralized debt collection effort called the
10 Treasury Offset Program ("TOP") using administrative offsets (First Amd. Compl ¶ 1, 16–18).
11 The AAFES credit agreement explicitly authorized collection by offset (First Amd. Compl.
12 Exh. A).  Prior to June 2008, the statute included a ten-year limit on such administrative offsets:
13 "(e) This section does not apply -- (1) to a claim under this subchapter that has been outstanding
14 for more than 10 years."  31 U.S.C. 3716(e) (2004).   In May 2008, Congress amended the
15 statute to remove the ten-year limitations period on administrative offsets.

16 AAFES continued to send Plaintiff Briggs billing statements between January 1994 and
17 June 1997 but took no further action to collect the outstanding balance.  In June 1997, AAFES
18 referred plaintiff's delinquent debt to the Department of the Treasury's TOP.  Treasury,
19 however, did not start offsetting payments until 2003.  Briggs contends that the statutory ten-
20 year window for administrative offsets closed in January 2004, but TOP nevertheless withheld
21 several federal payments between April 2003 and May 2007, all but the first of which was
22 illegal.  The government asserts that, after deduction of those payments, Briggs continues to
23 owe the government $1,925.22.[1]

24 Briggs commenced this putative class action in November 2007 and filed a two-count
25 first amended complaint in January 2008.  The first count alleged that defendant unlawfully

---

[1] Following referral to TOP, AAFES credit cards continue to accrue interest, penalty and administrative charges on delinquent debts.  In its answer and counterclaim, defendant originally asserted that plaintiff continues to owe it nearly $4,000 (Ans. and Counterclaim ¶ 18).  Defendant revised that figure in its motion for summary judgment and asserted that, after the challenged administrative offsets, plaintiff continues to owe it $1,925.22.

2

withheld tax refunds and benefits as offsets against debts more than ten years after those debts arose, in violation of the above-quoted statutory ten-year limit on administrative offsets. 31 U.S.C. 3716(e) (2004). Plaintiff seeks declaratory and injunctive relief as well as restitution of all untimely TOP collections. The second count alleged that certain finance charges were improper.

On February 14, 2008, the United States filed an answer to the first amended complaint and also asserted a counterclaim to recover the balance remaining on plaintiff's AAFES debt. The United States then filed a motion for judgment on the pleadings or for partial dismissal. An April 2008 order dismissed the second count as moot. It also concluded that subject-matter jurisdiction — at least over plaintiff's individual action — arose from the Little Tucker Act rather than the Administrative Procedure Act. Finally, the order dismissed the claims against AAFES as a distinct party, leaving only the claims against the United States (Dkt. No. 34).

The United States subsequently moved for summary judgment both on plaintiff's sole remaining claim and on defendant's counterclaim to recover the amount due on plaintiff's debt (Dkt. No. 47). An October 2008 order denied both motions. The order ruled that (1) the government's litigation setoff rights — its right to offset any recovery plaintiff may achieve in this action against the balance remaining on plaintiff's debt to the government — was *not* a proper ground to dispose of the entire action before reaching the merits of plaintiff's illegal-debt-collection claim; and that (2) defendant's counterclaim to recover the full balance due on plaintiff's debt did *not* arise from the same "transaction or occurrence" as plaintiff's illegal-collection claim and therefore, under 28 U.S.C. 2415(f), it may be asserted "only by way of offset . . . in an amount not to exceed the amount of the opposing party's recovery."

Plaintiff now moves for certification of a nationwide class defined as follows (Br. at 3; Reply at 12):[2]

> All natural persons (1) who have been subjected to TOP collection of an AAFES type E1 or E2 debt claim, after

---

[2] In its motion for class certification, plaintiff defined the proposed class (in pertinent part) to include persons "from whom a portion of that TOP collection was for debt that became *due* more than ten years before the offset . . ." but in his reply brief plaintiff agreed with the government that the pertinent time is when the debt became "delinquent," not when it became "due" (Reply at 12).

3

> November 13, 2001; (2) from whom a portion of that TOP collection was for debt that became delinquent more than ten years before the offset and (3) whose amount of net offset payments was less than $10,000, or who are willing to waive their claim with respect to offsets that would bring their refund claim above $10,000.

Plaintiff indicates that the proposed class includes at least 5,396 members nationwide and that in aggregate the allegedly illegal offsets totaled $5,807,516 (Dkt. No. 59). The government indicated at the hearing that 57 class members reside in this judicial district (each side's briefing presented a slightly smaller tally). Plaintiff indicated at the hearing that only three class members had TOP offsets greater than $10,000 (the briefing had indicated four).

## ANALYSIS

### 1. SUBJECT-MATTER JURISDICTION AND VENUE.

Before addressing whether the requirements of Rule 23 are met, this order must clarify the basis for and scope of district court subject-matter jurisdiction over this action and the propriety of venue in this district. As explained in the April 2008 order, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 472, 475 (1994).

Two primary statutes waive sovereign immunity for civil actions (other than tort actions) against the United States: the Tucker Act, and the Administrative Procedure Act. The Little Tucker Act, 28 U.S.C. 1346, allows for jurisdiction over claims for money judgments not exceeding $10,000. For these claims, district courts have *concurrent* jurisdiction with the Court of Federal Claims. The Big Tucker Act, 28 U.S.C. 1491, grants the Court of Federal Claims *exclusive* jurisdiction over money claims against the United States where more than $10,000 is at stake. With few exceptions not relevant here, Tucker Act jurisdiction is limited to claims for monetary relief, not injunctive relief, and special venue requirements apply to claims under the Little Tucker Act. 28 U.S.C. 1402(a) (special venue provision); *Richardson v. Morris*, 409 U.S. 464 (1973) ("the [Tucker] Act has long been construed as authorizing only actions for money

4

1  judgments and not suits for equitable relief against the United States . . . . The reason for the
2  distinction flows from the fact that the Court of Claims has no power to grant equitable relief").
3       Plaintiff argues that certification of a *nationwide* class would be proper in this judicial
4  district for two reasons. *First*, plaintiff contends that jurisdiction exists under the APA.
5  *Second*, plaintiff argues that even if jurisdiction arises from the Little Tucker Act rather than the
6  APA, the Little Tucker Act's venue provision does not prohibit the proposed nationwide class.
7  The United States counters that jurisdiction over this action exists only under the Little Tucker
8  Act, not the APA, and that the Little Tucker Act's venue provision permits, at most, a class of
9  plaintiffs who reside in this judicial district.

### A.    APA Jurisdiction.

11       The APA waives sovereign immunity for certain actions against the government: "A
12  person suffering legal wrong because of agency action, or adversely affected or aggrieved by
13  agency action within the meaning of a relevant statute, is entitled to judicial review thereof."
14  5 U.S.C. 702. The APA, however, applies only to claims "seeking relief other than money
15  damages" and does not apply "if any other statute that grants consent to suit expressly or
16  impliedly forbids the relief which is sought." *Ibid*. Moreover, Section 704 suggests that APA
17  jurisdiction is unavailable where other adequate remedies exist: "[a]gency action made
18  reviewable by statute and final agency action for which there is *no other adequate remedy* in a
19  court are subject to judicial review." *Id*. at § 704 (emphasis added). Summarizing these
20  limitations, the Ninth Circuit explained that "the APA waives sovereign immunity for
21  [plaintiff's] claims only if three conditions are met: (1) its claims are *not* for money damages,
22  (2) an adequate remedy for its claims is not available elsewhere and (3) its claims do not seek
23  relief expressly or impliedly forbidden by another statute." *Tucson Airport Authority v.*
24  *General Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) (emphasis added).
25       The April 2008 order on defendant's motion for judgment on the pleadings addressed
26  the basis for jurisdiction over the named plaintiff's *individual* claim and concluded that the
27  Little Tucker Act afforded plaintiff an adequate remedy. The Tucker Act, the order explained,
28  allowed for jurisdiction over plaintiff's claim insofar as plaintiff sought a money judgment, and

5

1  the order found plaintiff's claim for prospective relief unnecessary because the government was
2  not likely to continue illegally to offset plaintiff's benefits if a court decided in plaintiff's favor,
3  and principles of *res judicata* would prevent it from so doing.  The order, however, expressly
4  limited its ruling to plaintiff's *individual* claim and declined to decide whether APA jurisdiction
5  would exist over a properly certified class (Dkt. No. 34 at 6–8).  Plaintiff now argues that the
6  Tucker Act does *not* provide an adequate remedy for the *class* claims and that APA jurisdiction
7  therefore exists, because the lawsuit seeks not only a monetary recovery but also "to enjoin
8  future illegal offsets by AAFES against class members, their families, and future soldiers and
9  veterans" to effectuate "a global change in the defendant's practices and requests injunctive
10 relief on behalf of a nationwide class of people who have an ongoing relationship with the
11 defendant" (Br. at 17–18).[3]

12      Plaintiff argues that, to ensure an adequate remedy, the class must be permitted to seek
13 prospective relief to change defendant's practice of executing illegal administrative offsets,
14 after the statutory ten-year window set forth in 31 U.S.C. 3716(e) (2004) had closed.  Whatever
15 force that argument may have held at the time plaintiff filed this case, it is now less plausible —
16 as stated, in July 2008 Congress amended Section 3716(e) to remove the ten-year limitation on
17 which plaintiff's claim is based.  As plaintiff emphasizes, the 2004 amendment stated: "[t]he
18 amendment . . . shall apply to any debt outstanding on or after the date of the enactment of this
19 act."  Pub. L. No. 110-234, § 14219, 22 Stat. 923, 1482–83 (2008).  Plaintiff contends that this
20 language renders the amendment applicable only to new or recent debts and somehow
21 grandfathers the debts of the class into the ten-year limitation going forward (Reply at 2–3).
22 Plaintiff neither explains how such a result arises nor cites any authority in support of it.  The
23 amendment referred not to debts that "first became outstanding" or became "delinquent" prior
24 to is passage but instead to "any debt *outstanding* on or after" the date of the amendment.

25      In any event, this order need not conclusively settle the matter because, as explained
26 below, this action is proper in this district even under the Little Tucker Act.  For the same
27 reason, this order need not reach the issue delineated in *Bowen v. Massachusetts*, 487 U.S. 879,
28

---

[3] Plaintiff concedes that the Tucker Act would not allow the injunctive relief sought (Reply at 2).

6

895 (1988) — whether the claim is for "money damages" or instead for a "specific remed[y] . . . the very thing to which [plaintiff] was entitled." *Cf. Bautista-Perez v. Mukasey*, 2008 WL 314486, *6 n.4 (N.D. Cal. 2008) (Henderson, J.) ("The parties argue at length about . . . questions that would require the Court to make fine distinctions about the nature of the Plaintiffs' claims and the respective power of the Court of Claims and the district court. But because the Court has jurisdiction no matter how the claims are characterized, the Court need not reach these issues").[4]

### B.    Little Tucker Act's Venue Provision.

As explained, this action arises under the Little Tucker Act, which states,

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> \*   \*   \*
>
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . .

28 U.S.C. 1346(a). In class actions under the Little Tucker Act, this monetary limitation is satisfied if the *individual* claims of each of the class members are below $10,000, even if a greater aggregate amount is claimed. *Kester v. Campbell*, 652 F.2d 13, 15 (9th Cir. 1981); *Bautista-Perez v. Mukasey*, 2008 WL 314486 (N.D.Cal. 2008) (Henderson, J.) (unreported).

In Little Tucker Act cases, a special venue provision supplants the general venue provisions of 28 U.S.C. 1391. The Little Tucker Act's venue provision states:

> (a) Any civil action in a district court against the United States under subsection (a) of section 1346 of this title may be prosecuted only:
>
> (1) Except as provided in paragraph (2), in the judicial district where the plaintiff resides;

---

[4] In cases where less than $10,000 is at stake — and the district courts therefore have concurrent jurisdiction with the Court of Claims — the distinction between APA and Tucker Act jurisdiction is more pertinent to the question of where appellate jurisdiction will lie. *See, e.g.*, *Brant v. Cleveland Nat. Forest Service*, 843 F.2d 1222, 1223 (9th Cir. 1998) (discussing appellate jurisdiction over "mixed" actions presenting both Tucker Act and non-Tucker Act claims); *Lake Mohave Boat Owners Ass'n v. National Park Service*, 78 F.3d 1360 (9th Cir. 1995).

7

28 U.S.C. 1402(a)(1).

In *non*-Tucker Act class actions, courts generally hold that the named plaintiffs must satisfy the applicable venue requirements but that *unnamed* plaintiffs need not satisfy those requirements. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 2001 WL 1902806 (N.D. Cal. 2001) (Jenkins, J.) (unpublished); *Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 490 (5th Cir.2003); *United States v. Trucking Employers, Inc.*, 72 F.R.D. 98 (D.D.C. 1976) (Bryant, J.).

The United States contends that Section 1402(a)(1) alters the normal class-action rule and permits venue in a judicial district only when *all* plaintiffs — including unnamed class members — reside in the court's judicial district. Plaintiff, in contrast, argues that the ordinary class-action rule applies to class actions under the Little Tucker Act and that, because plaintiff Briggs resides in the Northern District, a nationwide class may be brought in this district.

No appellate decisions have addressed this issue, and the few district courts which have done so have reached differing results. At least one court has expressly ruled that, for Rule 23 cases under the Little Tucker Act, venue is proper in a district court only if *all* class members reside in the pertinent judicial district. *Favereau v. United States*, 44 F. Supp. 2d 68 (D. Me. 1999).[5] Other district courts, however, have followed the traditional class-action rule and permitted Little Tucker Act claims to proceed where unnamed class members resided outside of the district. *Whittington v. United States*, 240 F.R.D. 344, 348–49 (S.D. Tex. 2006); *Bywaters v. United States*, 196 F.R.D. 458 (E.D. Tex. 2000).

After reviewing the history and purpose of the Little Tucker Act and its venue provision, *Favereau* concluded that the Act's venue provision "was deliberately drafted to carve out a narrow exception to the jurisdiction of the Court of [Federal] Claims to give persons with relatively small claims the option of bringing suit in the district where they and their witnesses reside." *Favereau*, 44 F. Supp. 2d at 70. *See also Lake Mohave Boat Owners Ass'n v. National*

---

[5] The government also cites *Saraco v. Hallett*, 831 F. Supp. 1154 (E.D. Pa. 1993), and *Davila v. Weinberger*, 600 F. Supp. 599 (D.D.C. 1985). Those cases are arguably distinguishable, however, because they were *not* Rule 23 class actions but rather actions under a collective right of action in the Fair Labor Standards Act. 29 U.S.C. 216(b). Unlike class actions, however, such cases are "opt-in" cases in which only plaintiffs who sign consent forms expressly opting into the case become party plaintiffs, arguably rendering all plaintiffs "named" plaintiffs. *Davila*, 600 F. Supp. at 603.

8

*Park Service*, 78 F.3d 1360, 1365 n.4 (9th Cir. 1995) (identifying substantially the same purpose for the Little Tucker Act's *jurisdictional* provision). The government's argument is the same — that the Little Tucker Act and its venue provision were intended as a limited exception to exclusive Court of Claims jurisdiction simply to allow plaintiffs with small claims to bring their cases in the local judicial districts.

This order, however, respectfully disagrees. Courts must look first and foremost not to the purpose of a statute but to its text, and this order is simply unable to derive the venue limitation urged by the government from the text of the venue provision.

As stated, unnamed class members ordinarily need not satisfy the applicable venue requirements. For *non*-Tucker Act cases, the government does not contest this rule. Furthermore, as explained, in class actions under the Little Tucker Act, the $10,000 limitation in the *jurisdictional* provision, 28 U.S.C. 1346(a), is satisfied if the claims of the *individual* class members are less than $10,000, even if in aggregate the claims exceeds that amount. Again, the government does not disagree. Given these two rules, the class-action limitation urged by the government, if it exists, must be found specifically in the text of the *venue* provision, 28 U.S.C. 1402(a)(1). Stated differently, if unnamed class members are ordinary irrelevant to venue, and the Little Tucker Act itself poses no hurdle to class certification, the venue provision must specifically dictate a different result. Nothing in that provision, however, suggests such a deviation.

The general venue provision for suits against the government states:

> A civil action in which a defendant is an officer or employee of the United States . . . *may*, except as otherwise provided by law, *be brought in any judicial district in which* (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred . . ., or (3) *the plaintiff resides* if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure . . . .

28 U.S.C. 1391(e) (emphasis added). To reiterate, the Little Tucker Act's venue provision is worded as follows:

> (a) Any civil action in a district court against the United States under subsection (a) of section 1346 of this title *may be prosecuted only*:

9

>      (1) Except as provided in paragraph (2), in the judicial district
> *where the plaintiff resides*;

28 U.S.C. 1402(a)(1) (emphasis added). The only distinction of arguable relevance — a distinction on which *Favereau* relied in part — is the use of the word "any" in the former but "only" in the latter. The result urged by the government, however, cannot be derived from this distinction. Both provisions allow "the plaintiff" to bring an action where "the plaintiff resides." The ordinary class-action rule suggests that "the plaintiff" refers to *named* plaintiffs, but not unnamed plaintiffs. Here, the named plaintiff seeks to bring this action "only" in the district where he resides. The use of the word "only" rather than "any" quite plausibly refers to the fact that Section 1391 provides three venue options, while Section 1402(a)(1) provides only one.

The rule urged by the government may be consistent with the purpose of the Little Tucker Act. It simply is not to be found in the text of the Act itself. Moreover, the venue provision would be an awkward vehicle by which to effectuate any anti-class policy. Significantly, the government's interpretation of the venue provision would allow large class actions to be brought in district courts so long as the class was limited to a single judicial district. Indeed, the government here concedes that a class of Northern District plaintiffs totaling more than 50 members with aggregate claims far exceeding $10,000 would be proper. This would be topsy-turvy under the very premise advanced by the government in the first place, namely a supposed Congressional purpose to channel all suits to the Court of Claims except for small claims seeking less than $10,000.

### 2.    RULE 23 REQUIREMENTS.

In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Eisen v Carlisle & Jacquelin*, 417 U.S. 156, 177–178 (1974). Although we may not investigate the likelihood of prevailing on the merits, judges are at liberty to, and indeed must, consider evidence relating to the merits if such evidence also goes to the requirements of Rule 23. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 n.2 (9th Cir. 2007). The party seeking class certification bears the burden of showing that

10

1  each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)
2  are met. *Id*. at 1176; *Hanon v. Data Products Corp.*, 976 F.2d 497, 508-509 (9th Cir. 1992).
3        Pursuant to Rule 23(a), for a named plaintiff to obtain class certification, the court
4  must find: (1) numerosity of the class; (2) that common questions of law or fact predominate;
5  (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff
6  can adequately protect the interests of the class. In addition, in the instant case, plaintiff seeks
7  to certify the class both under Rule 23(b)(2) and Rule 23(b)(3). Certification under Rule
8  23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that
9  apply generally to the class, so that final injunctive relief or corresponding declaratory relief is
10 appropriate respecting the class as a whole." Certification under Rule 23(b)(3) requires that a
11 district court find "that questions of law or fact common to the members of the class
12 predominate over any questions affecting only individual members, and that a class action is
13 superior to other available methods for the fair and efficient adjudication of the controversy."
14       The United States contends that certification should be denied on the grounds discussed
15 below and, in the alternative, that if a class is to be certified it should include only class
16 members who reside in this judicial district.

### A. Rule 23(a)(1): Numerosity.

18       The United States contends that class certification should be denied because, assuming
19 venue over a *nationwide* class is improper in this district, joinder of all plaintiffs who *do* reside
20 in this judicial district — 57 plaintiffs, according to the representation at the hearing — is not
21 impracticable. This argument is rendered moot by the conclusions reached above. The
22 proposed class includes at least 5,396 members nationwide (Dkt. No. 59). This order finds the
23 class to be so numerous that joinder is impracticable.

### B. Rule 23(a)(4): Adequacy.

25       The United States next contends that Briggs is not an adequate class representative
26 because he recently failed to appear for a mandatory settlement conference at which his
27 participation was required. Plaintiff has not responded to this allegation. Assuming that the
28 allegation is true, this order declines to rule that one missed settlement conference, alone,

11

renders plaintiff an inadequate class representative.  No other challenge is raised to plaintiff's ability adequately to represent the class.

### C. Rules 23(a)(2)–(3), (b)(3):  Commonality, Typicality, Predominance.

Questions of commonality and typicality tend to merge in class certification analyses. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001).  Moreover, Rule 23(b)(3)'s "predominance" requirement is more stringent than Rule 23(a)(2)'s "commonality" requirement.  Defendant, therefore, has addressed all three requirements jointly under the rubric of predominance.  This order will also consider the issues jointly.

To qualify for certification under Rule 23(b)(3), a class must satisfy two requirements: common questions must "predominate over any questions affecting only individual members" and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 615 (1997); Rule 23(b)(3).

The government's challenge to the superiority of the class vehicle, and its alternative contention that if a class is to be certified it must be limited to class members who reside in this judicial district, are both founded on its above-discussed arguments regarding the Little Tucker Act's venue provision.  Both arguments are rendered moot by the conclusion reached above.

The government also contends that common issues do not predominate over individual issues and that the class is not sufficiently cohesive, for two reasons.  *First*, defendant contends that plaintiff brought this lawsuit under the ten-year limitations period set forth (prior to amendment) in 31 U.S.C. 3716(e) (2004), but that a different statutory provision, 26 U.S.C. 6402(d), governs offsets of tax refund payments.  The government claims that the administrative offsets Briggs challenges were offsets of tax refunds pursuant to Section 6402(d), and that Briggs' claims therefore are neither typical of, or common to, claims arising from other types of offsets.  In fact, the government contends, the challenged offsets were specifically exempted from Section 3716 (and its ten-year limitation) by 31 U.S.C. 3701(d), which states: "[Sections] 3716-3719 of this title do not apply to a claim or debt under, or to an amount

12

1  payable under--(1) the Internal Revenue Code of 1986 (26 U.S.C. 1 et seq.)." Defendant also
2  notes that, unlike Section 3716(e), Section 6402(d) contains no ten-year limitations period.

3  Plaintiff responds that his claim does in fact arise under Section 3716(e), because the
4  applicability of one section versus the other hinged (and continues to hinge) not on what federal
5  benefit was withheld from the plaintiff as an offset but rather on what type of debt was
6  delinquent and subject to offset. The tax-offset provision, plaintiff argues, applied only to "tax
7  debt" while Section 3716(e) applied to other debts. The class members all suffered the same
8  injury — illegal offsets under Section 3716(e) — plaintiff argues, because by definition the
9  class' delinquent debts were AAFES credit card debts, not tax debts. Plaintiff also points out
10 that, although the tax-offset provision itself contains no ten-year limitations period, a ten-year
11 limitation is imposed on offsets under that provision by regulation. 31 C.F.R. 285.2(d)(1)(ii).

12 Plaintiff is correct that his debts were not exempt from Section 3716(e), because his (and
13 the class') delinquent debt subject to offset was non-tax debt. *See* 31 U.S.C. 3701(a)(8), (b)(1),
14 (d).[6] Plaintiff relies on a relevant provision: AAFES *did* refer plaintiff's debts for collection by
15 offset under Section 3716(e). The tax-offset provision the government cites was also relevant in
16 at least one respect; it authorized the IRS, "[u]pon receiving notice from any Federal agency,"
17 to withhold tax refunds otherwise owed to plaintiff for offset against plaintiff's debt. This fact
18 does not undercut commonality, however, because plaintiff challenges not the withholding of
19 tax refunds *per se* but the practice of referring the debts for collection by offset (whatever the
20 federal benefit ultimately withheld may be) when the government allegedly was not entitled to
21 do so — plaintiff is arguably correct that "[w]hich law TOP uses to collect the debt is irrelevant
22 to AAFES and to the legality of referring debt more than ten years old to TOP" (Reply at 11).
23 Because Section 3716(e) was applicable to the entire class, and because in all respects both
24 provisions were subject to a ten-year limitations period during the class period, this order finds
25 that common issues predominate.

---

28  [6] In fact, the contract expressly referenced some of the sections from which the government argues it was exempted (First Amd. Compl. Exh. A).

13

*Second*, defendant contends that individual issues predominate over common issues because this lawsuit will require numerous factual determinations about each account — the date of the offset, the delinquency date of the debt, the amount of the debt, the administrative charges imposed by TOP, and the amount of "injured spouse" reversals. Plaintiff did not respond to this point in its reply brief, but the government's brief indicates that "[a]t this point, it appears that plaintiff is not disputing the individual account facts provided to him by AAFES," with the possible exception of the amount of "injured spouse" reversals (Opp. at 13 and n.9). Defendant argues, however, that "[u]nless plaintiff is prepared to stipulate to the accuracy of all of [these] facts . . . individual account issues predominate" (Opp. at 13).

It appears that individual account facts are largely undisputed. In any event, the primary issue posed by this litigation is the legality of the government's administrative offsets. This order finds that mechanisms can be devised for addressing any disputes which may arise regarding individual-account facts and that the potential for such disputes is not an insuperable obstacle to class certification.

### D. Rule 23(b)(2).

Plaintiff also seeks class certification under Rule 23(b)(2). As stated, certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The government is correct, however, that "[c]lass certification under Rule 23(b)(2) is inappropriate where the 'primary relief sought is monetary.'" *Zinser v. Accufix Research Inst*, 253 F.3d 1180, 1195 (9th Cir. 2001); *Nelsen v. King County*, 895 F.2d 1248, 1255 (9th Cir.

14

1990). As explained, the primary relief sought in this case is monetary. Certification under Rule 23(b)(2) is therefore inappropriate.

## CONCLUSION

For the reasons stated above, this order finds that jurisdiction and venue over the nationwide class are proper in the Northern District, and the motion for class certification is **GRANTED**. The above-quoted class is hereby certified. Any class members with claims exceeding $10,000 must expressly opt into the class and waive their claims above $10,000 in order to be included. By **JANUARY 26, 2009**, the parties are requested jointly to submit an agreed-upon form of notice, a joint proposal for dissemination of notice and the timeline for opting out of the action. Plaintiff must pay for the cost of notice.

**IT IS SO ORDERED.**

Dated: January 16, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE