IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JULIUS BRIGGS, on behalf of himself
and all others similarly situated,

    Plaintiff,

  v.

UNITED STATES OF AMERICA,

    Defendant.

No. C 07-05760 WHA

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this certified class action, Julius Briggs sues the United States on behalf of himself and other soldiers and veterans similarly situated alleging unlawful debt-collection practices. Plaintiff was issued a credit card by the government's Army and Air Force Exchange Service. Plaintiff's credit-card debt thereafter became delinquent. The lawsuit alleges that the government illegally withheld tax refunds and other benefits to satisfy those debts, in violation of a statutory ten-year limitation on such administrative offsets. Plaintiff now moves for summary judgment on the class claim for illegal administrative offsets. The government, in turn, moves for partial summary judgment arguing that its litigation setoff rights preclude the bulk of the class recovery. For the reasons stated below, plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The government's motion for partial summary judgment is also **GRANTED IN PART**.

**STATEMENT**

The facts of this case have been set forth in previous orders but will be repeated here in brief for convenience (*see* Dkt. Nos. 47, 61). The Army and Air Force Exchange Service ("AAFES") issues credit cards to military personnel to purchase uniforms and other merchandise from post-exchange stores on our military bases. Class-representative Briggs is an army veteran. Briggs began using a credit card issued by AAFES on November 12, 1993. By December 16, 1993, Briggs had incurred charges totaling $1,857.08. He made no further charges on the credit card. In this lawsuit, he challenges a government debt-collection practice — withholding tax refunds and other benefits and offsetting those monies against his delinquent AAFES debt, *after* a statutory ten-year limitations period for such administrative offsets has expired. 31 U.S.C. 3716(e) (2004) (since amended).

When debts become delinquent, the United States is authorized to withhold tax refunds or other benefits that the government owes the debtor and to offset those monies against the delinquent debt. 31 U.S.C. 3716, 3720A. Federal agencies refer delinquent debts to the Department of the Treasury, which administers a centralized debt collection effort called the Treasury Offset Program ("TOP") using administrative offsets (First Amd. Compl ¶ 1, 16–18). The AAFES credit agreement explicitly authorized collection by offset (First Amd. Compl. Exh. A). Prior to June 2008, the statute included a ten-year limit on such administrative offsets: "(e) This section does not apply -- (1) to a claim under this subchapter that has been outstanding for more than 10 years." 31 U.S.C. 3716(e) (2004). In May 2008, Congress amended the statute to remove the ten-year limitation, so this lawsuit concerns a period before the amendment.

AAFES continued to send Briggs billing statements between January 1994 and June 1997 but took no further action to collect the outstanding balance. In June 1997, AAFES referred plaintiff's delinquent debt to the Department of the Treasury's TOP. Treasury, however, did not start offsetting payments until 2003. Briggs contends that the statutory ten-year window for administrative offsets against him closed in January 2004, but TOP

nevertheless withheld several federal payments thereafter. The government asserts that, after deduction of those payments, Briggs continues to owe the government $1,925.22.[1]

Briggs commenced this class action in November 2007 and filed a two-count first amended complaint in January 2008. The first count alleged that defendant unlawfully withheld tax refunds or other benefits as administrative offsets more than ten years after the debts became delinquent, in violation of the above-quoted statutory ten-year limit on administrative offsets. 31 U.S.C. 3716(e) (2004). The count sought declaratory and injunctive relief as well as restitution of all untimely TOP collections. The second count alleged that certain finance charges were improper.

On February 14, 2008, the United States filed an answer to the first amended complaint and also asserted a counterclaim to recover the balance remaining on plaintiff's AAFES debt. The United States then filed a motion for judgment on the pleadings or for partial dismissal. An April 2008 order dismissed the second count as moot. It also concluded that subject-matter jurisdiction over the individual action arose from the Little Tucker Act rather than the Administrative Procedure Act. Finally, the order dismissed the claims against AAFES as a distinct party, leaving only the claim against the United States (Dkt. No. 34).

The United States subsequently moved for summary judgment both on plaintiff's sole remaining claim and on the government's counterclaim to recover the amount due on plaintiff's debt (Dkt. No. 47). An October 2008 order denied both motions. The order ruled that (1) the government's litigation setoff rights — its right to offset any recovery plaintiff may achieve in this action against the balance remaining on plaintiff's debt to the government — was *not* a proper ground to dispose of the entire action before reaching the merits of plaintiff's illegal-debt-collection claim; and that (2) defendant's counterclaim to recover the full balance due on plaintiff's debt did *not* arise from the same "transaction or occurrence" as plaintiff's illegal-

---

[1] The debts continued to accrue interest, penalty and administrative charges after they were referred to TOP for collection by offset— plaintiff challenges some of these charges in this motion. In its answer and counterclaim, defendant originally asserted that plaintiff continued (and still continues) to owe it nearly $4,000 (Ans. and Counterclaim ¶ 18). Defendant revised that figure in its motion for summary judgment and asserted that, after the challenged administrative offsets, plaintiff continued to owe it $1,925.22.

3

collection claim and therefore, under 28 U.S.C. 2415(f), it may be asserted "only by way of offset . . . in an amount not to exceed the amount of the opposing party's recovery."

In December 2008, Briggs moved for class certification. A January 2009 order granted the motion and certified the following class (Dkt. No. 61 at 3–4, 15):

> All natural persons (1) who have been subjected to TOP collection of an AAFES type E1 or E2 debt claim, after November 13, 2001; (2) from whom a portion of that TOP collection was for debt that became delinquent more than ten years before the offset and (3) whose amount of net offset payments was less than $10,000, or who are willing to waive their claim with respect to offsets that would bring their refund claim above $10,000.

In so doing, the order concluded that the Little Tucker Act permitted this nationwide class action to be brought in this judicial district so long as the claims of the individual class members do not exceed $10,000. It ruled that the Little Tucker Act's special venue provision did *not* require the class to be limited to members who reside in this district (or that the case be transferred to the Court of Claims).

The parties have now filed cross-motions for summary judgment. Plaintiff contends that the class is entitled to judgment in its favor on the claim for illegal administrative offsets. Plaintiff also seeks pre-judgment interest and challenges the legality of certain fees and penalty charges sought in defendant's counterclaim. Defendant moves for partial summary judgment in its favor on the class claim, arguing that its common-law setoff rights (as distinct from the administrative offsets underlying plaintiff's claim) entitle it to judgment in its favor — with the exception of certain (relatively small) processing fees assessed on the administrative offsets. Defendant also moves to strike portions of declarations.

To avoid confusion, this order will refer to administrative offsets under 31 U.S.C. 3716 — the statutory offsets at issue in the class claim — as "*administrative offsets*." Those are the debt-collection offsets which (until amendment of that provision) were subject to the ten-year limitations period allegedly breached. In contrast, this order will refer to the government's rights to tally up the mutual debts of parties in litigation and pay only the difference as "*litigation setoff rights*." The government has both common-law litigation setoff

4

1  rights as well as statutory litigation setoff rights. *See Dunn & Black, P.S. v. United States*,
2  492 F.3d 1084, 1092 n.10 (9th Cir. 2007).

3  One of the statutory litigation setoff rights is 28 U.S.C. 2415(f). The government's
4  counterclaim, a contract claim to recover the balance remaining on plaintiff's credit-card debt,
5  would be barred by a six-year statute of limitations in Section 2415(a), but that provision allows
6  the government to proceed with otherwise time-barred claims by way of offset (emphasis
7  added):

> (f) The provisions of this section shall not prevent the assertion, in an action against the United States . . . of any claim . . . against an opposing party, a co-party, or a third party that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. *A claim of the United States . . . that does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim may, if time-barred, be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery.*

13  Although (as the October 2008 order concluded) the government's counterclaim to
14  recover plaintiff's full debt was *not* the same "transaction or occurrence" as plaintiff's claim,
15  under the emphasized portion of Section 2415(f) the government *may* assert its claim by way of
16  offset, in an amount not to exceed plaintiff's recovery. In this case, the government asserts
17  (only) its common-law setoff rights and its Section 2415(f) litigation setoff rights.[2]

## ANALYSIS

19  Summary judgment is granted under FRCP 56 when "the pleadings, depositions,
20  answers to interrogatories, and admissions on file, together with the affidavits, if any, show that
21  there is no genuine issue as to any material fact and that the moving party is entitled to a
22  judgment as a matter of law." A district court must determine, viewing the evidence in the light
23  most favorable to the nonmoving party, whether there is any genuine issue of material fact.
24  *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). A genuine issue
25  of fact is one that could reasonably be resolved, based on the factual record, in favor of either

---

[2] The government also has statutory setoff rights under 31 U.S.C. 3728 that apply when a litigant has secured a judgment against the government. The government, however, has not asserted its Section 3728 setoff rights. In the case law, "offset" and "setoff" are used interchangeably.

5

1  party. A dispute is "material" only if it could affect the outcome of the suit under the governing
2  law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

   With limited exceptions discussed below, the material facts are not in dispute. Plaintiff contends that the class is entitled to judgment as a matter of law on its claim for illegal administrative offsets and, moreover, that the class is entitled to a *refund* of the money withheld to execute those offsets. The government, in turn, moves for partial summary judgment on the grounds that its litigation setoff rights preclude the bulk of the class' sought-after refund. These issues are interrelated and will be addressed together. Plaintiff also seeks pre-judgment interest and a determination that the government unlawfully assessed certain processing fees and penalty charges on the delinquent class debts.

   **1.   ILLEGAL ADMINISTRATIVE OFFSETS AND LITIGATION SETOFF RIGHTS.**

   Plaintiff moves for summary judgment on the class claim for violation of the ten-year limitation on administrative offsets set forth (until revision) in Section 3716(e). The facts material to this illegal-offset claim are not disputed. The ten-year limitations period for administrative offsets against *plaintiff's own* debts expired on January 18, 2004. Data provided by the government establishes that plaintiff's debt was referred to TOP for offset on four occasions thereafter, for a total of $2,372.95 (Coker-Stowe Decl. ¶¶ 8–9; Visher Decl. ¶ 9). The parties have yet to compile an agreed-upon list of the facts relevant to *all* class members (*i.e.*, for each, the dates the ten-year window closed, the number of tardy offsets and their value), but the parties indicate that they are cooperating to determine those facts. Neither side raises disputes about those facts in the instant motions.[3]

   Plaintiff contends that these undisputed facts entitle the class to judgment as a matter of law on the illegal-offset claim. Specifically, plaintiff seeks entry of judgment determining that (1) administrative offsets more than ten years after the class debts became delinquent were

---

[3] The parties entered an agreement under which AAFES agreed to produce the data necessary to generate a list of offsets executed more than ten years after the date the debt became delinquent. AAFES provided this data, but the week of the hearing on the instant motions counsel for the government discovered an error. AAFES indicates that it will revise the data but it has yet to complete the task.

6

1 illegal, and that (2) defendant must actually pay each class member a *refund* of the federal
2 benefits or tax refunds that were intercepted for the administrative offsets.

3                            *        *        *

4 The government no longer contests the first issue. Although the government's briefing
5 defended the validity of the contested administrative offsets, at the hearing the government
6 clarified that it is no longer challenging the merits of the class claim — it now concedes that
7 offsets more than ten years after plaintiff's debts became delinquent contravened then-
8 applicable ten-year limitations periods.

9                            *        *        *

10 The government concentrates its fire on the second issue. As stated, the government has
11 various litigation setoff rights. The government asserts its common-law setoff rights and its
12 rights under 28 U.S.C. 2415(f). It moves for partial summary judgment on the grounds that
13 these litigation setoff rights preclude the bulk of the class recovery sought. In other words, the
14 government contends that it is not required actually to *refund* the bulk of the money that was
15 improperly withheld as (tardy) administrative offsets, because it is entitled to offset the recovery
16 for those tardy offsets against plaintiffs (and the class') remaining credit-card debt via its
17 *litigation* setoff rights. The government seeks only partial summary judgment because, it
18 agrees, the class is entitled to recover a small processing fee, the "FMS fee," assessed on any
19 improper offsets.[4] Defendant argues that this is the most any class member could recover.
20 Plaintiff opposes application of the government's litigation setoff rights on both legal
21 and factual grounds.

---

[4] When debts were referred to TOP for collection, the agency that administered the TOP program, the Financial Management Service ("FMS"), assessed a small fee to execute the offset. To illustrate (using hypothetical figures), if the government owed a plaintiff a tax refund of $1,000 for a given year, but the plaintiff had outstanding delinquent debt to the government greater than that amount, the government would withhold the $1,000 tax refund, assess a $10 "FMS fee" and apply the remaining $990 to the plaintiff's credit card debt. Defendant contends that the only amount that any class member could receive is the amount of the FMS fee. It concedes that, for any improper administrative offsets, the class members would be entitled to recover the fee — by a reduction (setoff) of the plaintiff's remaining delinquent debts, if any, and otherwise by refund of the FMS fee (Br. at 2).

7

### A. Legal Challenge to Litigation Setoff Rights.

Plaintiff argues that he is entitled to an actual *refund* of the tax refunds or other federal benefits improperly withheld because unfairness would result if the government could execute illegal administrative offsets, wait for the affected taxpayers or beneficiaries to sue to challenge those offsets, and then achieve the same result (minus the small FMS fee) via its litigation setoff rights. Plaintiff emphasizes that the common-law doctrine of setoff developed as an equitable remedy, and that courts have rejected the doctrine "when it would be inequitable or contrary to public policy" to apply it. For example, in decisions concerning the Truth in Lending Act (and analogous cases), courts have rejected equitable setoff rights where such setoffs would reward illegal conduct (*e.g.*, TILA violations) or eliminate the incentive to bring claims challenging such illegal conduct. *See, e.g.*, *Riggs v. Government Emp. Financial Corp.*, 623 F.2d 68 (9th Cir. 1980). Plaintiff argues that similar considerations are here applicable and urges that the parties be returned to their "pre-illegal conduct" positions.

The government, however, has statutory setoff rights in litigation as well as common-law setoff rights. As explained, where an action has been filed against the government, Section 2415(f) specifically allows the government to assert *its* claims against the opposing party by way of offset even if they are time-barred.

At the hearing, the Court raised the issue and requested supplemental briefing regarding whether the doctrine of equitable estoppel might bar the government from asserting its setoff rights, and such briefing has been received. A party seeking to invoke estoppel against the *government* must satisfy two requirements in addition to those ordinarily applicable. *First*, the plaintiff must show that the government has engaged in "affirmative misconduct going beyond mere negligence." *Second*, the plaintiff must show that "the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest." *Pauly v. United States Dept. of Agriculture*, 348 F.3d 1143, 1149 (9th Cir. 2003) (citations omitted).[5]

---

[5] The four traditional requirements for equitable estoppel are the following: that (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct. *United States v.*

8

Plaintiff is unable to satisfy these requirements. The government has presented uncontroverted evidence that the tardy administrative offsets were a result of a "programmed system error" that occurred when the government transferred to a new computer system. The government has corrected the error and the problem will not recur (Heimann Decl. ¶¶ 3–4). Plaintiff does not dispute this evidence. This is not a case where the untimely offsets were the result of an intentional effort to circumvent the statutory ten-year limit nor of any other affirmative misconduct beyond negligence (if even that). The record indicates that the tardy administrative offsets were the result of a programming glitch that has now been corrected. The government is not estopped from asserting its setoff rights. For these reasons, this order agrees that the government has a right of litigation offset in this case.

### A. Factual Challenge to Litigation Setoff Rights.

Plaintiff next argues that the government's motion for (partial) summary judgment on its litigation setoff claim should be denied because the facts going to that claim are disputed (or are absent from the record). Specifically, plaintiff contends that the current record fails to establish the existence of, and the amount of, each class member's debts to the government. Plaintiff argues that the government must "prove up" each class member's debt to the government before the government can apply litigation setoff against those debts.

This order agrees. As explained, the government does have litigation setoff rights. In order to apply its setoff rights, however, the government must prove that the amounts it claims the class owed it *were in fact* owed. It is the government's burden to establish its entitlement to its litigation setoff, and the government has yet to carry that burden.

The history of these proceedings establishes that the government's debt data are far from impeccable. As plaintiff emphasizes, in the course of this litigation the government has already reduced its assessment of *Briggs'* outstanding debt balance by approximately $2,000. In light of such moving-target problems, the class debts to the government will need to be established at trial if the parties are unable to compile agreed data.

---

*Gamboa-Cardenas*, 508 F.3d 491 (9th Cir. 2007).

9

1    In the government's view, the mere fact that the administrative offsets took place
2  establishes the existence *per se* of the class debts. The government reasons that each class
3  member's debt balance was credited (reduced) for the unlawful administrative offsets at the
4  time those offsets took place. Therefore, the government argues, each class member's debt
5  balance (whether or not it was accurate in other respects) must have been as large as the
6  recovery plaintiff now seeks. If the debt balances were incorrect for reasons unrelated to the
7  illegal conduct here at issue (the tardy administrative offsets) the government insists, the
8  problem is outside the scope of this litigation.

9    The government's theory, however, assumes a fact not in evidence. It assumes that the
10 class actually owed debts to the government at the time the illegal administrative offsets were
11 executed and that those debts exceeded the value of the illegal offsets. The undisputed record
12 does not so establish. The above-described glitches with Briggs' own debt balance underscore
13 that the class debts to the government cannot be taken on faith.[6]

14    Briggs, moreover, has standing to challenge the government's litigation setoff claim on
15 behalf of the class and remains a proper representative. True, plaintiff does not further
16 challenge the existence of, nor amount of, his remaining debt to the government (following
17 correction thereof in the course of this litigation). The government's setoff rights will thus
18 preclude him from receiving the sought-after refund. Plaintiff, however, continues to hold a
19 stake in the litigation: he still seeks the processing fees improperly assessed against him, and
20 stands to have his debts further reduced by the amounts thereof.

21    In sum, the government does have litigation setoff rights. Its motion for partial
22 summary judgment to exercise those rights, however, must be denied because the undisputed
23 facts fail to establish its entitlement to litigation setoff on a class-wide basis.

---

[6] In the Visher Declaration, plaintiff's counsel makes certain factual inferences from his own examination of the debt data provided by the government. For example, he asserts that more than sixty percent of the class may have suffered illegal administrative offsets that exceeded the principal amount of their debt, and he further claims that there is a "good possibility" that class members suffered illegal offsets greater than the "true" debt totals (principal as well as interest and charges) (Visher Opp. Decl. ¶ 4). The government moves to strike this and other portions of the Visher declaration on the grounds that it is not based on personal knowledge and/or is merely legal argument (Dkt. Nos. 74, 76). The motion is denied, but this order is cognizant of the limited extent to which the challenged portions of the declaration are based on personal knowledge and reaches its conclusions based only on undisputed facts in the record.

### 3. PRE-JUDGMENT INTEREST.

Plaintiff seeks pre-judgment interest on the tax refunds improperly withheld as administrative offsets. "[I]nterest cannot be awarded against the United States unless it has expressly waived its sovereign immunity." *Carvajal v. United States*, 521 F.3d 1242, 1245 (9th Cir. 2008) (citation omitted). Thus plaintiff can recover interest only if he identifies a specific statute waiving sovereign immunity. Plaintiff claims that such a waiver is provided by 26 U.S.C. 6611(a), which allows interest on tax "overpayments." That section states: "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621."

Generally, "[t]he word 'overpayment' in its usual sense means payment in excess of that which is properly due. Whatever the reason, the payment of more than is rightfully due is what characterizes and overpayment." *Steiner v. Nelson*, 309 F.2d 19 (7th Cir. 1962). *Steiner* rejected a claim for interest under Section 6611(a) because, in that case, "money [had been] refunded not because of any determination that it exceeded the amount of taxes owed by plaintiffs or because of a determination that they owed no tax but because it had been illegally seized." *Id*. at 21. In other words, the decision found, interest cannot be recovered under Section 6611 absent a determination that the plaintiff had made tax overpayments.

Here, there has been no such determination. In fact, plaintiff is specifically prohibited by statute from characterizing his illegal administrative-offset claim as a claim for a tax overpayment. Section 6402 provides, in relevant part:

> **(g) Review of reductions**.-- . . . . No action brought against the United States to recover the amount of any [administrative offset of tax refunds] shall be considered to be a suit for refund of tax.

Therefore, plaintiff's claim alleging illegal administrative offsets cannot be deemed a claim for "tax overpayments." That makes complete sense. As in *Steiner*, this lawsuit neither requires nor will involve a determination that any class members' historic tax payments exceeded the amount due. Plaintiff alleges — based entirely on the declaration of his counsel — that the federal payments withheld for *his* offsets were in fact tax refunds on account of tax overpayments. He further explains that the offsets for "most" of the class members were from tax refunds, although "[t]he exact interest due the Class will require a somewhat more

11

detailed analysis . . . ." (Visher Decl. ¶ 15). An analysis into whether each class member was in fact entitled to a refund for a "tax overpayment" is beyond the scope of this lawsuit and is barred by statute. Interest is not recoverable.

### 4. PENALTY ASSESSMENTS.

The data provided by the government regarding the balance remaining on the debts at issue include annual penalty charges on the delinquent debts. Plaintiff challenges these charges, as well as certain processing fees that were assessed on the debts, on statutory grounds.[7]

The fees and penalty charges were authorized by the terms of plaintiff's AAFES credit-card agreements. The contract of each class member contained provisions setting the ordinary interest rate on outstanding debt at a minimum of twelve percent. The contracts also contained the following provision regarding *delinquent* debts:

> Under the provisions of 31 U.S.C. 3717, AAFES will assess on delinquent debt: (1) an administrative fee to cover the cost of processing and handling a delinquent debt; and (2) a penalty charge of 6 percent annually for failure to pay any part of this amount more than 90 days past due.

Plaintiff's claim arises under Section 3717. Subsection (a) of that provision required the government to charge a minimum rate of interest on outstanding debt — which the credit-card contract did. Subsection (e), in turn, *required* the government to charge certain additional administrative fees and penalty charges on delinquent debts:

> (e) The head of an executive, judicial, or legislative agency shall assess on a claim owed by a person--
>
> (1) a charge to cover the cost of processing and handling a delinquent claim; and
>
> (2) a penalty charge of not more than 6 percent a year for failure to pay a part of a debt more than 90 days past due.

Section 3717(g) then states:

> (g) This section does not apply--
>
> (1) if a statute, regulation required by statute, loan agreement, *or contract prohibits charging interest or assessing charges or explicitly fixes the interest or charges*;

---

[7] In a declaration filed in support of its August 2008 motion for summary judgment, the government calculated the penalty charges against Briggs at $951.16 (Coker-Stowe Decl. ¶ 9).

12

Plaintiff claims that the fee and penalty provisions of the credit-card contract were nullified by Section 3717(g). Plaintiff's theory (as understood) is as follows: because the contract both references Section 3717 and expressly sets a six-percent penalty charge (the statutory maximum), the contract's penalty rate *is* the statutory penalty charge, not a charge agreed under the contract. Thus, because the contract "explicitly fixes the interest," *i.e.*, the rate for *non*-delinquent debt, Section 3717 and its penalty charges "do[] not apply" pursuant to Section 3717(g).

This contorted argument is unpersuasive. The statutory scheme is plain. If fees and penalty charges are *not* specified in the contract, Section 3717(e) requires the government to impose statutory processing fees and penalty charges. If such fees and penalty charges *are* specified in the contract, Section 3717(g) states that those statutory rates "do[] not apply" and that the contracted fees and charges apply instead.

Here, as stated, specific fees and charges are set forth in the contract — which sets both an ordinary interest rate as well as processing fees and a penalty charge. Those contracted fees and charges therefore apply. Plaintiff's suggested interpretation of the contract — that the contract expressly sets fees and penalty charges only to nullify those charges by a reference to Section 3717 — is counterfeit logic. Defendant cannot choose one contracted rate (the ordinary interest rate) but not others (the contracted processing fees and penalty charges). The fees and charges in the contract shall apply.

**CONCLUSION**

For all of the reasons stated above, plaintiff's motion for summary judgment is **GRANTED IN PART** (as to the illegality of administrative offsets executed outside of the ten-year window) and **DENIED IN PART**. The government's motion for partial summary judgment is also **GRANTED IN PART**. The undisputed facts establish that administrative offsets executed outside of the ten-year window were illegal. The government, however, is entitled to apply its litigation setoff rights. Therefore, plaintiff's claim for a full refund of the illegal administrative offsets as a matter of law is denied.

The class will be entitled to judgment in its favor in the amount of the illegal administrative offsets and the amount of any processing fees assessed thereon (*e.g.*, the "FMS"

13

fee), *minus* the amount of the government's litigation setoffs. The amounts of the class recovery over and above the government's (proven) setoff claim must be refunded to the class. The present factual record, however, does establish the government's entitlement to litigation setoff against each class member nor the amount thereof. Entry of judgment must await proof of the government's setoff claim at trial.

**IT IS SO ORDERED.**

Dated: April 30, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE