IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR RUSSELL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant.<br>_____ / | No. C 09-03239 WHA<br><br>**ORDER GRANTING MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND PARTIAL DISMISSAL** |

**INTRODUCTION**

In this proposed class action, plaintiff Taylor Russell, on behalf of soldiers and veterans who used credit cards issued by the Army and Air Force Exchange Service ("AAFES"), has sued the United States for alleged unlawful charges. Count one alleges improper finance charges. Count two alleges improper finance charges, fees, and penalties. The United States moves for the following: (1) a dismissal of the first claim for lack of subject-matter jurisdiction for mootness, (2) a judgment on the pleadings for the second claim allegation regarding administrative fees and penalties, (3) a dismissal of the second claim allegation regarding private collection agency fees, and (4) a dismissal of all claims with jurisdiction asserted under the Administrative Procedures Act. After full briefing and hearing, the motion for judgment on the pleadings and motion to dismiss are **GRANTED**.

STATEMENT

The AAFES, an instrumentality of the United States, issued credit cards to military personnel to purchase uniforms and other merchandise from post-exchange stores in U.S. military bases. The credit-card plan under the AAFES Credit Program Account Agreement ("the agreement") offered two types of purchases: the Uniform Clothing Deferred Payment Plan ("UCDPP") for uniforms and the Deferred Payment Plan ("DPP") for other goods. Card users had the option of paying their balances in full or to pay a minimum monthly payment as shown on their account statements. UCDPP balances were *not* subject to a finance charge while DPP balances were subject to a periodic finance charge. If card users failed to make monthly payments on time, the agreement allowed AAFES to impose "an administrative fee to cover the cost of processing and handling a delinquent claim," and "a penalty charge at 6 percent annually for failure to pay any part of this amount more than 90 days past due" (Compl. Exh. 1 ¶ 14).

AAFES referred delinquent debts to the Department of the Treasury, which administered the Treasury Offset Program ("TOP"). TOP collected delinquent debts owed to federal agencies and states. When card users failed to repay their credit-card debt, TOP offset the delinquent debt against funds the government owed the debtor, if any, for benefits and tax refunds. The agreement, signed by plaintiff, explicitly authorized this referral (Compl. Exh. 1 ¶ 22). Following the referral to TOP, the United States continued to accrue interest, penalty and administrative charges on a delinquent account.

\*     \*     \*

Plaintiff served in the United States Army on active duty from April 1997 until July 2000. He opened his AAFES account in 1998 and made required payments until the time of his separation from service in 2000. Plaintiff claims that the credit account became delinquent shortly after he left service and remained delinquent until the outstanding balance was paid in full through offsets of his federal tax refunds. Offsets were made against plaintiff's 2005–2008 tax refunds. In 2009, the United States claims that the account was paid in full by the final offset.

Through February 7, 2008, the United States allegedly improperly charged interest of $135 on UCDPP purchases, penalties of at least $403 on the DPP balance, and penalties of at least $161 on the UCDPP balance. Moreover, from the time the account became delinquent until 2009, when the account was paid off, the United States imposed an allegedly improper penalty on the UCDPP and DPP balances pursuant to the Debt Collection Act, 31 U.S.C. 3717. Additionally, in February 2008 and January 2009, the United States assigned plaintiff's account to outside collection agencies for collection and added allegedly improper collection fees to the account balance. According to plaintiff, however, prior to this lawsuit, those fees were deleted from the balance due when the debt was collected by administrative offset rather than by outside agencies (Compl. ¶ 24).

Plaintiff commenced this action in July 2009. He makes two claims. Count one alleges that finance charges imposed on the UCDPP debt violated the agreement. Count two alleges the following: (1) the United States imposed an interest rate on DPP purchases in excess of that allowed in the agreement, (2) that no penalties or administrative fees should have been imposed on the account because the agreement does not authorize them, and (3) that the United States had no statutory or contractual right to impose private collection agency fees.

Plaintiff seeks the following: (1) an injunction prohibiting the United States from continuing the alleged unlawful behavior, (2) that the United States refund all improperly collected funds, and (3) a grant of all other appropriate equitable remedies. Plaintiff seeks to sue on behalf of a class of persons subject to the UCDPP finance charges and on behalf of a class of persons subject to the same alleged wrongful acts in stated in claim two. Plaintiff alleges that the court has jurisdiction pursuant to, inter alia, the Little Tucker Act, 28 U.S.C. 1346(a)(2) and the APA, 5 U.S.C. 702.

On October 5, 2009, the United States filed this motion seeking the following: (1) a dismissal of plaintiff's first claim for lack of subject matter jurisdiction because it is moot, (2) a judgment on the pleadings on plaintiff's second claim allegation regarding administrative fees and penalties because the contract provides for such charges, (3) a dismissal of plaintiff's second claim allegation regarding private collection agency fees because plaintiff has failed to state

3

a claim for which relief may be granted, and (4) a dismissal of all claims under the APA. The United States did not address the second claim allegation regarding finance charges on DPP debt. After full briefing and hearing, the motion for judgment on the pleadings and motion to dismiss are **GRANTED**.

## ANALYSIS

Under Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings is evaluated according to virtually the same legal standard as a motion to dismiss under Rule 12(b)(6), in that the pleadings are construed in the light most favorable to the non-moving party. *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1130-31 ( N.D. Cal. 2005). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). A complaint, on its face, needs to be plausible, meaning that "the plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

Unlike with Rule 12(b)(6), when dismissing pursuant to Rule 12(b)(1), the district court is not confined to the four corners of the complaint, may consider other facts, and need not assume the truthfulness of the complaint. *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). Furthermore, the existence of disputed material facts will not preclude the trial court from

4

evaluating the merits of the claims itself. *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

### 1. CLAIM ONE — INTEREST CHARGES RELATED TO UNIFORM CLOTHING.

The United States asserts that plaintiff's first claim should be dismissed for lack of subject-matter jurisdiction because it is moot. This argument is based on the fact that plaintiff was issued a refund for the improper interest charged on the UCDPP debt. The alleged refund amount was for $150.16, more than the $135 plaintiff claims was assessed by the United States. The United States represents that this refund occurred as part of an audit wherein approximately 170,000 accounts, including plaintiff's, were adjusted and refunds for approximately 59,000 customers, including plaintiff, were issued.

In general, a case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996) (internal quotations omitted). There are, however, exceptions to the mootness doctrine. "A case otherwise moot will be heard if it presents an issue that is capable of repetition while evading review. This exception applies only in exceptional circumstances, and it provides only minimal protection to individual plaintiffs. In order to fit this exception, a controversy must meet two requirements: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 1459. Also, "[c]ourts have held that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot, unless there is no reasonable expectation that the wrong will be repeated." *Id.* at 1460.

Plaintiff argues that the United States should not be allowed to moot out a putative class claim by "picking off" the named plaintiff. This is allegedly the second time that the United States has attempted to thwart the class action process by mooting out the named plaintiff. In an earlier related case, *Briggs v. United States*, 564 F. Supp. 2d 1087, 1095 (N.D. Cal. 2008), the undersigned issued an order dismissing a similar claim as moot because the United States reversed the disputed interest charge *prior* to class certification. Plaintiff, however, contends

5

that pursuant to *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004), he should be allowed to proceed to class certification and that the motion should relate back to the time of filing.

In *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 492 (1985), (internal citations omitted) (emphasis added), in reviewing mootness in the class-action context, the Supreme Court stated that:

> where the named plaintiff does have a personal stake at the outset of the lawsuit, and where the claim may arise again with respect to that plaintiff; the litigation then may continue notwithstanding the named plaintiff's current lack of a personal stake. Since the litigant faces some likelihood of becoming involved in the same controversy in the future, vigorous advocacy can be expected to continue.
>
> When, however, there is no chance that the named plaintiff's expired claim will reoccur, mootness still can be avoided through certification of a class *prior* to expiration of the named plaintiff's personal claim.

In other words, to avoid mootness, a claim must have expired after class certification or, if it expired prior to certification, there must be a chance that the expired claim will reoccur with respect to the named plaintiff.

In this action, class certification has not occurred and there is little chance that the claim may arise again with respect to plaintiff. In *Briggs*, the undersigned held that since the plaintiff had not used his credit card since 1993 and was therefore unlikely to be subject to any interest charge on future purchases, the action was moot. The plaintiff had received his interest correction before a class-certification motion was filed and before his complaint even answered. *Briggs*, 546 F. Supp. 2d at 1985. There was no reasonable expectation that the wrong would be repeated. The class would have been headed by a representative who did not have a live stake in the litigation. Likewise, in this action, plaintiff has not used his account since 2000 and has a zero balance. Plaintiff's account was adjusted to remove the unlawful interest and plaintiff was issued a refund check on September 28, 2009, all prior to the filing of the answer. Thus, as in *Briggs*, there is no reasonable expectation that the wrong will be repeated.

Plaintiff, however, argues that *Weiss* supports a different result. In *Weiss*, prior to filing an answer and prior to plaintiff moving to certify a class, defendant made a Rule 68 offer of judgment that only provided relief to the putative class representative. *Weiss*, 385 F.3d at 339.

6

The court held that the plaintiff's claim was not moot. The appellate court cited to *Geraghty* and *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980), as providing guidance in the area because the putative class representatives in those decisions were allowed to proceed despite having their individual claims mooted. Both cases, however, involved the right to appeal a denial of class certification and both holdings are limited to that situation. *Id.* at 342; *Geraghty*, 445 U.S. at 404 (stating that the holding "is limited to the appeal of a denial of the class certification motion"); *Roper*, 445 U.S. at 340 n.12 (stating that "[d]ifficult questions arise as to what, if any, are the named plaintiffs' responsibilities to the putative class *prior* to certification; this case does not require us to reach these questions").

While recognizing this distinction, *Weiss* nonetheless, cited to *Roper* for the proposition that a defendant should not be able to pick off representative plaintiffs and thwart a class action. *Weiss*, 385 F.3d at 343–44. In *Roper*, the Supreme Court held that allowing the defendants to pick off the representative plaintiff would frustrate the objectives of class actions. *Roper*, 445 U.S. at 338–339. *Weiss* also cited to then associate Justice Rehnquist's concurring judgment in *Roper* noting a key element in *Roper* was that the tender in settlement was unaccepted. *Id.* at 349. *Weiss* contrasted such a situation with a previous Third Circuit decision, cited by the undersigned in *Briggs*, holding a claim to be moot because in that decision the plaintiffs' *voluntarily* entered into individual settlements. *Id.* at 349. In *Roper* and *Weiss*, judgment was entered by the court without the plaintiffs' consent. *Id.* at 349. Plaintiff contends that this action is similar in that plaintiff has not cashed the refund check and the United States is attempting to involuntarily pick off plaintiff.

This action, however, is distinguished from *Weiss* because in this action, the United States did not seek to pick off a single plaintiff by offering an individual settlement to plaintiff. The United States proceeded with an audit of more than 170,000 accounts and issued refunds for UCDPP interest to approximately 59,000 customers, including plaintiff. Thus, this scenario does not invoke the policy concerns of a defendant targeting one plaintiff at a time to prevent a suit and frustrate the objective of a class action. Here, the United States, if it has picked off anything, has picked off an entire lawsuit and not just an individual plaintiff. The concerns of

7

an involuntary settlement being used to thwart a class action are not present under these circumstances.

*Weiss's* invocation of *Geraghty* does not require a different result. In *Geraghty*, in addition to stating the above cited rule, the Supreme Court held that "[s]ome claims [will not be held moot because they] are so inherently transitory that the court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Geraghty*, 445 U.S. at 399. Thus, "the relation back doctrine generally has been used for inherently transitory claims." *Weiss*, 385 F.3d at 347 (internal citations omitted). In supporting its decision, however, *Weiss*, noted that even though the plaintiff's claims were not inherently transitory as a result of being time sensitive, they were "acutely susceptible to mootness in light of defendants' tactic of picking off lead plaintiffs." *Ibid.* (internal citations omitted). Plaintiff contends that his claims are also susceptible to mootness. As described above, however, picking off lead plaintiffs is not what is occurring in this action. Plaintiff in this action was issued a refund pursuant to a large audit. Thus, plaintiff's contention is not supported.

Plaintiff also argues that the case is not moot because the United States has not provided *maximum* relief to *all* class members. Plaintiff argues that the United States has not sufficiently shown that the correct amount has been repaid. Plaintiff, however, has not shown why the United States' calculations are wrong. Plaintiff only states that further factual development *may* show that the United States has incorrectly calculated damages (Opp. 9). *See St. Clair v. Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (holding that under Rule 12(b)(1) a party may attack at the jurisdictional allegations of a complaint and in such a case it then becomes necessary for the party opposing the motion present evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction).

In addition, plaintiff's contention that 59,000 refunds leaves out some class members is not sufficient to negate the policy discussion above. *Weiss* did not hold that the plaintiff could relate back his claim on those simple grounds. The holding in *Weiss* was based on the discussion above and more specifically, the concern of a single plaintiff being picked off. This action is still

8

distinguished from *Weiss* on the ground that the defendant has conducted an audit and did not pick off an individual plaintiff.

In light of the above, plaintiff's first claim is moot and therefore **DISMISSED**.

**2.     CLAIM TWO — PENALTY AND ADMINISTRATIVE CHARGE PROVISIONS.**

The United States argues for a judgment on the pleadings based on the contention that the agreement explicitly authorized it to collect penalties and fees. Plaintiff claims that pursuant to the agreement and its reference to the Debt Collection Act, 31 U.S.C. 3717, no penalties or administrative fees should have been imposed. The relevant portion of the agreement states:

> ASSESSMENT ON DELINQUENT BALANCES: Under the provisions of 31 U.S.C. 3717, we will assess on a delinquent debt, in addition to interest accruals on the outstanding balance: (1) an administrative fee to cover the cost of processing, handling, and collecting a delinquent claim: and (2) a penalty charge of 6 percent annually for failure to pay any part of this amount more than 90 days past due

(Compl. Exh. 1 ¶ 14).

Plaintiff's claim arises under the incorporated statute, 31 U.S.C. 3717. Subsection (a) of that provision requires the government to charge a minimum rate of interest on outstanding debt — which the credit-card contract did. Subsection (e) *required* the government to charge certain additional administrative fees and penalty charges on delinquent debts:

> (e) The head of an executive, judicial, or legislative agency shall assess on a claim owed by a person —
>
> (1) a charge to cover the cost of processing and handling a delinquent claim; and
>
> (2) a penalty charge of not more than 6 percent a year for failure to pay a part of a debt more than 90 days past due.

Section 3717(g) then states:

> (g) This section does not apply —
>
> (1) if a statute, regulation required by statute, loan agreement, *or contract prohibits charging interest or assessing charges or explicitly fixes the interest or charges.*

Plaintiff argues that subsection (g) divides government contracts into two types: those where the contract "prohibits charging interest or assessing charges or explicitly fixes the interest or charges" and those that are silent on interest or charges. Thus, plaintiff asserts that because the

9

1  agreement has its own interest provision thereby explicitly fixing the interest, that pursuant to

2  subsection (g), the provisions of Section 3717 are not applicable.  Plaintiff contends that the

3  contract is the only place the court should look to determine any applicable charges and that it

4  does not explicitly set out any charges but only tries to incorporate the inapplicable provisions

5  of Secton 3717.[1]

6       The United States points out, however, this very argument was rejected by the

7  undersigned in *Briggs v. United States*, 2009 WL 1176297, at *1 (N.D. Cal. Apr. 30, 2009).

8  In *Briggs*, the provision regarding delinquent debt was almost identical to the provision above.

9  The undersigned held that:

> [t]he statutory scheme is plain. If fees and penalty charges are *not*
> specified in the contract, Section 3717(e) requires the government
> to impose statutory processing fees and penalty charges. If such
> fees and penalty charges *are* specified in the contract, Section
> 3717(g) states that those statutory rates "do[] not apply" and that
> the contracted fees and charges apply instead. Here, as stated,
> specific fees and charges are set forth in the contract — which sets
> both an ordinary interest rate as well as processing fees and a
> penalty charge.

15  2009 WL 1176297, at *8.  As stated in *Briggs*, it would be counterfeit logic for the contract to

16  expressly provide for fees and penalty charges and to then nullify those charges by a reference to

17  Section 3717.  *Ibid.*

18       Plaintiff invokes *United States v. Hyundai Merchant Marine Co., Ltd.*, 172 F.3d 1187

19  (9th Cir. 1999), to argue that Section 3717 does not apply when a contract sets its own rate of

20  interest.  It is true that in *Hyundai*, the court held that "when a statutory cause of action sets its

21  own rate of interest the Debt Collection Act does not apply."  In that case, however, the

22  applicable statute did not provide for penalties or administrative costs.  By contrast, the

23  agreement, in paragraph 14, explicitly provides for fees and penalties.  As explained, it would be

24  topsy-turvy to assume the reference to Section 3717 in the contract was intended to nullify those

25  explicit provisions.

---

[1] This order notes that while the United States contends that the agreement plaintiff attached to his complaint is not the correct agreement, for the purposes of this argument, the United States has not disputed its use because the relevant terms of paragraph 14 are the same as paragraph 14 in the agreement attached to the answer (see Br. 4 n.4).

10

1    In light of the above, the United States is entitled to a judgment as a matter of law and the
2    motion for judgment on the pleadings is **GRANTED**.

### 3.    CLAIM TWO — PRIVATE COLLECTION AGENCY FEES.

The United States argues that plaintiff's claims concerning private collection agency fees should be dismissed. Plaintiff allegedly does not claim that he paid any private collection agency fee or that the United States is trying to collect such a fee, thus the United States argues that plaintiff has failed to state a claim for which relief can be granted. Plaintiff has failed to respond to the United States' contentions.

The United States contends that plaintiff has no standing to make any allegations concerning private collection agency fees. To satisfy Article III's standing requirements:

> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180–181 (2000). In his complaint, plaintiff states that the fees *were in fact deleted* because the debt was collected by administrative offset as opposed to being collected by outside collection agencies (Compl. ¶ 24). Plaintiff paid no such fees. It is not apparent how plaintiff has suffered an injury in fact. The complaint has no factual content that allows the Court to draw the reasonable inference that plaintiff has suffered any injury in fact. It fails to state claim for which relief may be granted. In addition, plaintiff has failed to respond to the United States' contentions. Plaintiff's claim is **DISMISSED**.

Furthermore, plaintiff will not be given the opportunity to amend his complaint. Any allegations of new facts providing standing would contradict plaintiff's original statements that the fees were deleted. In such a case, a plaintiff will not be given the chance to cure any deficiencies with his claim. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (holding that although leave to amend should be liberally granted, the amended complaint may

11

1  only allege other facts consistent with the challenged pleading). In light of the above, plaintiff's
2  allegations concerning outside collection agencies fees are **DISMISSED** without leave to amend.[2]

### 4. ADMINISTRATIVE PROCEDURES ACT CLAIMS.

The United States argues that there is no jurisdiction under the APA, thereby no equitable relief, because plaintiff's claims are contractually based and left to the jurisdiction of the Little Tucker Act that only provides for money damages. Plaintiff has failed to respond to the United States' contentions.

The Little Tucker Act, 28 U.S.C. 1346, provides district courts with concurrent jurisdiction with the Court of Federal Claims over "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied *contract* with the United States . . . " (emphasis added). Plaintiff's claims are well below $10,000 (*see* Compl. ¶¶ 20–24). Furthermore, the individual claims of the putative classes are limited to the $10,000 ceiling provided in the Little Tucker Act (*see* Compl. ¶¶ 34, 37) (stating that the class includes only persons whose claim does not exceed $10,000 unless such persons are willing to waive their claim above $10,000). *See also Kester v. Campbell*, 652 F.2d 13, 15 (9th Cir. 1981) (holding that the Little Tucker Act applies to class actions where the individual claim of each class member does not exceed $10,000.00). Thus, there is jurisdiction for contract claims pursuant to the Little Tucker Act.

In addition to claiming jurisdiction under the Little Tucker Act, plaintiff also claims jurisdiction under the APA. According to 5 U.S.C. 702, a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review. Waiver of sovereign immunity under the APA, however, occurs only if three conditions are met: (1) the claims are not for money damages,

---

[2] The United States also alleges that even if plaintiff had paid a collection agency fee, he failed to state a claim for relief because he does not allege which provision of the agreement the United States allegedly violated. The United States contends that it has statutory and contractual authority to use private collection agencies and assess collection agency fees. This argument need not be addressed because plaintiff has failed to allege an injury in fact. Furthermore, it should be noted that plaintiff has failed to respond to any of the United States' contentions concerning collection agency fees.

12

1  (2) an adequate remedy for the claims is not available elsewhere, and (3) the claims do not seek

2  relief expressly or impliedly forbidden by another statute. *Tuscon Airport Authority v. General*

3  *Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998).

4        Plaintiff seeks equitable relief prohibiting the United States from continuing to engage in

5  the alleged improper conduct (Compl. ¶ 9). The Tucker Act, however, "impliedly forbids

6  declaratory and injunctive relief and precludes a Section 702 waiver of sovereign immunity in

7  suits on government contracts." *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir.

8  1985). In this action, all of plaintiff's claims arise out of a dispute over terms of the agreement, a

9  contract, and the United States' actions which allegedly violate the agreement. Plaintiff's claims

10 do not exist independent of the contract and plaintiff is asking the Court to decide what its

11 contract rights are. Thus, the third prong above is not satisfied and immunity under the APA is

12 not waived since plaintiff seeks relief forbidden by the Tucker Act. *See North Side Lumber,*

13 753 F.2d at 1486 (holding that the APA did not waive immunity when plaintiff's claim that did

14 not exist independent of a contract and when plaintiff was asking the court to enforce its contract

15 rights).

16       In addition, the second prong above is not satisfied because an adequate remedy for the

17 claims is available elsewhere. As explained in *Briggs*, 564 F. Supp. 2d at 1092, damages are a

18 sufficient remedy because it is unlikely that the United States will continue with the wrongful

19 behavior if plaintiff prevails. Moreover, principles of res judicata would prevent the United

20 States from doing so. *Ibid.* To the extent that plaintiff would argue for injunctive relief on

21 behalf of the class, since no class has been certified, this order is limited to plaintiff's individual

22 claims. *Id.* at 1092–1093.

23       In light of the above, plaintiff's claims based on APA jurisdiction are **DISMISSED**.

## CONCLUSION

25       For the foregoing reasons, the motion for judgment on the pleadings and partial dismissal

26 is **GRANTED**. Plaintiff will not be given the opportunity to amend his complaint because doing

13

so would be futile. Because the second claim allegation regarding DPP debt interest calculation was not a subject of this motion, that claim still remains.

**IT IS SO ORDERED.**

Dated: November 20, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE