LAW OFFICES OF S. CHANDLER VISHER
S. Chandler Visher (California State Bar No. 52957)
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Telephone: (415) 901-0500; Facsimile: (415) 901-0504
chandler@visherlaw.com

CONSUMER LAW OFFICE OF MARIE NOEL APPEL
Marie Noel Appel (California State Bar No. 187483)
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Telephone (415) 901-0508; Facsimile: (415) 901-0504
marie@consumerlaw.ws

PUBLIC CITIZEN LITIGATION GROUP
Deepak Gupta (pro hac vice)
Brian Wolfman (pro hac vice)
1600 20th Street, NW
Washington, DC 20009
Telephone: (202) 588-7739; Facsimile: (202) 588-7795
dgupta@citizen.org; wolfmanb@law.georgetown.edu

Attorneys for Plaintiff Julius Briggs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIUS BRIGGS, on behalf of himself and  all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br>               Defendant. | **No. CV – 07 – 5760 WHA**<br><br>**NOTICE OF PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      April 15, 2010<br>Time:     8:00 A.M.<br>Location: Courtroom 9, 19th Floor |

1    **TO DEFENDANT AND ITS ATTORNEY OF RECORD:**

2       Please take notice that on the date, at the time, and in the above indicated department of

3 the above-entitled Court, Plaintiff will move the Court for entry of an **ORDER AWARDING**

4 **ATTORNEYS' FEES PURSUANT TO SETTLEMENT** in the form filed herewith.

5       This Motion shall be based on this Notice, the Points and Authorities included herewith,

6 the Declaration of S. Chandler Visher in Support, Declaration of Brian Wolfman in Support;

7 Declaration of Marie Noel Appel in Support, Declaration of Deepak Gupta in Support,

8 Declaration of Margaret Kwoka in Support the other pleadings and papers on file in this action,

9 and such other evidence that is submitted at the hearing hereof.

10 Dated: March 3, 2010       Respectfully submitted,

11

12       LAW OFFICES OF S. CHANDLER VISHER
      CONSUMER LAW OFFICE OF MARIE NOEL APPEL

13       PUBLIC CITIZEN LITIGATION GROUP

14       By:      _____ /s/ S. Chandler Visher _____

15                   S. Chandler Visher, Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...........................................................................................**I**

**TABLE OF AUTHORITIES** .................................................................................. **II**

**I.    INTRODUCTION AND STATEMENT OF FACTS** ............................... 1

A.   PROCEDURAL HISTORY ............................................................................... 1

B.   THE SETTLEMENT AGREEMENT .................................................................. 2

C.   PLAINTIFF'S FEES AND COSTS ..................................................................... 3

  1.   *Time Spent* ............................................................................................. 3

  2.   *Counsel's Hourly Rates* ........................................................................ 3

**II.    DISCUSSION** .......................................................................................... **3**

A.   THE SETTLEMENT AGREEMENT PROVIDES FOR EAJA AND COMMON FUND FEES ............... 3

B.   THE GOVERNMENT HAS AGREED TO PAY $500,000 IN EAJA FEES. .................................... 4

  1.   *The Agreed Hourly Rate is Higher than the Standard EAJA Rate.* ............................. 5

  2.   *$500,000 is A Reasonable Compromise of the Government's EAJA Fee Obligation.* ... 7

C.   THE PLAINTIFF'S ATTORNEYS ARE ENTITLED TO REASONABLE ATTORNEY

FEES FROM THE COMMON FUND ............................................................... 7

  1.   *The Total Fee Sought — 20% of Common Fund — is Evidence of Reasonableness.* ..... 8

  2.   *The Lodestar Cross-Check Demonstrates That the Requested Fee is Reasonable.* ....... 10

    a)   The Hours That Have Been Spent to Date on the Litigation Are Reasonable. ......... 10

    b)   Plaintiff's Hourly Rates Are Reasonable. ................................................. 11

    c)   The $2 Million Fee Request Represents Only a Small Multiplier on the Lodestar

    Fee. 13

**III.   CONCLUSION** ...................................................................................... **14**

# TABLE OF AUTHORITIES

**Federal Case**

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................ 10, 11

*Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154 (1990) ............... 5

*Critical Path, Inc., v. Cohn*, 2002 WL 32627559 (N.D. Cal. 2002)................................... 7, 12, 14

*Cunningham v. County of Los Angeles*, 879 F.2d 481 (9th Cir. 1988), *cert. denied*, 493 U.S. 1035
    (1990)........................................................................................ 6, 10

*Fadhl v. City and County of San Francisco*, 859 F.2d 649 (9th Cir. 1988)................................ 10

*Farrar v. Hobby*, 506 US 103 (1992) .................................................................... 10, 13

*Fischel v. Equitable Life Assur. Soc. of U.S.,* 307 F.3d 997 (9th Cir. 2002) ............................. 10

*Garnes v. Barnhart*, 2006 WL 249522 (N.D. Cal. 2006) ................................................... 12

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) ...................................................... 6

*Hopson v. Hanesbrands, Inc.*, 2009 WL 928133 (N.D. Cal. 2009)........................................... 4

*In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 (N.D. Cal. 2005)........ 12

*In Re Portal Software, Inc. Securities Litigation*, 2007 WL 4171201 (N.D. Cal. 2007).............. 12

*Johnson on behalf of Johnson*, 1994 WL 445090 (N.D. Ill. Aug. 16, 1994)................................ 7

*L.H. v. Schwarzenegger*, 2009 WL 674345 (E.D. Cal. March 6, 2009) ...................................... 12

*L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888 (E.D. Cal. 2009) ............................................ 11

*Lockhart v. United States*, 546 U.S. 142 (2005) ........................................................... 6

*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991).............................................................. 6

*Martin v. FedEx Ground Package System, Inc.*, 2008 WL 5478576 (N.D. Cal. 2008)................ 12

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) ............................................... 10

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) ....................................................... 6

*Nat'l Wildlife Federation v. FERC*, 870 F.2d 542 (9th Cir. 1989) ................................. 6

*Nobles v. MBNA Corp.*, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ................................... 9, 13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ................................ 9

*Pirus v. Bowen,* 869 F.2d 536 (9th Cir. 1989) ............................................................ 6

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)........................................................ 7, 8

*Smith v. District of Columbia*, 466 F. Supp. 2d 151 (D.D.C. 2006) .............................. 11

*Sneede by Thompson v. Coye*, 856 F. Supp. 526 (N.D. Cal. 1994) ............................... 6

*Soda Mountain Wilderness Council v. Norton*, 2006 WL 2054062 (E.D. Cal. 2006)............... 5, 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................... 4

*U.S. v. Real Property Known as 22249 Dolorosa Street, Woodland Hills,* 190 F.3d 977 (9th Cir.

  1999) .......................................................................................................................... 4

*United States v Rubin*, 97 F.3d 373 (9th Cir. 1996)..................................................... 5

*United States v. Marolf*, 277 F.3d 1156 (9th Cir. 2002) ............................................. 5

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................... 8

*Volkers v. Sullivan*, 785 F. Supp. 871 (D. Mont. 1991)............................................... 6

*Wilson v. Bowen*, 691 F. Supp. 1257 (D. Ariz. 1988) ................................................. 6

**Federal Statutes**

28 U.S.C. § 2412 .............................................................................................................. 2

31 U.S.C. § 3716 .............................................................................................................. 1

**Other State Cases**

*Lively v. Flexible Packaging Assoc.*, 930 A.2d 984 (D.C. Ct. App. 2007)................................. 11

# I.  INTRODUCTION AND STATEMENT OF FACTS

Defendant, through the Army & Air Force Exchange Service ("AAFES"), entered into credit agreements with class members allowing them to purchases military uniforms and retail items from stores operated by AAFES.  First Amended Complaint, Dkt. No. 11 ("FAC"), ¶ 1.  When repayment of debt on these accounts is delinquent, the United States has the right to offset the delinquent debt through the Treasury Offset Program (TOP) against monies it owes the debtor for benefits and tax refunds.  At the time suit was filed, the law prohibited the government from offsetting debt that was delinquent for more than ten years.  31 U.S.C. § 3716 (2004) (since amended). The parties agree on the identity of the class members and the amounts that were offset more than ten years after the class members' debts became delinquent.

In late 1993, plaintiff Briggs became indebted to AAFES for purchases for uniform and consumer goods made on his credit account in the amount of $1,857.08.  Declaration of Wendy Coker-Stowe in Support of the United States' Motion for Summary Judgment, Dkt. No. 40 ("Coker-Stowe Declaration"), ¶¶ 6 – 7, and page 1 of Exhibit B thereto.  On January 18, 2004, the 10-year period allowed for taking administrative offsets expired.  Coker-Stowe Declaration, ¶ 8, 9.

After January 18, 2004, the United States used administrative offsets to collect $2,372.95 from tax refunds due to Mr. Briggs.  Coker-Stowe Declaration, ¶ 10 and Page 2 of Exhibit B thereto.  Thereafter, this action was filed.

## A.  Procedural History

This case has been hard fought from the filing of this action in November of 2007 until September of 2009, when the defendant was scheduled to file its proposed trial exhibit showing how it would prove its affirmative defense of setoff against the class.  The government filed a motion to dismiss, a motion for partial summary judgment, and a motion for judgment on its affirmative defense of setoff against the class.  The government opposed plaintiff's motion for class certification and then, after certification was granted, unsuccessfully moved to decertify the class.  The Certified Class consists of 6,708 people with claims of $10,000 or less and seven people with claims over $10,000.  Plaintiff moved for and obtained summary judgment in favor

1   of the plaintiff class, entitling it to recover approximately $7.4 million in illegal offsets, but this

2   recovery was subject to the right of the government to prove that the amount illegally offset from

3   the tax refunds and other payments due to the class were in fact due.  Order re Cross Motions for

4   Summary Judgment, Dkt. No. 91, at 9.

5        The government concluded that it would be unable by the September 2009 deadline

6   imposed by the Court to submit a trial exhibit that would show that the debts it had collected

7   from the class were in fact due.  The parties thereafter engaged in settlement negotiations that

8   resulted in the December 23, 2009 Settlement Agreement.  Dkt. No. 139.1

9        **B. The Settlement Agreement**

10       In the Settlement Agreement, the government has agreed to repay the entire $7.4 million

11  it collected through the illegal offsets.  Thus, the class will receive in settlement 100% of what it

12  could have been awarded at trial.  In addition to the 100% payment, the government has agreed

13  not to attempt to re-collect these amounts refunded.

14       Moreover, in contrast to many so-called "claims made" settlements, class members are

15  not required to file claims to obtain settlement benefits.  Thus, the 100% payment is not some

16  theoretical and illusory maximum achievable only if every class member files a claim.  In

17  addition, the government has agreed to pay $80,000 in administrative costs to notify the class,

18  locate class members whose notices are returned, and make refund payments.  Class Counsel

19  expect to take extensive steps to locate class members whose addresses are outdated.

20       In addition to the $80,000 administration costs, the government has agreed to pay

21  $52,000 in litigation costs and up to $500,000 in attorney fees under the Equal Access to Justice

22  Act, 28 U.S.C. § 2412 (EAJA), if approved by this Court.  The parties have also agreed that

23  attorney fees of up to $2 million are reasonable based on the Ninth Circuit's 25% benchmark in

24  common fund cases and the lodestar fee to which counsel is entitled, as described in more detail

25  below.  The $2 million fee equals 20% of the common fund, which consists of $7.4 million fund

26  plus the $500,000 maximum EAJA fee.

27  ///

28  ///

### C. *Plaintiff's Fees and Costs*

#### 1. Time Spent

Class counsel have kept detailed contemporaneous time records that show that they spent 2,524.89 hours on this matter through the end of February 2010. Visher Declaration, ¶¶ 11 -12 and Exhibits F and G thereto. Plaintiff's attorneys have exercised billing judgment and excluded the time spent on the motion to dismiss Plaintiff's Second Claim, the uniform clothing interest claim, which was dismissed after defendant credited the uniform clothing interest charge to Mr. Briggs's account. Significant additional time has been and will be spent after February in securing final approval of the settlement, dealing with class member questions and preparing this fee application, estimated to be 30 hours for Mr. Visher and 25 hours for Ms. Appel, as well as additional time to be spent by PCLG attorneys. The reasonable value of the time spent plus the estimated time to be spent to conclusion of this case, using the location adjusted Updated Laffey Matrix hourly rates, is approximately $1.54 million. Visher Declaration, ¶¶ 6 - 9. The $2 million fee request is, thus, slightly less than a 1.3 multiplier of the lodestar fee.

#### 2. Counsel's Hourly Rates

Plaintiff's position is that the location adjusted Updated Laffey Matrix should be used to set the relevant market rate for counsel and paralegals in this case. Using the location adjusted rates result in the following hourly rates for most of the work on the case: S. Chandler Visher - $763; Brian Wolfman - $686; Marie Appel - $633; Deepak Gupta - $349 until June of 2009, then $505; Margaret Kwoka - $285; paralegals - $172.

## II.  DISCUSSION

### A. *The Settlement Agreement Provides for EAJA and Common Fund Fees*

The Settlement Agreement provides for attorney fees from both EAJA and the common fund. The United States has agreed to contribute $632,000 (up to a maximum of $500,000 in attorneys' fees, $80,000 in administration costs, $52,000 in case costs) of EAJA fees and costs above the amount it will pay into the common fund to be refunded to class members. The EAJA-based funds will help defray the amount of attorney fees that the class members will pay out of their personal recoveries. Ninth Circuit cases find no prohibition on recovery of fees and costs

1   from the common fund in fee-shifting cases.  *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir.

2   2003) (concluding "no preclusion on recovery of common fund fees where a fee-shifting statute

3   applies").  In fact, a class settlement may include in the value of the common fund, an estimate of

4   the hypothetical value of the fees under EAJA.  *Id.* at 972 ("[T]he parties may negotiate and

5   agree to the value of a common fund (which will ordinarily include an amount representing an

6   estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will

7   apply to the court for an award from the fund, using common fund fee principles."); *Hopson v.

8   Hanesbrands, Inc.*, 2009 WL 928133, at *8 (N.D. Cal. 2009) (quoting *Staton*).  The court then

9   awards reasonable attorney fees from the fund, the remainder of which belongs to the class.

10  *Staton*, 327 F.3d at 972.  Because the amount of reasonable fees is still ultimately determined by

11  the court, the procedure provides a safeguard against an award of excessive fees at the expense of

12  the class.  *Id.*

13          Here, the class benefits from the EAJA fee component of the settlement because

14  defendant is contributing to the common fund an agreed amount of statutory fees and costs that is

15  above and beyond the 100% refunds that comprise the common fund.  The result is that the class

16  members will have a portion of their attorneys' fees and costs paid by the defendant, reducing

17  their out-of-pocket "payment" for fees and enhancing their settlement recovery.

### B.  The Government Has Agreed to Pay $500,000 in EAJA Fees.

19          In any settlement where the defendant is paying money to the class and its attorneys, the

20  Court must consider whether class counsel seeks too much of the overall recovery for

21  themselves.  Moreover, in a case like this one that combines an EAJA fee and a common-fund

22  fee, it is important to ask whether the EAJA fee is too low because the higher the EAJA fee, the

23  more cash will go to the class.  The $500,000 fee agreed on here is well within the range of likely

24  EAJA recovery that might have been awarded in contested fee litigation. Thus, it should not be

25  disturbed by the Court.

26          EAJA requires the government to pay attorney fees in actions in which its opponent

27  prevails unless the government can show that its position on the merits was "substantially

28  justified."  *U.S. v. Real Property Known as 22249 Dolorosa Street, Woodland Hills,* 190 F.3d

---

977, 982 (9th Cir. 1999) (citing 28 U.S.C. § 2412(d)(1)(A)).  Thus, the government bears the burden of demonstrating substantial justification. In determining whether the government has met that burden,  the Ninth Circuit considers both the government's litigation position as well as the administrative act or acts that gave rise to the litigation.  *United States v. Marolf*, 277 F.3d 1156, 1161 (9th Cir. 2002).  "A reasonable litigation position does not establish substantial justification in the face of a clearly unjustified action."  *Id*. at 1164-65 (and cases cited therein); *see also Commissioner, INS v. Jean***,** 496 U.S. 154, 161 - 162 (1990).  "While the parties' postures on individual matters may be more or less justified, the EAJA-like other fee-shifting statutes-favors treating a case as an inclusive whole, rather than as atomized line-items."  *Id. at* 161 - 162; *United States v Rubin*, 97 F.3d 373, 375 (9th Cir. 1996) (citing *Jean).*  The government has not contested the issue of substantial justification" and they have the burden on this issue.

### 1.   The Agreed Hourly Rate is Higher than the Standard EAJA Rate.

When it amended EAJA in March 1996, Congress set a base attorney fee rate of $125 per hour. Courts in the Ninth Circuit increase this rate based on increases in the cost of living and special factors including practice specialization.  See, e.g., *Soda Mountain Wilderness Council v. Norton*, 2006 WL 2054062, at *4 (E.D. Cal. 2006).  The consumer price index for all urban consumers (CPI-U) in March 1996 was 155.7 and the average CPI-U for 2008 was 215.303.  Using those numbers, the CPI-adjusted rate would be $172.85 ($125 x 215.303 ÷ 155.7).  The $500,000 negotiated EAJA fee was based on approximately 2,174 hours of work done to date.  Those hours at the standard EAJA rate of $172.85 per hour would have resulted in a fee of on $376,761, more than $120,000 less than the negotiated fee.

The only way for the class to have been damaged by the negotiated $500,000 fee, then, is if EAJA would have permitted a fee greater than $500,000—that is, if a court would have awarded market rate fees.  In some cases, courts have allowed market attorney fee rates to be used in EAJA cases.  As the Ninth Circuit has explained:

> Enhanced hourly rates based on the special factor of the limited availability of qualified attorneys for the proceedings involved may be awarded under EAJA where the attorneys

possess "distinctive knowledge" and "specialized skill" that was "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Thangaraja v. Gonzales,* 428 F.3d 870, 876 (9th Cir. 2005); *Love v. Reilly,* 924 F.2d 1492, 1498 (9th Cir. 1991); *see also Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009). Thus, for example, courts in the Ninth Circuit routinely award market rates in environmental cases on the ground that litigation of those cases demand distinctive knowledge or specialized skill necessary to the litigation. *See* e.g., *Soda Mountain*, 2006 WL 2054062, at *4-5 ("knowledge and skills in the area of environmental law"); *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) ("Environmental litigation is an identifiable practice specialty that requires distinctive knowledge."); *Nat'l Wildlife Federation v. FERC*, 870 F.2d 542, 547 (9th Cir. 1989) (expertise in "complex regulatory issues involved in hydropower regulation and public land forestry").

In this case, Class Counsel has two types of "specialized skill" that were "needful to the litigation." This case, moreover, "involved more than established principles of law with which the majority of attorneys are familiar," and "qualified counsel was not available for this litigation at the statutory maximum hourly rate." *Nadarajah*, 569 F.3d at 914-15. One of the counsel, Public Citizen Litigation Group (PCLG), used its specialized expertise in several complex areas, including the law concerning restrictions on government offset of federal benefits and the unique jurisdictional issues presented in litigation seeking money from the federal government. *See,* e.g., *Lockhart v. United States*, 546 U.S. 142 (2005) (case concerning Treasury Offset Program ten-year bar in which PCLG served as lead counsel). PCLG's expertise in this regard is at least as distinctive and specialized as many others for which courts in the Ninth Circuit have granted EAJA enhancements, such as environmental law, immigration law, social security law, Medicare law, and veterans' benefits. *See, e.g., Nadarajah*, 569 F.3d at 912 (immigration law); *Volkers v. Sullivan*, 785 F. Supp. 871, 873 (D. Mont. 1991) (social security disability law); *Wilson v. Bowen*, 691 F. Supp. 1257, 1262 (D. Ariz. 1988) (same); *Sneede by Thompson v. Coye*, 856 F. Supp. 526, 535-36 (N.D. Cal. 1994) (Medicaid law); *Edwards v. Griepentrog*, 783 F. Supp. 522, 530 (D. Nev. 1991) (Medicaid, social security, and veterans' law). The other "specialized skill" that was "needful to the litigation" was the specialized knowledge and skill in class action work.

*See Pirus v. Bowen,* 869 F.2d 536 (9th Cir. 1989); *Johnson on behalf of Johnson*, 1994 WL 445090, at *4 (N.D. Ill. Aug. 16, 1994).  All three firms representing plaintiff have extensive class action experience and expertise.

**2. $500,000 is A Reasonable Compromise of the Government's EAJA Fee Obligation.**

Several months before this case was settled the United States settled another case in the Northern District titled *Martinez v. Astrue*, No. 080cv-4735 CW.  In that case, the government agreed to pay attorney fees at a rate of $230 an hour.  That case involved attorneys with recognized expertise in Social Security law, a specialty that has been recognized as one allowing higher than normal EAJA fees.  In early October, when the fee issue was being negotiated in this case, plaintiff's counsel estimated that, with additional time needed for completion of drafting of the settlement and approval of the settlement, the fee in this case using  a $230 per hour rate would be $529,000, and, therefore, he proposed that figure as a compromise EAJA fee.  The government agreed, if plaintiff was willing to reduce the fee by the time estimated to have been spent on the uniform clothing interest claim that had been dismissed.  The government was willing to accept plaintiff counsel's good faith estimate of the time on the clothing interest issue. Plaintiff's counsel accepted this proposal and prepared an estimate of the fee on the clothing interest claim, which was about $28,500.  Because this deduction, when rounded to $29,000, made the resulting EAJA fee around $500,000, plaintiff's proposed an even $500,000 as the compromise EAJA fee. The government accepted.  For the reasons stated above, the $500,000 EAJA compromise was reasonable and was, perhaps, more than would have been awarded if the government contested the issue. For that reason, and because it benefits the class members, it should be approved.

### C. THE PLAINTIFF'S ATTORNEYS ARE ENTITLED TO REASONABLE ATTORNEY FEES FROM THE COMMON FUND.

The overarching rule governing fee awards in a common-fund case is that, whether the court uses the percentage-of-the-fund or lodestar approach, "the award must be reasonable under the circumstances." *Critical Path, Inc., v. Cohn*, 2002 WL 32627559, at *8 (N.D. Cal. 2002); *see*

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) ("The district court has discretion to use the lodestar method or the percentage of the fund method in common fund cases.")).

In *Critical Path,* although the settlement created a fund of only $17.5 million in the face of the more than $200 million damages alleged, this Court nevertheless awarded attorney fees that, while only 15% of the common fund, resulted in a lodestar multiplier of 3.2 and 1.1 for the respective law firms involved.  2002 WL 32627559, at *9-10.  Counsel had taken the case on a contingency basis, "put in meaningful labor toward creating and protecting the settlement fund," and achieved a timely result for class members in the face of plausible threats that, if litigated further, could have caused the class to receive much less.  *Id;. see also, Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (finding a 3.65 multiplier appropriate under the circumstances of that case).  In *Vizcaino*, the opinion includes an appendix of cases in which a multiplier had been applied, "finding a range of 0.6-19.6, with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range."  *Id.* at 1051, n.6 (citing *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3rd Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 Newberg § 14.03 at 14-5)).

The same was true here.  The Settlement Agreement provides for an agreed reasonable fee of $2 million.  This fee is almost exactly 25% of the total fund. Including the EAJA payment, the fee represents only 20% of each class member's refund, and a lodestar multiplier of less than 1.3.  From the perspective of the overall fee recovery, the fee taken from each class member's recovery, or the magnitude of the lodestar enhancement,  the fee is within the range of a reasonable fee and, as discussed below, is fair and reasonable under the circumstances.

     **1.   The Total Fee Sought — 20% of Common Fund — is Evidence of Reasonableness.**

In common-fund cases, the Ninth Circuit has established 25% of the recovery as "a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."

1   *Powers v. Eichen*, 229 F.3d 1249, 1257 (9th Cir. 2000); *Paul, Johnson, Alston & Hunt v.*

2   *Graulty,* 886 F.2d 268, 272 (9th Cir. 1989) . Here, the fee requested from the fund—

3   approximately 20%—is below the 25% benchmark and thus provides further evidence that the

4   amount of attorney's fees requested is reasonable.

5           This Court has applied the 25% benchmark to a case similar in size to this case.  *Nobles*

6   *v. MBNA Corp.*, 2009 WL 1854965, at *5 (N.D. Cal. 2009).  In the normal common-fund case,

7   the class recovery is less than the potential recovery at trial, so that the amount of the class fund

8   is a negotiated figure.  Where the defendant agrees to pay an attorney fee in addition to the class

9   fund, the court would typically combine all the cash payments from the defendant to assess the

10  amount of the common fund for attorney fee purposes, recognizing that all of the cash amounts

11  are subject to allocation into different categories and that the defendant typically only cares what

12  the bottom line is, not how it is allocated among the various categories.  Here, the Settlement

13  Agreement provides that the government will pay $7,404,944.19 in class refunds, $80,000 in

14  settlement administration costs and $500,000 to help the class pay attorney fees, for a total of

15  $7.985 million. The benchmark 25% of the combined fund is $1.996 million, a difference of less

16  than $4,000 from the agreed fee of $2 million.  As noted, seen from this perspective, that fee is

17  reasonable under prevailing Ninth Circuit case law.

18          Here, however, where the class is receiving in settlement 100% of what it would have

19  received at trial, perhaps it is more appropriate to look at the class's net recovery after fees, or

20  what percentage of their recovery they are paying in fees, as they would never have received

21  more than 100%, no matter how much or how little the EAJA fees were.  Of the $2 million

22  requested fee, $1.5 million would be paid from the class fund of $7.4 million.  The class will

23  receive—after fees, litigation costs, and settlement administration costs—nearly 80% of the

24  amount it could have won at trial, as the requested fee only requires each class member to pay

25  20.2% of his or her recovery in fees.  Seen from this perspective—which is the perspective most

26  meaningful to the class members themselves—the fee is also reasonable, as it is considerably less

27  than the Ninth Circuit's standard 25% benchmark.

28  ///

### 2.  The Lodestar Cross-Check Demonstrates That the Requested Fee is Reasonable.

Payment of attorney fees from a common fund on a percentage basis aligns the interest of the attorney and the class because it gives the attorney an incentive to maximize the fund while minimizing the time required before the class is paid.  Payment on an hourly basis, by contrast, gives the attorney an incentive to work as many hours as possible and to obtain a recovery for the class that is only large enough so that the attorney fees are not questioned as disproportionately large as compared to the class recovery. For this reason, the percentage-of-the-fund approach has, in recent years, come to dominate the class-action fee landscape. Nonetheless, courts often look to what fees might be awarded on a lodestar basis as a cross-check to ensure that the percentage fee award is not so large in relation to the time spent as to be unfair to the class.  An analysis of the lodestar here shows that the requested fee is not disproportionately large compared to the lodestar fee.

Determination of reasonable attorney's fees under fee-shifting statutes involves a two-pronged approach.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 -34 (1983); *Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 n.1 (9th Cir. 1988).  The first step is to calculate a lodestar figure by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Blum v. Stenson*, 465 U.S. 886, 888 (1984); s*ee Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988).  Although the lodestar is presumptively reasonable, the court then assesses whether enhancement is necessary.  *Morales*, 96 F.3d at 363-64 & n.8; *Fischel v. Equitable Life Assur. Soc. of U.S.,* 307 F.3d 997, 1006, n. 7 (9th Cir. 2002).  In addition, the degree of a party's overall success in the case is relevant in determining whether a fee award is reasonable. *Hensley*, 461 U.S. at 436; *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

### a)  The Hours That Have Been Spent to Date on the Litigation Are Reasonable.

As set out in Exhibits F and G to the Visher Declaration, the time spent through the end of February 2010 by plaintiff's counsel and paralegal staff has been reasonably spent litigating the numerous difficult issues in this case, as well as ensuring that the settlement was well-

1   structured, fair and reasonable to the class.  Plaintiff's counsel has exercised billing judgment by

2   eliminating from its fee request hours attributed to the dismissed UC interest claim, as well as the

3   motion to amend the complaint to add an additional plaintiff for the same claim.  Visher

4   Declaration, ¶ 12.

### b)  Plaintiff's Hourly Rates Are Reasonable.

5          The hourly rates to be used in determining reasonable attorney fees for a prevailing party

6   should generally be based on those of the relevant legal community, which is typically where the

7   community in which the court is located.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.

8   1992).  However, where counsel from a different community are involved and possess special

9   expertise needed for the case, the local rates of those counsel apply to their work.  *Interfaith*

10  *Community Organization v. Honeywell Int'l, Inc.*, 426 F.3d  694, 705 (3rd Cir. 2005)  The

11  reasonable hourly rate should reflect not only those of the legal market rates, but also the skill

12  and experience of the prevailing party's counsel.  *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984);

13  *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 893 (E.D. Cal. 2009).

14         There are a number of methods for establishing appropriate market rates.  Often

15  declarations from attorneys familiar with the legal market are submitted to show what the market

16  is.  Here that would involve trying to show market rates in two different markets, the San

17  Francisco Bay Area and the Washington, D.C. area.  Where the court is faced with rates from a

18  market outside of the local jurisdiction, or just to avoid the subjectivity inherent in partisan

19  declarations, some courts use more objective market rate indicators.  One objective method that

20  has been used both by courts in Washington, D.C. and this District is the Laffey Matrix.  The

21  Laffey Matrix comes in two versions, one adjusted annually to account for changes in the overall

22  consumer price index and one for changes in the consumer price index for legal services. Visher

23  Declaration, ¶ 6, and Exhibits A and B thereto.  The latter is known as the Updated Laffey

24  Matrix.  The Updated Laffey Matrix is more accurate because it is "based on increases/decreases

25  in legal services rather than increase[s]/decreases in the entire CPI which includes price changes

26  for many different goods and services."  *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156

27  (D.D.C. 2006).  In applying the Laffey Matrix, the most recent rates are used, but the experience

28

---

level applied to the attorneys is the one that applied at the time the work was performed.  *Lively v. Flexible Packaging Assoc.*, 930 A.2d 984, 988, (D.C. 2007).

Chief Judge Vaughn Walker uses the Laffey Matrix[1] to establish hourly rates, but then adjusts for the difference between the cost of living in San Francisco and Washington, D.C., by applying the cost of living pay differential the federal courts use for court personnel located in different parts of the country.  *In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912, 922 (N.D. Cal. 2005).  The application of this method in 2005 required increasing the rate of San Francisco based attorneys by 9%; now this method requires an 11.25% increase. Visher Declaration, ¶ 7 - 8 and Exhibits C and D thereto; *Martin v. FedEx Ground Package Sys., Inc.*, 2008 WL 5478576, at *6 - 7 (N.D. Cal. 2008) (applying Laffey Matrix rates and upwardly adjusting using 9.6% federal locality pay differential for San Francisco); *In Re Portal Software, Inc. Securities Litigation*, 2007 WL 4171201, at *14-15 (N.D. Cal. 2007) (upwardly adjusting applicable Laffey Matrix rates based on the locality pay differentials within the federal courts); *Garnes v. Barnhart*, 2006 WL 249522, at *7 (N.D. Cal. 2006) (" it is this court's practice to adjust fees drawn from the Laffey Matrix in accordance with the locality pay differentials"); *In re HLP Technologies, Inc Sec. Litig.*, 366 F. Supp. 2d at 921–22 (relying on 2005 Laffey Matrix and finding upward location adjustment of 9% warranted for San Francisco Bay Area).

Applying this 11.25% San Francisco adjustment to the Updated Laffey Matrix for attorneys located here and the Updated Laffey Matrix for class counsel located in Washington D.C. rates results in attorney fee hourly rates ranging from $285 for the most junior attorney, Margaret Kwoka, to $763 for the most senior attorney, S. Chandler Visher.[2]  The rate for paralegal personnel using this approach is $172.  These adjusted Updated Laffey Matrix rates are

---

[1]  In *In re HPL*, Judge Walker used the Laffey Matrix rather than the Updated Laffey Matrix.  As explained above, the Updated Laffey Matrix is more accurate because it is "based on increases/decreases in legal services rather than increase[s]/decreases in the entire CPI which includes price changes for many different goods and services."  *Smith*, 466 F. Supp. 2d at 156.

[2]  These rates are not being used simply to justify the overall fee. Class counsel will use these rates to divide fees between Public Citizen Litigation Group in Washington and Mr. Visher's and Ms. Appel's firms in San Francisco. *See, Critical Path*, 2002 WL 32627559, at *8 ("[Because] certain allocations could lead to an unreasonable fee for one firm or the other.  The Court believes that the better practice, for future cases, is to disclose the exact allocation proposed between the firms.")

at least in line with, or perhaps somewhat lower than, market rates for the San Francisco Bay Area as determined in *L.H. v. Schwarzenegger*, 2009 WL 674345, at *4 (E.D. Cal. 2009), which found reasonable rates for "specialists" in "class action" work for attorneys with 25 or more years of experience of up to $900.  If the adjusted Updated Laffey Matrix rates are applied to the 2,525 hours of work through February 2010, the total lodestar fee for Class Counsel is approximately $1.5 million.  Visher Declaration, ¶11.  That figure is higher now given the continuing work needed to effectuate the settlement, and the number will grow larger as the attorneys continue to work on the settlement approval and implementation process, which will last for more than a year after Court approval.

> ### c)   *The $2 Million Fee Request Represents Only a Small Multiplier on the Lodestar Fee.*

In evaluating the reasonableness of a fee request, the Ninth Circuit considers the following factors:

> (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See, Vizcaino* [*v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)].

*Nobles*, 2009 WL 1854965, at *4.  The degree of a party's overall success in the case is also relevant in determining whether a fee award is reasonable.  *Hensley*, 461 U.S. at 436; *Farrar v. Hobby*, 506 US 103, 114 (1992).

The results achieved as well as the overall success of a Little Tucker Act case, where money is the only remedy available, is measured by the amount achieved in settlement compared to the amount that might have been awarded at trial.  Here the actual cash awarded is 100% of what could have been achieved at trial.  Overall success, then, was 100%.  In addition, plaintiff successfully secured certification of a nationwide class in the face of defendant's arguments that only a Northern District class was proper under the Little Tucker Act.  Thus, the relief obtained under the settlement provides relief to thousands more class members than if the class had been limited to the Northern District.

In sum, the risk of litigation was that the class would not have obtained the benefits conferred by the settlement, which include not only the 100% refund, but also the government's

agreement not to re-collect amounts refunded.

Here, the attorneys are skilled and experienced at class action litigation and PCLG, in particular, has exceptional experience involving the law concerning restrictions on government offset of federal benefits and the unique jurisdictional issues presented in cases such as this one, including whether a nationwide class could be certified in a district-court Little Tucker Act case. See, Declarations of S. Chandler Visher, Brian Wolfman, Marie Noel Appel, Deepak Gupta and Margaret Kwoka filed in conjunction with this Motion.

Plaintiff's attorneys took this case on a contingent basis, bearing the risk of litigating the many complex issues involved but potentially receiving no compensation for their time or for the costs incurred.  That this case may be undesirable for many attorneys due to the contingent nature and complex issues is demonstrated by the fact that plaintiff is aware of no other similar cases.

Based on the above factors and in particular the extremely favorable settlement, the requested fee award is "reasonable under the circumstances." *Critical Path, Inc., 20*02 WL 32627559, at *8.  The lodestar cross-check shows that the $2 million in fees requested result in a multiplier of approximately 1.3.  Unless the 25% benchmark is to be abolished or a modest fee enhancement is never to be allowed, the requested fee of $2 million is reasonable.

### III. CONCLUSION

For all of the above reasons, plaintiff requests that the Court approve the $500,000 EAJA fee payment to the class fund and the $2 million overall attorney fee payment from the class fund as provided in the Settlement Agreement.

Dated: March 3, 2010                    Respectfully submitted,

LAW OFFICES OF S. CHANDLER VISHER
CONSUMER LAW OFFICE OF MARIE NOEL APPEL
PUBLIC CITIZEN LITIGATION GROUP

By:    _____/s/ S. Chandler Visher_____
       S. Chandler Visher, Attorneys for Plaintiff