**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS BRIGGS, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant.<br>_____/ | No. C 07-05760 WHA<br><br>**CLASS ACTION**<br><br>**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, ATTORNEY'S FEES AND COSTS, AND PAYMENT TO CLASS REPRESENTATIVE** |

**INTRODUCTION**

In this certified class action involving government-issued credit cards and unlawful debt-collection practices, plaintiff Julius Briggs moves, on behalf of himself and all others similarly situated, for final approval of the settlement agreement reached between the parties. Additionally, class counsel move for an award of attorney's fees in the amount of two million dollars. For the reasons explained below, this order finds that the settlement is fair, reasonable, adequate, and in the best interests of the class, and therefore final approval of the class settlement is **GRANTED**. Class counsel are awarded reasonable attorney's fees in the amount of $1,120,000 and costs in the amount of $52,000. Class representative Briggs is entitled to $3,300 for representing the interests of absent class members.

**STATEMENT**

The facts of this case have been set forth in numerous prior orders, and will only be summarized in brief below (*see* Dkt. Nos. 47, 61, 91). The Army and Air Force Exchange Service ("AAFES") issues credit cards to military personnel to purchase uniforms and other merchandise from post-exchange stores on our military bases. Class representative Julius Briggs is a U.S. Army veteran, and began using an AAFES credit card in 1993. Within one month, Briggs had incurred charges totaling $1,857.08. He made no further charges on the credit card, but he failed to repay his debt.

In this lawsuit, plaintiff Briggs and members of the certified class challenged a government debt-collection practice whereby the government withheld tax refunds and other benefits for class members and used those withholdings to offset delinquent AAFES credit card debt. *See* 31 U.S.C. 3716, 3720A (authorizing such withholding and offsetting). This was done through a centralized government debt collection effort called the Treasury Offset Program, or "TOP." The problem, however, was that this was done to class members after a statutory ten-year limitations period for such administrative offsets had expired. *See* 31 U.S.C. 3716(e) (2004) (since amended).

This action was filed in November 2007. In the class action complaint, two claims were originally asserted, the first targeting the practice by TOP outlined above, and the second involving alleged interest overcharges (which is the subject of a separate but related action). In February 2008, the United States answered and asserted a counterclaim to recover the balance remaining on plaintiff Briggs' AAFES debt. The government then filed a motion for judgment on the pleadings or for partial dismissal. An April 2008 order dismissed the second claim as moot, concluded that subject-matter jurisdiction arose from the Little Tucker Act rather than the Administrative Procedure Act, and dismissed the claims against AAFES as a distinct party, leaving only the TOP claim against the United States (Dkt. No. 34).

In August 2008, the United States moved for summary judgment both on plaintiff's remaining TOP claim and on its own counterclaim to recover the amount due on plaintiff's debt (Dkt. No. 47). An October 2008 order denied both motions, finding that (1) the government's

2

1  litigation setoff rights — its right to offset any recovery plaintiff may achieve in this action
2  against the balance remaining on plaintiff's debt to the government — was not a proper ground to
3  dispose of the entire action before reaching the merits of plaintiff's claim, and (2) defendant's
4  counterclaim to recover the full balance due on plaintiff's debt did not arise from the same
5  "transaction or occurrence" as plaintiff's illegal collection claim and therefore, under 28 U.S.C.
6  2415(f), it may be asserted "only by way of offset . . . in an amount not to exceed the amount of
7  the opposing party's recovery" (*ibid.*).

8  In December 2008, counsel moved for class certification. A January 2009 order granted
9  the motion and certified the following class (Dkt. No. 61 at 3–4, 15):

> All natural persons (1) who have been subjected to TOP collection
> of an AAFES type E1 or E2 debt claim, after November 13, 2001;
> (2) from whom a portion of that TOP collection was for debt that
> became delinquent more than ten years before the offset and (3)
> whose amount of net offset payments was less than $10,000, or
> who are willing to waive their claim with respect to offsets that
> would bring their refund claim above $10,000.

14  The order also concluded that the Little Tucker Act permitted this nationwide class action
15  to be brought in this judicial district so long as the claims of individual class members were
16  capped at $10,000.

17  In January 2009, both sides filed motions for summary judgment. An April 2009 order
18  granted in part plaintiffs' motion, entitling the class to recover approximately 7.4 million dollars
19  in illegal offsets (Dkt. No. 91). The order, however, also granted in part the government's
20  motion, finding that the United States *did* have litigation setoff rights. Thus, while the class was
21  entitled to recover as much as 7.4 million dollars in refunds, the April 2009 order left the door
22  open for the government to prove at trial a litigation setoff amount to reduce the total class
23  recovery. This was an important opportunity that will be reiterated later in this order.

24  Following an unsuccessful last-minute effort by the government to decertify the class as to
25  damages calculations, the parties entered into a settlement agreement and class counsel — on the
26  eve of trial — filed for preliminary approval of the settlement on December 24, 2009 (Dkt. No.
27  139). On February 1, 2010, preliminary approval of the settlement agreement, class notice, and
28  dissemination plan were granted (Dkt. Nos. 148, 149). The settlement notice also included "opt-

3

in" waiver forms for the seven class members whose claims exceeded $10,000 in value (*see* Dkt. No. 61). By opting in, these individuals would waive their right to any recovery over $10,000.

After notice of the settlement, the right to opt out (or opt in, if applicable), the right to object, and the right to be present at the final approval hearing was provided to class members, a final hearing on the class settlement — as required under the Federal Rules of Civil Procedure — was held on April 29, 2010.

## ANALYSIS

Three issues are addressed in this order. *First*, this order will explain why the pending settlement agreement is, as the order granting preliminary approval of the settlement noted, "a good one for the class," and is fair, reasonable, and adequate under FRCP 23(e) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (setting forth the factors to be considered when evaluating class action settlements) (Dkt. No. 148). *Second*, this order will explain why the attorney's fees and costs awarded herein are reasonable. *Third,* this order will explain why class representative Briggs should receive an appropriate payment for representing the interests of absent class members.

**1.    THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

Under FRCP 23(e), court approval is required for any settlement agreement that will bind absent class members. When a proposed settlement agreement is presented, the court must perform two tasks: (1) direct notice in a reasonable manner to all class members who would be bound by the proposal, and (2) approve the settlement only after a hearing and on finding that the terms of the agreement are fair, reasonable, and adequate. FRCP 23(e)(1)–(2). Additionally, for classes certified under Rule 23(b)(3) (as is the case here), the court may order that class members be afforded a new opportunity to request exclusion from the class. FRCP 23(e)(4).

With respect to class notice and a second opt-out opportunity, the form of notice for the class settlement has already been scrutinized and approved by the undersigned (Dkt. No. 149). Pursuant to the plan set forth in the order granting preliminary approval, class members were individually informed, by first-class mail,of their right to opt-out of the settlement, so long as they exercised this right by March 31, 2010 (*ibid.*). The seven class members with claims

4

1  exceeding $10,000 were provided *opt-in* waiver forms.  All seven of these class members signed
2  and returned the waiver form to class counsel, thereby "opting-in" to the settlement (Dkt. No.
3  160, Exh. A).  No timely requests for exclusion were made, and no objections to the terms of the
4  settlement or the amount of requested attorney's fees were received by class counsel (*see* Dkt.
5  No. 160 at 2; Dkt. No. 163).[1]

   In light of the above, this order finds that the individualized notice sent by first-class mail to class members met the procedural requirements of FRCP 23(c)(2)(B) (for the notice of class certification) and FRCP 23(e)(1) (for the notice of the settlement) as well as the requirements of due process.  Indeed, the fact that certain class members were required to take affirmative steps to "opt-in", and *all* of these class members did so, supports this finding.  As such, all that remains is determining whether the terms of the settlement agreement are fair, reasonable, and adequate.

   The instant settlement — taking into account the reasonable attorney's fees, costs, and class-representative payment authorized herein — easily meets these requirements.  The Ninth Circuit in *Hanlon* set forth various factors that a court must "explore[] comprehensively" and balance when making this determination:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.  These factors, however, are not exclusive, and a court must consider whether the settlement "taken as a whole" is fair to absent class members.  *Ibid.*

   On balance, these factors support final approval of the proposed settlement.  *First*, plaintiffs prevailed on the merits at summary judgment, proving the government's liability for approximately 7.4 million dollars in illegal offsets.  Given this result, strength of plaintiffs' case is confirmed, at least as to liability.  *Second*, *the government has offered to pay the full 7.4 million*

---

[1] One class member, Mr. Charles Davidson, made an untimely request to opt out of the class.  This request was made in an administrative motion, and was addressed in a separate order (Dkt. No. 177).  Additionally, one letter was received from a class member asking that the government pay *all* attorney's fees and costs.  It did not, however, ask that final approval of the settlement be denied.

5

*dollars in illegal offsets, or 100% of the calculated class damages.*[2]  *Third,* the government has agreed to pay — *in addition to* the 7.4 million dollars — $80,000 in notice and related class administration costs, $52,000 towards litigation costs of class counsel, and up to $500,000 in attorney's fees under the Equal Access to Justice Act, 28 U.S.C. 2412.  In other words, the government has offered to pay above and beyond the total amount of illegal offsets; as much as $632,000 in fees and costs that might otherwise have been deducted from the settlement checks of class members will be covered by the United States under the settlement.  *Fourth*, the settlement agreement does not require class members to file claims and contains robust procedures for locating class members to increase the likelihood that they will receive their settlement checks (Br. 6–8).  *Fifth*, there have been no objections to the proposed settlement received by class counsel (with the exception of one letter that asked for the government to pay for *all* fees and costs).  *Sixth*, the release is both narrowly tailored and fairly counterbalanced by a reciprocal waiver by the government (Dkt. No. 139, Exh. 1 at 7).[3]  In its reciprocal waiver, the United States waives any right to recollect the amounts that will be refunded to class members.  *Seventh*, the distribution plan prioritizes the distribution of settlement checks to class members, and provides a lengthy period within which class members may redeem them.  By any measure, this is a good settlement for the class.

The only remaining issues are whether the amount of attorney's fees and costs to be awarded to class counsel, which will be taken out of the common fund for the class, is fair and reasonable, and whether plaintiff Briggs is entitled to a reasonable payment for representing class

---

[2] The exact amount being refunded to class members under the settlement is $7,404,944.19.  At the final approval hearing, counsel noted that this amount is actually $1,533.86 less than a 100% refund, due to an error by the government in totaling the illegal offsets for the class (*see* Dkt. No. 178 ¶ 8).  This order is confident, however, that there will be a sufficient residue in the class fund to cover this $1,533.86 shortfall (due to the high probability that not all class members will be located), and that distributions to class members should be based upon a 100% refund.  If the stars align and a $1,533.86 shortfall *does* arise, the government represented at the hearing that it would cover the difference.

[3] The release in the settlement agreement states: "As of the Effective Date, Plaintiff and each member of the Class shall be deemed to have jointly and severally released and discharged UNITED STATES, from any and all actions, causes of action, suits, obligations, costs, expenses, attorney's fees, damages, losses, claims, rights, liabilities, and demands, of whatever character, to the date hereof, arising out of, relating to, or in connection with the Action ('Released Claims')" (Dkt. No. 139, Exh. 1 at 7).

1  members.  As explained in detail below, this order has ensured that these awards meet the Ninth
2  Circuit's requirements under *Hanlon*.

3  Having considered the full scope of the settlement agreement, this order finds that the
4  terms of the settlement, the award of attorney's fees and costs, a reasonable payment to the class
5  representative, the distribution plan, and the notice provided to class members of their rights
6  under the settlement are "fair, reasonable, and adequate" under FRCP 23(e).  Based upon this
7  finding, the motion for final approval of the settlement is **GRANTED**.

**2.    COUNSEL ARE ENTITLED TO REASONABLE ATTORNEY'S FEES AND COSTS.**

9  As part of the analysis under *Hanlon*, a court must ensure that attorney's fees and costs
10 awarded to class counsel are "fair, reasonable, and adequate." *See Staton v. Boeing Co.*, 327 F.3d
11 938, 963–64 (9th Cir. 2003) (citing *Hanlon*).  Under this analysis, the first question a court must
12 ask is whether the settlement agreement is contingent upon the Court awarding the full amount of
13 counsel's requested attorney's fees and costs.  *Ibid.*  This is not the case here.  The settlement
14 agreement makes clear that the agreement merely *authorizes* counsel's requested attorney's fees;
15 it specifically notes that the actual amount awarded is subject to court approval (Dkt. No. 139,
16 Exh. 1 at 3).

17 The second question a court must ask is whether the fees are a product of a fee-shifting
18 statute or are grounded in principles applicable to common funds.  *Id.* at 965–67.  The former is
19 an *exception* to the "American Rule" (*i.e.*, that each party pays for its own litigation expenses),
20 where the *losing* party must pay attorney's fees to the prevailing party pursuant to a fee-shifting
21 statute.  The latter is an equitable rule — consistent with the "American Rule" — that "a litigant
22 or a lawyer who recovers a common fund for the benefit of persons other than himself or his
23 client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van*
24 *Gemert*, 444 U.S. 472, 478 (1980).  Here, counsel's requested fees present the unusual situation
25 of being derived from (or, perhaps more accurately, justified under) both a fee-shifting statute *and*
26 common-fund principles.

27 The details are as follows:  Class counsel request two million dollars in attorney's fees and
28 $52,000 in litigation costs.  Of the two million dollars, $500,000 can be attributed to the

7

government's offer of EAJA attorney's fees. The remaining 1.5 million dollars, however, would come from the approximately 7.4 million dollars belonging to the veterans. As to litigation costs, counsel seek $52,000, which the government has offered to contribute under the EAJA (in other words, the costs requested would *not* come out of the 7.4 million dollars).

Given this backdrop, with respect to the requested fees, three important issues must be addressed: (1) whether it is proper for attorney's fees to be awarded under *both* a fee-shifting statute (here, the EAJA) and common-fund principles, (2) whether the $500,000 EAJA award negotiated between counsel and the government is "fair, reasonable, and adequate," and (3) if permissible, whether additional attorney's fees awarded under common-fund principles are "fair, reasonable, and adequate."

### A. Attorney's Fees May be Awarded Under Common-Fund Principles When Statutory Fees are Available.

When a class action settlement is reached, the parties may simultaneously negotiate merits relief and an award of attorney's fees under a fee-shifting statute (if such a statute is applicable), and condition the entire settlement upon the prevailing party's waiver of seeking attorney's fees under the statute. *See Evans v. Jeff D.*, 475 U.S. 717, 720 (1986). In such situations, the parties may present a court with separate settlement amounts for the merits relief and attorney's fees, or may simply present one "lump sum" settlement amount that subsumes the negotiated attorney's fees. If the latter situation presents itself, a court generally has the power to award attorney's fees using common-fund principles. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-59 (1975) (holding that unless Congress has expressly forbidden the application of common-fund principles where counsel could potentially recover fees under a fee-shifting statute, courts retain their equitable power to award common-fund attorney's fees). This is because in settlement negotiations, the defendant's determination of the amount it will pay into a common fund will necessarily be informed by the magnitude of its potential liability for fees under an applicable fee-shifting statute. *Staten*, 327 F.3d at 968–69.

In a proposed class action settlement where a fee-shifting statute applies, counsel usually present only one of the above grounds for attorney's fees. In other words, either attorney's fees under the fee-shifting statute are negotiated and presented separately from the merits award, or

8

the fees are subsumed within a single "lump sum" settlement offer. This is because these two approaches are generally seen as *alternative* means of awarding reasonable and appropriate attorney's fees to class counsel. Indeed, as explained by the Ninth Circuit:

> [I]n a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, as permitted by *Evans*. In the course of judicial review, the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles. *Alternatively*, the parties may negotiate and agree to the value of a common fund (*which will ordinarily include an amount representing an estimated hypothetical award of statutory fees*) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles.

*Staton*, 327 F.3d at 972 (emphasis added).

The settlement agreement in the instant case presents the situation where attorney's fees under the EAJA have been negotiated separately from the merits relief (in the amount of $500,000), but counsel nevertheless seek *additional* attorney's fees under common-fund principles. While it is true that "parties have flexibility in negotiating class action settlement agreements, including the attorneys' fee provisions," the Ninth Circuit has cautioned that "[a]ny variants, to be reasonable, would have to provide equivalent assurance that the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees are being adequately policed by the court." *Ibid.*

With these concerns in mind, this order will now address whether the government's EAJA settlement offer is fair, reasonable, and adequate, and — following that determination — whether counsel are entitled to additional fees from the class fund.

**B.    The EAJA Award is Fair and Reasonable.**

The reasonableness of counsel's requested attorney's fees — including the government's offer to pay $500,000 in fees under the EAJA — must be viewed with an eye towards how this litigation has unfolded. Following the parties' cross-motions for summary judgment, the only issue that remained for trial was whether and to what extent the government could prove litigation

9

1  offsets to reduce its 7.4 million dollar liability.[4]  Had the government chosen to proceed to trial on
2  this issue rather than settle the case, it is entirely possible that the class award would have been
3  reduced substantially.  Instead, the government decided to settle the matter.

4      This procedural backdrop explains why the government, when negotiating the settlement,
5  offered to pay 100% of the 7.4 million dollars in class-wide damages into the class fund *plus*
6  statutory attorney's fees and costs under the EAJA.  Given that plaintiffs had already prevailed at
7  summary judgment in proving the government's liability for the illegal offsets, they would likely
8  have been entitled to fees under the EAJA.  *See* 28 U.S.C. 2412.

9      Under a fee-shifting statute like the EAJA, the court must evaluate reasonableness by
10  reference to the 'lodestar' method, which involves "multiplying the number of hours the
11  prevailing party reasonably expended on the litigation by a reasonabl[e] hourly rate[.]"  *Staton*,
12  327 F.3d at 965 (citations omitted).  Some fee-shifting statutes — especially those like the EAJA
13  where the government must foot the bill — place a cap on the hourly rates used to determine the
14  lodestar.  Under the EAJA, "attorney or agent fees shall not be awarded in excess of $125 per
15  hour unless the agency determines by regulation that an increase in the cost-of-living or a special
16  factor, such as the limited availability of qualified attorneys or agents for the proceedings
17  involved, justifies a higher fee."  *See* 28 U.S.C. 2412(d)(2)(A)(ii).

18      Based upon the detailed time and billing records provided by class counsel (submitted
19  with their motion for attorney's fees in accordance with the instructions set forth in a prior order),
20  the number of hours expended by the prevailing party was 2,524.89 hours (Visher Decl. Exhs. F,
21  G).  Due to the exercise of "billing judgment" by class counsel, this total does not include time
22  attributable to the claim for improper interest that was dismissed early in this litigation, or time
23  spent by class counsel on their motion for intervention by a new plaintiff (pertaining to the
24  dismissed claim) and their administrative motion on related cases (Visher Decl. ¶ 12).  After a
25  review of these records, this order finds that counsel's exercise of billing judgment was both
26  reasonable and proper.

---

[4] As explained earlier, plaintiffs prevailed at summary judgment in proving that the government was liable for 7.4 million dollars on the remaining TOP claim. The government, however, also prevailed in showing their entitlement to proving litigation offsets at trial.

10

1    Using the $125 per hour rate set forth in the EAJA and the hours reported by counsel, this
2 amounts to approximately $315,625 in statutory attorney's fees. Adjusted for cost-of-living
3 increases, which is proper under Ninth Circuit caselaw, the statutory rate becomes approximately
4 $173 per hour, and the total statutory attorney's fees rises to approximately $435,834. *See, e.g.*,
5 *United States v. Real Property Known as 22249 Dolorosa Street*, 190 F.3d 977, 984 (9th Cir.
6 1999) (using the regional CPI-U to calculate the cost-of-living adjustment).[5]

7    This, however, does not end the EAJA inquiry. Under certain circumstances, the Ninth
8 Circuit has also authorized enhanced EAJA rates (above and beyond inflation-adjusted rates)
9 where there was a "limited availability of qualified attorneys for the proceedings involved" and
10 the attorneys possessed "distinctive knowledge" and "specialized skill" that was "needful to the
11 litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah v. Holder*,
12 569 F.3d 906, 912 (9th Cir. 2009) (citations omitted). Under this rule, EAJA enhancements have
13 been awarded in disputes involving environmental law, immigration law, and social security law
14 (*see* Br. 6) (listing cases). As an example, in *Nadarajah,* which involved immigration law, the
15 Ninth Circuit awarded a $500 hourly rate for the most experienced attorney representing the
16 prevailing party, and rates between $300 to $335 per hour for supporting attorneys. The Ninth
17 Circuit justified this rate due to the fact that few immigration lawyers carry the expertise in
18 constitutional immigration detention issues that the case required. *Id.* at 912–15.

19    Given the subject matter of the instant case, there is little basis to conclude that such
20 enhanced awards would be justified. While class counsel tout their experience in class action
21 litigation, this is not a rare skill in the legal profession to warrant market-rate attorney's fees
22 under the EAJA. Additionally, the nature of the claim in this litigation is not one that has
23 traditionally garnered enhanced statutory attorney's fees — a fact that Attorney Visher himself
24 admits (*see* Visher Decl. ¶ 9 ("I am not aware of any EAJA case that has specifically allowed
25 market rates for the kind of expertise Class Counsel possess[.]")).

---

[5] In this order, the cost-of-living increase was calculated using the national consumer price index for all urban consumers (CPI-U) in March 1996 (when the $125 hourly rate was established) and the average CPI-U in 2008 and 2009 (when the bulk of the work in this action transpired). While regional CPI-U figures could have been used, the differences between the national and regional figures were not material to these calculations.

11

1    Based upon these findings, this order will not assume that enhanced rates would have been
2    warranted had plaintiffs moved for such rates in an EAJA application. With that in mind, the
3    settlement agreement provides for negotiated EAJA attorney's fees of $500,000. Based upon the
4    reported 2,524.89 hours of work performed by class counsel, this amounts to an average hourly
5    rate of approximately $198/hour, which is about $25 per hour above the statutory hourly rate
6    (after cost-of-living adjustments). Given that class counsel would likely have *not* received an
7    enhanced award under *Nadarajah*, this order finds that the $500,000 negotiated fee award under
8    the EAJA is a fair and reasonable award. Indeed, it is more than what would be authorized using
9    an inflation-adjusted statutory rate, and falls within the range of attorney's fees that would likely
10   have been awarded had the Court been tasked with such a determination.

**C.     An Award Measured by the Lodestar is Reasonable and Fair to the Class.**

12   Given that reasonable EAJA attorney's fees have been awarded to class counsel, the next
13   question is whether *additional* attorney's fees can and should be awarded from the 7.4 million
14   dollars offered to class members. This is an important inquiry, since any additional attorney's
15   fees would reduce settlement payments to the veterans who comprise the certified class.

16   In *Staton v. Boeing*, the Ninth Circuit observed that "[t]he fees available under a
17   fee-shifting statute are part of the plaintiff's recovery and are not dependent upon any explicit fee
18   arrangements between the plaintiffs and their counsel. For that reason, contingent fee agreements
19   between counsel and client are valid in cases where statutory fees are available." *Staton*, 327
20   F.3d at 968 (citing *Venegas v. Mitchell*, 495 U.S. 82, 86-89 (1990)). As such, the court reasoned
21   that "[c]ommon fund fees are essentially an equitable substitute for private fee agreements where
22   a class benefits from an attorney's work, so the same general principles outlined in *Venegas*
23   should apply." *Ibid.* In other words, there seems to be no bar to awarding fees both under the
24   EAJA and from the common fund.

25   The final question, therefore, is whether and to what extent attorney's fees should be
26   awarded from the remaining 7.4 million dollar fund. Courts in the Ninth Circuit may use two
27   different approaches to gauge the reasonableness of a requested fee award under the traditional
28   common-fund approach. The first is the aforementioned "lodestar" calculation, which — in the

12

common-fund context — may include a "risk multiplier" to enhance the fees under certain circumstances. The Ninth Circuit, however, also allows a calculation based upon a percentage of the common fund. *See id.* at 967–68. The benchmark percentage is supposedly 25 percent. *Hanlon*, 150 F.3d at 1029.

"[T]he choice between lodestar and percentage calculation depends on the circumstances, but . . . 'either method may . . . have its place in determining what would be reasonable compensation for creating a common fund.'" *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Indeed, the Ninth Circuit has made clear that "[t]he benchmark percentage should be adjusted, *or replaced by a lodestar calculation*, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Here, class counsel argue that the percentage-of-the-fund approach justifies their two million dollar attorney's fees request (based upon a class fund of 7.4 million dollars plus the government's EAJA contributions). As explained below, however, the two million dollar request exceeds reasonable fees justifiable under the lodestar.

Having considered the unique attributes of this litigation, this order finds that reasonable attorney's fees should be measured by an appropriate lodestar calculation and should *not* utilize a percentage-of-the-fund approach. This finding is grounded in the following points and observations. *First*, due to the existence of the EAJA, counsel's risk of non-payment of attorney's fees was significantly reduced as compared to common-fund cases where no fee-shifting statute applies. To be sure, even with a fee-shifting statute like the EAJA, counsel are at risk of recovering nothing if they do not prevail (assuming they were working on a contingency basis, as they were here). That said, when a fee-shifting statute like the EAJA is available, this presents an independent source of potential attorney's fees for counsel should they obtain a favorable result. This is significant. Without a fee-shifting statute, counsel would be limited *solely* to a percentage of the plaintiffs' recovery, which could have been much less than the lodestar. Yet under the EAJA, even if counsel recovered one dollar for the class, they would still be entitled to seek reasonable attorney's fees and costs from the government. *Citizens for Better*

13

1  *Forestry v. U.S. Forest Serv.*, 567 F.3d 1128, 1131 (9th Cir. 2009) (a prevailing party entitled to
2  fees under the EAJA is "a party in whose favor a judgment is rendered, *regardless of the amount*
3  *of damages awarded*.") (emphasis added).  The risk of a pyrrhic victory — at least, from
4  counsel's perspective — is greatly tempered in such situations.

5      *Second*, while it is true that counsel obtained a good result for the class, this cannot be
6  attributed solely to the performance of counsel.  As explained above, it was the *government* who
7  decided to forego the presentation of the "litigation offset" affirmative defense at trial.  Had it not
8  chosen to do so, the recovery for the class might have been substantially reduced from the 7.4
9  million dollars offered at settlement (thereby reducing the basis for counsel's percentage-of-the-
10 fund fee request).  As alluded to at the recent April 14 hearing in the related action of *Russell v.*
11 *United States of America* (CV 09-03239 WHA), during which the pending settlement in the
12 instant action was discussed, this decision by the government was grounded in practical
13 considerations.  Stated differently, it was not counsel's superior performance at trial that
14 preserved the full 7.4 million dollar merits recovery.  Rather, it was the government who
15 voluntarily withdrew it's affirmative defense prior to trial, leaving class members with 100% of
16 their requested damages.  Given these facts, it would be unfair to the class to allow counsel to
17 profit from the *government's* decision to offer class members generous refunds above and beyond
18 the amounts to which they might have otherwise been entitled.

19     *Third,* this order notes that during the course of the litigation, counsel sometimes
20 presented unhelpful arguments on difficult legal issues.  Counsel's arguments with respect to
21 nationwide jurisdiction and the Little Tucker Act are but one example (*see, e.g.*, Dkt. No. 61).  On
22 this and other complex questions, counsel failed to present narrower ways to reach their intended
23 result.  Eventually, the Court cut through the fog and made a clear ruling that happened to favor
24 plaintiffs.  In sum, while counsel did a better-than-average job in prosecuting this action on behalf
25 of the certified class, the path to this result was not always illuminated by counsel's arguments.

26     For these reasons, this order will award attorney's fees based upon a reasonable lodestar
27 calculation.  As noted above, 2,524.89 hours were expended by class counsel on this litigation
28 (Visher Decl. ¶ 12, Exhs. F, G).  This total reflects the exercise of "billing judgment" by class

14

counsel (*id.* at ¶ 12). As stated, based upon a review of over 100 pages of spreadsheets documenting the individual tasks performed by counsel, this order finds that the hours reported are well-documented and reasonably justified. No reductions in the reported hours are necessary.

A more difficult question, however, is presented with respect to "reasonable hourly rates." *See Staton*, 327 F.3d at 965. Under Ninth Circuit caselaw, these rates are determined according to the prevailing market rates in the relevant legal community, based upon "similar work performed by attorneys of comparable skill, experience, and reputation." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *Barjon v. Dalton,* 132 F.3d 496, 502 (9th Cir.1997). The general rule is that the rates of attorneys practicing in the forum district are used. *Barjon*, 132 F.3d at 500. "[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Ibid.*

Here, class counsel have provided various resources to "assist" the Court in gauging what is a "reasonable" hourly rate for the attorneys who worked on this matter, including: (1) the Laffey Matrix, which is the primary guide used in Baltimore and Washington, D.C. to determine market rates for attorneys (and is used, in modified form, by certain judges in the Northern District of California), (2) the supposed actual hourly rates of counsel between 2007 and 2009, and (3) sources from other lawsuits and law-related publications in the San Francisco area (Suppl. Visher Decl. ¶¶ 3–9).

These resources advocate a wide range of hourly billing rates. For example, under the Updated Laffey Matrix (which is "updated" because it has been adjusted for cost-of-living differences between San Francisco and Washington, D.C.), Attorney Visher — who graduated law school in 1970 — would be entitled to an hourly rate of $763 per hour. By contrast, his supposed *actual* billing rates from 2007, 2008, and 2009 were $520 per hour, $590 per hour, and $620 per hour. Curiously, Attorney Kathryn Anderson, who graduated from law school thirteen years *after* Attorney Visher, would *also* bill at $763 per hour under the Updated Laffey Matrix. This contrasts greatly with her *actual* billing rates from 2008 and 2009 (respectively, $450 per hour and $475 per hour). This discrepancy repeats itself with Attorney Marie Noel Appel, who

15

graduated law school in 1996. Under the Updated Laffey Matrix, Attorney Appel would be entitled to the rate of $633 per hour. This is in stark contrast to her actual billing rates in 2007, 2008, and 2009 of $275 per hour, $375 per hour, and $395 per hour. All these figures are transparently set forth by Attorney Visher in his supplemental declaration (*id.* at ¶ 10). With respect to all other attorneys and paralegals who worked on this action, the differences between the rates set forth in the Updated Laffey Matrix and the *actual* rates associated with these individuals were similarly disparate.

Having considered the full range of these proposed hourly rates, this order will *not* rely upon the rates set forth in the Updated Laffey Matrix as counsel suggest. As illustrated above, these rates are consistently *much* higher than the actual rates charged by the attorneys and staff who worked on this matter. Additionally, the Laffey Matrix does not adequately distinguish between attorneys with different qualifications. Indeed, under the Updated Laffey Matrix, Attorney Visher and Attorney Anderson would be entitled to the same *extraordinarily high* hourly rate, despite Attorney Visher having over *thirteen years* more legal experience. To adopt such inflated (and seemingly arbitrary) rates would be neither fair nor reasonable to the class.

Instead, this order will use the *actual* billing rates purportedly used by counsel and supporting paralegals, since it is a fair assumption that counsel set their rates based upon a reasonable evaluation of the market rates of comparably experienced attorneys and staff members in this district. Additionally, since this action was filed in late 2007 and extended into early 2010, this order will use the average of the billing rates for the two middle years — 2008 and 2009 — to estimate the actual hourly rate for each attorney and paralegal. This is a reasonable approach to simplify the math required to calculate an appropriate lodestar.

The table below shows the average actual hourly rates of counsel and paralegals (using the average of their 2008 and 2009 actual hourly rates) and the resulting lodestar:

16

| ATTORNEY/PARALEGAL | HOURS | AVG. 2008/2009 HOURLY RATE | TOTAL |
|---|---|---|---|
| S. Chandler Visher, Esq. | 1237.70 | $605.00 / hr | $748,808.50 |
| Kathryn Anderson, Esq. | 45.63 | $462.50 / hr | $21,103.88 |
| Brian Wolfman, Esq. | 63.80 | $465.00 / hr | $29,667.00 |
| Marie Noel Appel, Esq. | 451.45 | $385.00 / hr | $173,808.25 |
| Deepak Gupta, Esq. | 269.95 | $270.00 / hr | $72,886.50 |
| Margaret Kwoka, Esq. | 126.80 | $225.00 / hr | $28,530.00 |
| Vanessa Powers | 186.92 | $135.00 / hr | $25,234.20 |
| Le Duong | 142.64 | $135.00 / hr | $19,256.40 |
| | | **TOTAL LODESTAR:** | **$1,119,294.73** |

As shown, the lodestar is just over 1.1 million dollars. For the reasons already set forth above justifying the use of a lodestar calculation rather than a percentage-of-the-fund approach, this order finds that no departure — upward or downward — from this figure is warranted. *See Hanlon*, 150 F.3d at 1029 (holding that a court may consider "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment" in deciding whether a multiplier or a downward adjustment is appropriate).

Counsel will therefore be **AWARDED** a total of **$1,120,000** in reasonable attorney's fees, based upon the lodestar calculation shown above. This award is fair, reasonable, and adequate under the factors set forth in *Hanlon* and related Ninth Circuit caselaw. Moreover, this award is in accord with the recent United States Supreme Court decision in *Perdue v. Kenny A. ex rel. Winn*, --- S.Ct. ----, 2010 WL 1558980, at *6 (2010), which emphasized the longstanding rule that "the lodestar method yields a fee that is presumptively sufficient to achieve th[e] objective[s]" underlying federal fee-shifting statutes and that upward departures from the lodestar are warranted only in "rare" and "exceptional" circumstances. *See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Finding no such circumstances here, the fee award ordered herein is proper.

**D.     Counsel's Requested Costs are Reasonable**.

Determining whether counsel's requested litigation costs are reasonable and fair is a more straightforward matter. Counsel have provided a detailed accounting of costs totaling $55,391.62

17

(Visher Decl. Exh. E). Having reviewed the spreadsheets provided by counsel to ensure that all documented costs are reasonable and appropriate, this order finds that an award of the requested amount of $52,000 (over $3,000 less than the documented costs) is fair and reasonable. Accordingly, a payment to counsel from the class fund of litigation costs in the amount of **$52,000** shall be **AWARDED**.

### 3. CLASS REPRESENTATIVE BRIGGS IS ENTITLED TO A REASONABLE PAYMENT.

Class counsel seek an additional $5,000 payment to class representative Briggs. As explained in a recent class action settlement approved by the undersigned, class actions have produced excellent results for many decades without ever awarding "incentive payments" to class representatives. *See Adderley v. National Football League Players Ass'n*, 2009 WL 4250792, at *8 (N.D. Cal. 2009). While, in theory, these payments compensate the representative for time and effort expended in support of the class, there is often a huge risk that these payments are an incentive to entice a representative to support a marginal settlement. *See Staton*, 327 F.3d at 975. In other words, if the settlement payment is not good enough for the representative, it is likely not good enough for the class.

Here, however, that risk is not present since the class obtained a 100% recovery. Given this result, while the Court is always reluctant to award a class representative more than his fellow class members, the length of this litigation and the approximately 185 hours plaintiff Briggs spent in meetings, telephone calls, preparing and appearing for his deposition, and reviewing pleadings and settlement documents warrant a reasonable payment to plaintiff Briggs for representing absent class members (Briggs Decl. ¶¶ 4–8). Consistent with the payment awarded by the undersigned in the above-mentioned *NFL Players Association* case, an additional payment of **$3,300** from the class fund to compensate Mr. Briggs is hereby **APPROVED**.

### CONCLUSION

For the reasons set forth above, final approval of the class action settlement is **GRANTED**. This order finds that the settlement (including the distribution plan set forth therein) is fair, reasonable, and adequate, and in the best interests of the certified class. Counsel will be awarded **$1,120,000 IN ATTORNEY'S FEES** and **$52,000 IN LITIGATION COSTS**, which are both reasonable

and fair in light of the circumstances of this action. Of the total amount of fees awarded, 25 percent may be paid to counsel after the "effective date" as defined in the settlement agreement. Similarly, litigation costs may only be paid to counsel after the "effective date" has passed. The remaining 75 percent of attorney's fees can be paid only after counsel certifies that all class members have received and cashed their checks, no problems with the distribution have been reported for a period of 30 days, and there is nothing left to do. Finally, this order approves a payment for class representative Julius Briggs in the amount of **$3,300**.

Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: April 30, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE