IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JULIUS BRIGGS,

          Plaintiff,

  v.

UNITED STATES OF AMERICA,

          Defendant.

_____/

No. C 07-05760 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR ADDITIONAL ATTORNEY'S FEES AND/OR CY PRES DISTRIBUTION AND GRANTING DEFENDANT'S MOTION FOR CY PRES DISTRIBUTION**

## INTRODUCTION

In this class action, now settled, both sides move to disburse the undistributed remainder of the class settlement fund, although they disagree as to how it should be disbursed.

## STATEMENT

In November 2007, plaintiff Julius Briggs filed a class action lawsuit in this district on behalf of himself and all others similarly situated, alleging that the United States had engaged in unlawful debt collection practices against military personnel by withholding tax refunds despite a statutory ten-year limitations bar. A class was certified. The parties filed cross-motions for summary judgment. Both parties' motions were granted in part. On the eve of trial, the parties entered into a settlement agreement. Preliminary approval of the agreement, class notice, and a dissemination plan was granted in February 2010.

Pursuant to the agreement, a class fund was created, into which the government agreed to pay: (1) $7,404,944.19, subject to offset for any class member who requested exclusion from

the class or failed to waive his claim, if that claim exceeded $10,000; and (2) up to $632,000 in attorney's fees and expenses pursuant to the Equal Access to Justice Act, of which $500,000 represented fees and $132,000 represented expenses.  Pursuant to the EAJA, the government expressly agreed "not to oppose or negatively comment on a request by class counsel for:" (1) $52,000 in expenses, or such lesser amount as approved by the Court, in addition to $80,000 paid by the United States' Army and Air Force Exchange Service ("AAFES") toward the expenses of class notice and claims administration; and (2) $500,000 in reasonable attorneys fees.  The government further agreed "not to oppose or negatively comment on a request by class counsel" for the Court to award from the class fund:  (1) attorney's fees up to $2,000,000; and (2) an incentive payment to class representative Briggs of up to $5,000 (Def. Br. Exh. 1).

On April 30, 2010, final approval of the settlement and class counsel's motion for attorney's fees and costs as well as payment to the class representative was granted.  The order found a lodestar calculation to be the appropriate method of calculating attorney's fees. The order rejected class counsel's proposal that the Laffey Matrix, the primary guide used in Baltimore and Washington, be used determine the "reasonable hourly rates."  Instead, the order based its calculation on the actual billing rates purportedly used by counsel and supporting paralegals.  The lodestar amounted to total fees of $1,119,294.73.  Accordingly, class counsel was awarded attorney's fees in the total amount of $1,120,000, inclusive of the government's offer of $500,000 of EAJA attorney's fees.  Counsel was also awarded from the class fund $52,000 in costs.  Class representative Briggs received $3,300 from the class fund. Final judgment was entered on the same date (Dkt. Nos. 61, 180–81).

After the effective date of the agreement, $332,000 was distributed to class counsel, reflecting the total costs award of $52,000 and 25% of the attorney's fees award. In December 2010, plaintiff moved for a second partial disbursement of attorney's fees. Distribution of $560,000 was authorized.  In September 2011, plaintiff again moved for disbursement of attorney's fees.  A $140,000 distribution was authorized, and approval of the remaining balance of $140,000 was reserved (Dkt. Nos. 191, 200, 203).

1    In October 2011, plaintiff moved for payment of additional administrative fees,

2    additional attorney's fees, and for cy pres distribution of the remainder.  Defendant also moved

3    for cy pres distribution.  Following a hearing, however, both motions were denied and KCC,

4    the class administrator, was ordered to continue its efforts to locate unpaid class members.

5    KCC was further ordered to file a report in December reflecting the present status of the fund

6    (Dkt. Nos. 200, 203, 212, 221).  KCC subsequently located 52 additional class members and

7    issued further distribution checks totaling $29,866.54 (Carameros Decl. ¶ 6).

8    Plaintiff again moves to distribute the class fund residue, this time as follows:

9    (1) attorney's fees for work completed since filing of the original fee petition "with a minimum

10    of $27,775 of time estimated for class administration"; (2) $2,796.37 for costs to class counsel

11    additional; and (3) any remaining balance of the residue divided among three charitable

12    organizations.  Defendant timely filed its partial opposition.  Defendant separately moves

13    to distribute the class fund residue to a veterans-related charitable organization.

14                                          **ANALYSIS**

15    Some class action settlements result in some amount of unclaimed or residual funds.

16    District courts have broad discretionary powers in shaping equitable decrees for distributing

17    unclaimed class action funds.  The district court's choice among distribution options must be

18    guided by the objectives of the underlying statute and the interests of the silent class members.

19    *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).

20    While our court of appeals has not ruled definitively on this issue, our sister circuits have

21    consistently found that neither the class members nor the settling defendant have any legal

22    right to residual funds.  *See Wilson v. Southwest Airlines Inc*., 880 F.2d 807 (5th Cir. 1989).

23         **1.    ADDITIONAL ATTORNEY'S FEES.**

24    The district court has broad discretion in determining an appropriate award of attorney's

25    fees.  Our court of appeals has held that, in awarding fees from a common fund, the district court

26    is a fiduciary for the class plaintiffs.  *Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994

27    (9th Cir. 2011).

28

Class counsel seeks compensation for "approximately 375 hours of additional time, representing approximately $175,000 in fees," in light of "unanticipated time expended to ensure that as many class members as possible were located and received their funds" (Br. 6, 9). While its initial fee petition made reference to compensation for estimated time, plaintiff contends that no estimated time was included in its submitted time records. The cutoff date for time records submitted was February 28, 2010 (Br. 5).

Class counsel's original motion for attorney's fees was thoroughly considered. That motion stated: "Class counsel expect to take extensive steps to locate class members whose addresses are outdated." Class counsel also addressed in that motion the fact that "significant additional time has been and will be spent after February in securing final approval of the settlement, dealing with class member's questions and preparing this fee application" (Dkt. 151 at 3).

On that motion, reasonable attorney's fees were awarded in the amount of $1.12 million (Dkt. No. 180). This award was based on the supposition, as represented, that counsel would continue to work towards locating unidentified class members. Contrary to class counsel's current contention, the fee award contemplated a reasonable amount of continuing and additional work without further awards. The supplemental work completed by counsel is in line with the Court's expectation at the time of its initial order granting $1.12 million in attorney's fees. In light of its original motion, this order cannot agree that the time spent on class administration was unanticipated by class counsel. This order further notes that a fair amount of motion practice by class counsel has been directed towards claiming for themselves all or part of the residual funds (Dkt. Nos. 191, 200, 203, 212, 215, 224, 231).

Class counsel previously sought supplemental attorney's fees from the class fund residue (Dkt. No. 212). That request was denied and instead, the claims administrator was ordered to continue its efforts to locate unidentified class members. That order resulted in the location and compensation of more than one-third of the then unlocated class members. During the recent hearing, class counsel indicated that yet another outstanding class member has come forward since KCC's most recent report. Had supplemental fees been awarded on class

counsel's motion, the balance available to outstanding members would have been diminished if not depleted. Ideally, all of the class fund residue would be paid to its rightful veteran owners — the outstanding class members. In that ideal scenario, no funds would remain to further compensate class counsel.

This order recognizes that if a lawyer does supplemental work over and above in bringing distribution to a close, a court has discretion to award additional fees on an equitable basis. In this case, however, additional compensation is not warranted. In light of this finding, this order need not address whether an additional fee award is untimely under FRCP 54(d), or whether it would violate FRCP 23(h) notice requirements.

Class counsel's supplemental motion for attorney's fees is accordingly **DENIED.** This order finds, however, that class counsel is entitled to recover reasonable costs of $2,796.37. The remaining funds constituting class fund residue will be distributed to cy pres recipients.

**2.    CY PRES DISTRIBUTION.**

> The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class-action settlement fund to the "next best" class of beneficiaries. Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity.

*Naschin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) (citations omitted). The term cy pres is rooted in the Norman French expression "cy pres comme possible, which means 'as near as possible.'" *Id*. at 1038. Our court of appeals has articulated guiding standards for the review of a proposed award, requiring that it: (1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any class member will be benefitted. *Six Mexican Workers*, 904 F.2d at 1307.

The statute underlying this class action is 31 U.S.C. 3716, which provides the United States the ability to collect debts through an "administrative offset." The legislative history of Section 3716 reveals the general purpose of facilitating the government's debt collection. 128 Cong. Rec. S12328 (1982). Until 2008, 31 U.S.C. 3716(e) imposed a ten-year limitation on United States' ability to collect via offset. Legislative history of this sub-section is silent as

5

to any congressional policy or objective served by the limitation period.  Accordingly, the first consideration is neutral in guiding the cy pres inquiry.

The class includes active and former members of the Army and Air Force who were subjected to debt collection in violation of the ten-year limitations period.  Class members' debts resulted from participation in AAFES, a credit program for military personnel.  Each of the parties' proposed recipients provides some benefit to active, veteran and/or retired members of the military.  Each are seemingly reputable charities with broad assistance missions.

Plaintiff identifies three potential cy pres recipients:  (1) the National Veterans Legal Services Program ("NVLSP"), (2) Swords to Plowshares ("STP"), and (3) the National Military Family Association ("NMFA").  Defendant opposes plaintiff's motion and separately moves to distribute the class fund residue equally between the two Morale, Welfare and Recreation ("MWR") programs run by the Army and Air Force, respectively.

According to its website, NVLSP "has been the voice of veterans' rights for more than 25 years."  NVLSP provides services in advocacy and training, education, and pro bono litigation.  NVLSP also "recruits, trains, and assists thousands of volunteer lawyers and veterans' advocates."

According to its website, STP was founded in 1974 and is "a community-based, not-for-profit organization that provides counseling and case management, employment and training, housing and legal assistance to veterans in the San Francisco Bay Area."  STP seeks to protect the rights of veterans "through advocacy, public education and partnerships with local, state and national entities."

According to its website, NMFA was founded in 1969 and seeks to "fight for benefits and programs that strengthen and protect uniformed services families and reflect the Nation's respect for their Service."  NMFA's current programs include the "Military Spouse Scholarship Program" and "Operation Purple," a summer camp program for military families.

The MWR programs of the Army and Air Force are designed to "enhance the quality of life for military members, their family members, reservists and retirees."  Their programs include "building and maintenance of youth activities, libraries, gyms, tennis courts, swimming pools,

arts and crafts, bowling centers, and a variety of other recreational activities" (Burk Decl. ¶ 4). Defendant points out that AAFES funds, the subject of this litigation, are routinely contributed to the MWR programs (Dkt No. 227 Exh. 2).

The MWR programs of the Army and Air Force more closely target the plaintiff class than the three other proposed recipients.  NMFA's family services do not necessarily extend to unmarried members of the military, or those without children.  STP's outreach is largely contained within the Bay Area, whereas the plaintiff class includes out of state members. While NVLSP provides important legal services to veterans, access to legal representation was not at issue in this case.  Moreover, each member of the class elected to participate in the AAFES, which regularly funds the MWR programs.

The third prong of the cy pres analysis seeks to award the residual funds to the benefit of actual class members.  The Court ordered defendant to submit further support for its motion for cy pres distribution.  Specifically, defendant was asked to determine whether or not a provisional distribution could be made to MWR, allowing for future (albeit out-of-time) claims by additional veterans (who are class members) (Dkt. No. 232).  Defendant responded affirmatively.  The terms of the distribution are hereby ordered as follows.

    1.    A separate account will be maintained by the AAFES for the benefit of unpaid class members until October 1, 2012;

    2.    Out-of-time requests for distribution by unpaid class members will be honored on a first-come, first-paid basis;

    3.    All payments by the AAFES will be considered final and not appealable; and

    4.    If the residual funds account is not exhausted by October 1, 2012, AAFES will transfer any remaining funds equally between the MWR programs of the Army and Air Force (Dkt. No. 235).  These terms provide a generous and further opportunity for out-of-time compensation of unpaid class members. This, plus the basic purpose of the MWR, combine to make the MWR funds the most appropriate recipient of the funds.

**CONCLUSION**

This order finds that reasonable supplemental efforts have been made, as requested by the Court, to find unidentified class members.  We have now reached point of diminishing returns.  Accordingly, defendant's motion for cy pres distribution is **GRANTED**.  Plaintiff's motion for additional attorney's fees and/or cy pres distribution is **DENIED**.  It is further ordered:

        1.      That KCC transfer $2,796.37 for costs according to the direction of class counsel;

        2.      That KCC promptly provide the AAFES with:

        (a)  A list of unpaid class members, indicating which of those class members have a negotiable check outstanding;

        (b)  The dollar value of the settlement payments due each unpaid class member (after all approved deductions);

        (c)  The dollar value of residual funds remaining after all deductions including funds reserved for payment of outstanding checks; and

        (d)  Such other information as the AAFES may reasonably need to resolve a claim for payment;

        3.      That KCC promptly transfer to the AAFES the funds constituting class fund residue;

        4.      That KCC cease re-issuance of distribution checks and maintain a reserve in an amount sufficient to honor outstanding checks through their latest stale dates; Within five (5) business days following the last stale date of outstanding checks, KCC shall transfer to AAFES any remaining reserve funds and identify those remaining class members who did not cash their checks;

        5.      That, upon transfer of the uncashed check funds listed in (e), KCC transfer the remaining $140,000 in awarded attorney's fees according to the direction of class counsel;

6.    That, upon completion of all transfers listed above, KCC file a termination report;

7.    That the AAFES hold all transferred funds until October 1, 2012, for the purpose of honoring requests by unpaid class members.

8.    That class counsel and KCC shall coordinate with the AAFES to ensure unpaid class members are directed to the AAFES for recovery;

9.    That the AAFES shall not be obligated to pursue further information in order to locate unpaid class members;

10.   That the AAFES shall honor requests on a first-come, first-pay basis and that all recovery shall be limited by the exhaustion of these funds; and

11.   That, if the residual funds are not exhausted by October 1, 2012, the AAFES shall transfer any remaining funds equally between the MWR programs of the Army and Air Force.

Counsel shall vet the forgoing steps and advise the Court promptly if they see any unintended problem.  Counsel shall also eventually make a joint termination report, to be filed after the funds are completely disbursed.


**IT IS SO ORDERED.**


Dated:  February 14, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9